UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Continental Petroleum Corporation, Inc. and Plastitex, S.A. | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO.:7:08-cv-00356 |
| Corporate Funding Partners, LLC and Pablo Antoniazzi, an individual, Caren Raphael, Joseph Lau, Green Pampas, Inc. | § § § § § | |
| Defendant | § § | |

PLAINTIFF'S ORIGINAL COMPLAINT

1. Parties and Service

1.0     The allegations contained within this complaint are in reference to the following individuals, entities, or persons.

1.1     Plaintiff, Continental Petroleum Corporation, Inc. is a foreign corporation, which was organized in Peru.

1.2     Plaintiff, Plastitex, S.A. is a foreign corporation, which was organized in Paraguay.

1.3     Defendant, Pablo Antoniazzi is an individual and a citizen of the State of Florida, may be served with process at 1100 S. Alhambra Circle, Coral Gables, FL, 33146.

1.4     Defendant, Corporate Funding Partners is a limited liability corporation that is incorporated under the laws of the State of New York.  Defendant has its principal place of business in the State of New York.  Defendant has failed to register an agent for the service of process and therefore may be served by serving the New York Secretary of State. Defendant may be served with process by serving it at the Department of State, One Commerce Plaza, 99 Washington Avenue, Albany, New York 12231.

1.5     Defendant, Joseph Lau is a Corporate Officer of Corporate Funding Partners and is being sued in his individual capacity.  He may be served with process at 28 Sousa Drive, Port Washington, NY, 11050-2818

1.6     Defendant, Caren Raphael is a Corporate Officer of Corporate Funding Partners and is being sued in her individual capacity.  She may be served with process at 900 W. End Avenue, Apt 6B, New York, NY 10025-3562.

1.7     Defendant, Green Pampas, Inc, is a Delaware Corporation.  Defendant has its principal place of business in the State of Florida.  Defendant has registered an agent for the service of process and therefore may be served by serving Registered Agents, LTD. 1220 N. Market Street, Suite 804, Wilmington, DE 19801.

1.8     The Defendants are subject to nationwide service or process under the provisions of RICO, 18 U.S.C. § 1965.


## 2.  Jurisdiction & Venue


2.0     This action arises under the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. Section 1961 ("RICO"), and the laws of New York.  Plaintiffs seek to recover compensatory and punitive damage sustained, as a result of the Defendants' conduct, along with the costs of this suit, interest and reasonable attorney's fees.  The court's  jurisdiction is invoked under 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1337, 18 U.S.C. § 1964(c), and the doctrine of pendent jurisdiction.

2.1     Venue:  Venue is proper in this District under 28 U.S.C. § 1391 (b) and 9(c).  A substantial part of the events and conduct giving rise to the violations of law complained of herein occurred in or emanated from this District.  In addition, Defendants continue to conduct regular business with consumers in this District.


## 3.  Conditions Precedent


3.0     All conditions precedent to recovery have been performed, have occurred, or have been otherwise excused.


## 4.  Facts


### The Continental Petroleum Corporation Transaction


4.0     On April 11, 2008 Plaintiff Continental Petroleum Corporation entered into a Sales and Purchase Agreement with Loxistica Integral  Do Palet S.I. for 150,000 metric tons of a certain

quality of Urea. The Urea was to be delivered in twelve monthly increments of 12,500 metric tons (MT) beginning on June 1, 2008. The payment for each shipment of Urea was to be $2,537,500.00. Mr. Freddy Gambarizio the president of Continental Petroleum Corporation ("Continental") turned to Corporate Funding Partners ("Funding") to secure a letter of credit to fund this transaction. The documents related to this transaction and the Continental dealings with Funding are attached hereto as Exhibit A and incorporated herein by reference in their entirety as if full set forth verbatim herein. These documents are bates numbered from CPC_0001-CPC_0076, and hereafter for the sake of brevity will be referred to by bates number.

4.1     Funding was located at www.lettercredit.com. Based on the website a Mr. Pablo Antoniazzi was the representative for South America. As Continental is located in Lima, Peru, Mr. Antoniazzi was the representative or agent for Continental petroleum for this transaction. Documentation was exchanged to begin the credit application process.

4.2     On May 9, 2008 Corporate began filling out forms that had been drafted by Funding and that Funding required in order to issue a letter of credit. These documents included the following;

      a)     The L/C Application (CPC_0018),

      b)     Visual Representation of Transaction (CPC_0016),

      c)     Letter of Credit Compliance Questionnaire (CPC_0057).

4.3     The forms listed in the paragraph above had various attachments but generally all of the above and their attachments formed a set of documents. This set of documents consisted of forms generated by Funding and the transactional documents that Continental submitted to Funding to verify the transaction and its terms.

4.4     The L/C Application (CPC_0018) attachments were incorporated into this document based on the incorporation clause contained in the "Special Conditions" section of the form, and in the "Documents Required" section of the form. The attachments that Funding required included the "Signed Commercial Invoice." Continental complied and attached the "Proform-Invoice" dated April 28, 2008. This document included a description of the type of letter of credit required, and states in pertinent part, "TERMS OF PAYMENT IRREVOCABLE, CONFIRMED, TRANSFERABLE, AT THE SIGHT 100% PAYABLE DOCUMENTARY LETTER OF CREDIT TOP 25/50 WORLD BANK." (CPC_00014-15)

4.5     Also sent in the same package was the April 11, 2008 Contract which contained language similar to that quoted above, and which clearly informed Funding, who is in the business of letters of credit, that this particular letter was to be confirmed. The Contract states "DOCUMENTARY, IRREVOCABLE, CONFIRMED, TRANSFERABLE, DIVISIBLE, SHIPMENTS FOR SHIPMENTS LETTER OF CREDIT, PAYABLE AT SIGHT AGAINST

THE PRESENTATION OF CLEAN SHIPPING DOCUMENTS AS PER CONTRACT TO BUYER BANK NON PARTIAL PAYMENT, NON PARTIAL SHIPMENT" (CPC_0001-13)

4.6     In addition to the forms drafted by Funding there was one form drafted by First American Bank, called the Application for Import Letter of Credit (CPC_0045- bullet 1 of the Documents Section of the letter).   This document was signed along with all of the other application information and sent back to Funding.  This document too had as an attachment the Proform Invoice containing the provision that the Letter of Credit be a confirmed letter, and from a top 25/50 world bank (CPC_0014).

4.7     On or about May 13, 2008 the funds required to issue the Letter of Credit were paid in the amount of $107,315.63 (CPC_0023).

4.8     Banco Pastor, Loxistica's bank, received the Letter of Credit on May 30, 2008.  The letter was not confirmed and it was rejected.  As a result the June 1 shipment date was missed and Loxistica cancelled the contract (CPC_0029).

4.9     Upon discovering this Mr. Gambirazio requested explanation from Funding and was informed by Antoniazzi that a U.S. Bank did not need to confirm its Letter of Credit, as it is a U.S. Bank.  This explanation did not satisfy the seller, and further appeals to Loxistica were to no avail.  In fact, the information supplied by Mr. Antoniazzi was completely false.  The American Dollar being used as the currency has no bearing on the confirmation of a Letter of Credit.

4.10    Antoniazzi then proposed that he could find a supplier of Urea who would be able to accept a Letter of Credit like the one previously issued.  Mr. Antoniazzi represented that Trifecta Trading (165) PTY Ltd., a South African Company, would be able to meet the Urea supply requirements and also met all the conditions to be a supplier of Urea in the international marketplace.

4.11    Continental relied upon Antoniazzi's representations and the fact that he stated that he was currently doing Urea business with Trifecta Trading, and entered into a Sales and Purchase Agreement with Trifecta on June 27, 2008.  (CPC_0031-39).

4.12    On July 8, 2008 Continental re-applied for a second letter of credit, and paid a second fee of $107,315.62. (CPC_0040). The letter was allegedly accepted by the seller Trifecta's bank, but the product was never delivered.

4.13    Antoniazzi then schemed to have Continental attempt a third transaction with one of his own corporations, Green Pampas, Inc., a Delaware Corporation.  Continental thought better of throwing additional monies away (CPC_0071).

4

4.14    As a result of the above courses of action, Plaintiff Continental suffered damages.

<u>The Plastitex Transaction</u>

4.15    Plastitex similarly learned of Funding through their website www.lettercredit.com . Plastitex was also involved in the Urea business. The documents related to this transaction and the Plastitex dealings with Funding are attached hereto as Exhibit B and incorporated herein by reference in their entirety as if full set forth verbatim herein.   These documents are bates numbered from Plas-1 through Plas-73, and hereafter for the sake of brevity will be referred to by bates number.

4.16    Plastitex's transaction with Corporate also required a confirmed letter of credit. **On April 14, 2008,** Plastitex paid $125,562 to open a letter of credit in the amount of $2,973,500.00 through First American Bank. (Plas-1, and Plas-6) The letter was to be irrevocable, divisible, transferrable, and confirmed by a top 25 world bank. (Plas-1, 6, 7) The letter of credit issued was not confirmed, and was rejected by Bancaja, the Urea supplier's bank. (Plas-1, 6, 7)  This was a material condition to this contract between Corporate Funding Partners and Plastitex.  As in the Continental transaction there was no top 25 world bank nor was there a confirmed letter of credit issued.

4.17    Antoniazzi was the Corporate Funding Partners representative for Plastitex and endeavored to perform exactly the same scheme as he had with Continental Petroleum Corporation. Antoniazzi represented that he had a supplier who could meet the requirements of Plastitex and provide the Urea of the type quality and form required by the Plastitex transaction. Further that this supplier would accept a letter of credit like the kind that was issued in the previous transaction.  Trifecta Trading 165 PTY LTD was the suggested supplier. (Plas 25-31)

4.18    On **July 11, 2008** Trifecta accepted the Corporate Funding Partners Letter of Credit. (Plas-36).  On **July 14, 2011** the LC was funded (Plas-37-38) Some 22 days later Trifecta changed their story and insisted that the letter had a minor mistake that it needed a variance of +/- 5% and it would cost $8,950 to correct it. (Plas-10-11, and Plas -18).  On September 3, 2008 more consideration was paid to obtain this variance. (Plas-54).  This flew in the face of Trifecta's assertion that they had started the Proof of Product (POP) issuance process on August 4, 2008 (Plas-46).

4.19    More letters were exchanged and requests for information were sent, but Trifecta double talked until the final admission on October 3rd, 2008 it admitted that they have no Urea supply.

5

4.20     Just like with the prior Continental transaction, Plastitex was offered to do business with Green Pampas, Inc., Antoniazzi's own corporation. Unfortunately Plastitex attempted to save their business transaction and paid even more money. On January 20, 2009 Plastitex and Green Pampas entered into a contract for the sale of Urea. As one can imagine, they did not have any urea, and Corporate Funding Partners was paid for another useless LC. No Urea was delivered, however no reasonable explanation was offered.

4.21     **Continental Petroleum Corporation** was also offered a deal with Antoniazzi's company, Green Pampas. (CPC_0061-70). This offer displayed a date of April 13, 2009. Two facts are displayed as a result of this document. On the documents presented in this petition alone, Antoniazzi can be shown to have lied about the lack of necessity for confirmation of a letter of credit when U.S. Dollars are used, as his Green Pampas contract calls for the currency in U.S. Dollars and a Confirmed letter of credit. The second fact displayed is the knowledge that Green Pampas had no Urea to deliver and yet he attempted to bring **Continental** into another transaction knowing that his company could breach, but also that he would receive commissions on the monies spent for the LC through Corporate Funding Partners.

## 5. Plastitex Count 1(a) Breach of Contract (Green Pampas and Corporate Funding Partners)

5.0     The preceding paragraphs are incorporated verbatim herein by reference as if set forth in their entirety.

5.1     Plastitex and Corporate Funding Partners executed a written contract. The contract provided for a payment of funds in return for the issuance for a letter of credit that conformed to certain defined terms, one of which was that it be confirmed. Plastitex has performed its obligations under the contract. Corporate Funding Partners, however, has not performed its contractual obligations. Specifically, Corporate Funding Partners failed to provide a confirmed letter of credit drawn upon a top 25 world bank. Defendant's nonperformance is a breach of the parties' contract, and from that breach Plastitex suffered damages.

5.2     Plastitex and Green Pampas, Inc. executed a written contract. The contract provided for a payment of funds in return for the delivery of Urea. Plastitex has performed its obligations under the contract. Green Pampas, Inc., however, has not performed its contractual obligations. Specifically, Green Pampas, Inc. failed to provide the Urea. Defendant's nonperformance is a breach of the parties' contract, and from that breach Plastitex suffered damages.

## 6. Continental Count 1(b) Breach of Contract

6.0     The preceding paragraphs are incorporated verbatim herein by reference as if set forth in their entirety.

6.1     Continental and Corporate Funding Partners executed a written contract. The contract provided for a payment of funds in return for the issuance for a letter of credit that conformed to certain defined terms, one of which was that it be confirmed. Continental has performed its

obligations under the contract.  Corporate Funding Partners, however, has not performed its contractual obligations.  Specifically, Corporate Funding Partners failed to provide a confirmed letter of credit.  Defendant's nonperformance is a breach of the parties' contract, and from that breach Continental suffered damages.

### 7.  Plastitex Count 2(a) Fraud

7.0     The preceding paragraphs are incorporated verbatim herein by reference as if set forth in their entirety.

7.1     Corporate Funding Partners, Antoniazzi, Lau, and Raphael all knew that the letters of credit to be issued were to be confirmed and drawn upon a top 25 world bank for Plastitex.  They represented that the Letter of Credit would conform to the transactional requirements, which had been disclosed to them.  Corporate Funding Partners, Antoniazzi, Lau, and made these representations to Plastitex knowing that they were false with the intent to induce Plastitex to pay funds.  The terms confirmed and drawn upon a top 25 world bank of the letter of credit were material elements of the transaction.  Based upon these false and fraudulent representations Plastitex entered into the transaction and as a result experienced pecuniary loss.  *State of New York v Industrial Site Servs.*, Inc., 52 AD3d 1153, 1157 [2008].

### 8.  Continental Count 2(b) Fraud

8.0     The preceding paragraphs are incorporated verbatim herein by reference as if set forth in their entirety.

8.1     Corporate Funding Partners, Antoniazzi, Lau, and Raphael all knew that the letters of credit to be issued were to be confirmed and drawn upon a top 25 world bank for Continental.  They represented that the Letter of Credit would conform to the transactional requirements, which had been disclosed to them.  Corporate Funding Partners, Antoniazzi, Lau, and made these representations to Continental knowing that they were false with the intent to induce Continental to pay funds.  The terms confirmed and drawn upon a top 25 world bank nature of the letter of credit were material elements of the transaction.  Based upon these false and fraudulent representations Continental entered into the transaction and as a result experienced pecuniary loss. *State of New York v Industrial Site Servs.*, Inc., 52 AD3d 1153, 1157 [2008]

### 9.  Continental and Plastitex Count 3: Violations of Racketeer Influenced Corrupt Organizations Act Section 1962 (c)

9.0     The preceding paragraphs are incorporated verbatim herein by reference as if set forth in their entirety.

9.1     This cause of action is brought against each of the Defendants (except Corporate Funding Partners) on behalf of the plaintiffs and arises under 18 USC § 1962(c) and (d) of RICO.

9.2     At all relevant times, Defendants (except Corporate Funding Partners) were a for-profit entity and constitutes an "enterprise" as that term is defined in 18 U.S.C.S. Section 1961(4), which engages in, and the activities of which affect interstate commerce.

9.3     At all relevant times during the Class Action Period, each of the Defendants (except for Corporate Funding Partners) was a "person" as that term is defined in 18 U.S.C. § 1961 (3), as each of the defendants was "capable of holding a legal or beneficial interest in property".

9.4     Each of the Defendants (except for Corporate Funding Partners) conducted or participated, directly or indirectly, in the conduct of the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

9.5     Each of the Defendants (except for Corporate Funding Partners) committed predicate offenses under Section1961(1)(B), to wit, numerous counts of bank fraud under 18 U.S.C. § 1344, mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343 and a violation of 18 U.S.C.§ 1960 as described above.

9.6     Each of the Defendants engaged in a pattern of racketeering activity as defined by 18 U.S.C. § 1961 in that they conspired to maintain a pattern and/or practice of marketing financial products, to whit: Letters of Credit, over the Internet without any intent of issuing complying documents, or refunds,  for said non-conforming products and with the intent to improperly increase their market share at the expense of Plaintiffs and to lure away Plaintiffs and other similar corporations from purchasing said products from other distributors and websites who sell similar products over the Internet.

9.7     The pattern of racketeering activity referred to above consisted of a variety of schemes which all had the same specific intent, namely to use fraudulent means and unlawful influence to enrich Defendants at the expense of Plaintiffs and other members of the Class.

9.8     These acts of racketeering activity were continuous and related to one another by virtue of common participants, to wit each of the Defendants (except for Corporate Funding Partners); the common victims: Corporate Funding Partners' online customers; and the common purpose and common result of improperly enriching Defendants' at the expense of the Plaintiffs and other similar purchasers dealing in interstate and international commerce. Because Defendants performed more than two acts of racketeering activity that were continuous, related and caused substantial injury to Plaintiffs and other similar purchasers dealing in interstate and international commerce these acts constituted a pattern of racketeering activity within the meaning of RICO, 18 U.S.C. § 1961(5).

9.9     The unlawful pattern of racketeering activity has been committed through the vehicle of the enterprise, to wit Corporate Funding Partners. The enterprise had an ascertainable decision-making structure by utilizing the management organization of Corporate Funding Partners.

9.10     Corporate Funding Partners operated and managed the enterprise and upon information and belief also conducted a legitimate business activity, to wit, online sales of letters of credit. Throughout the relevant periods, Defendants (except Corporate Funding Partners) conducted the enterprise through a pattern of racketeering activity within the meaning of RICO, 18 U.S.C. § 1961(5) and § 1962(c), in violation of RICO, 18 U.S.C. § 1962(c).

9.11     Defendants have (a) used or invested the proceeds of the income derived from the pattern of racketeering activity to establish, operate and acquire an interest in any and/or all of the

companies constituting the enterprise; (b) acquired an interest or control of the enterprise through a pattern of racketeering activity; and (c) conducted the affairs of that enterprise through a pattern of racketeering activity.

9.12    Each of the Defendants (except Corporate Funding Partners) also conspired to violate 18 U.S.C. § 1962(a), in violation of 18 U.S.C. Section 1962(d).

9.13    Plaintiffs and other consumers have suffered damages, which were the direct, foreseeable, and proximate result of the defendants' materially misleading acts and practices.

9.14    In addition, Defendant's deceptive practices are likely to continue to deceive thousands of persons via the internet who will also be injured thereby.

9.15    By virtue of the foregoing, Plaintiffs have been damaged, jointly and severally, for treble damages in the amount to be ascertained at trial.

## 10.  Continental and Plastitex Count 4: Deceptive Trade Practice

10.1    The preceding paragraphs are incorporated verbatim herein by reference as if set forth in their entirety.

10.2    That Defendants' misrepresentations are misleading in that they represent to their clients that they will provide letters of credit that will conform to the requirements of a transaction, when in fact they will not. Defendants know this to be true as in each instance they require the transactional documents to issue a letter of credit, and then issue letters which do not conform to the transactional documents. These misrepresentations constitute a deceptive trade practice under the provision of Gen. Bus. L., Section 349.

10.3    Gen. Bus. L., § 349(h) provides for a private right of action by any person who has been injured by a violation of Gen. Bus. L. § 349(a).

10.4    Upon information and belief, Plaintiffs and members of the Plaintiffs' Class had suffered damages, which were the direct, foreseeable, and proximate result of the Defendants' materially misleading acts and practices.

10.5    By virtue of the foregoing, Plaintiffs and members of the Plaintiffs' Class have been damaged, jointly and severally, in the amount to be ascertained at trial.

## 11.  Continental and Plastitex Count 5: Fraudulent Inducement

11.1    The preceding paragraphs are incorporated verbatim herein by reference as if set forth in their entirety.

11.2    Defendants, knowingly or recklessly, made false and misleading representations by falsely representing that their letters of credit would be issued as confirmed letters of credit, when they knew that they would not be confirmed letters. These misrepresentations are material to the plaintiffs and the other members of the Class because they caused them to enter into the transaction with Corporate Funding Partners, and to pay funds for the letters of credit.

11.3    Defendants made these false representations and omissions with the knowledge that they were false and misleading and with the intent that they were relied upon by persons who were deciding whether to secure a letter of credit through Corporate Funding Partners, LLC.

11.4    The plaintiffs and the other members of plaintiff's Class believed these representations to be true and relied on Defendants' false representations when making their decision to further the transaction. The plaintiffs and the other class members have thereby been injured because they have not been provided with the benefit of the bargain and received a non-conforming letter of credit.

11.5    By virtue of the foregoing, plaintiffs have been damaged, jointly and severally, for treble damages in the amount to be ascertained at trial.


## 13. Class Action

13.0    The preceding paragraphs are incorporated verbatim herein by reference as if set forth in their entirety.

13.1    That this civil action is brought as a class action against Defendants pursuant to Federal Rules of Civil Procedure 23(a)(1)-(4), 23(b)(1), (2) or (3) and case law thereunder on behalf of themselves and all others similarly situated who comprise the following class (the "Class"), defined as follows:
**All persons who purchased Letters of Credit from Defendant Corporate Funding Partners and required a confirmed letter of credit or a letter of credit from a top 25 world bank, and who are interested in pursuing this lawsuit.  The Class Period is the period from January 2007 to the present.**
13.2    This action has been brought and is properly maintainable as a class action, pursuant to Federal Rules of Civil Procedure 23(a)(1)-(4), 23(b)(1), (2) or (3), and case law thereunder.

13.3    <u>Numerosity of the Class</u> - Fed. R. Civ. 23(a)(1):  Although the exact number of class members cannot be ascertained, they are so numerous and geographically dispersed that joinder of all class members is impracticable. The precise number of Class members and their addresses is unknown to Plaintiffs but can be readily determined from inspection of records maintained by Defendant Corporate Funding Partners. Class members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

13.4    <u>Existence and Predominance of Common Questions of Fact and Law</u> – Fed. R. Civ.P. 23(a)(2); 23(b)(3): There are common questions of law and fact involved herein which predominate over any questions affecting only individual members of the class.  The common question of law and fact include, but are not limited to the following:
    a.    whether Defendants violated <u>Section 349 of the New York General Business Law</u> (Gen. Bus. L.) in that they engaged in deceptive acts or practices in the conduct of their business;

b.    whether Defendants engaged in business practices in violation of the RICO act;

c.    whether Defendants violated Gen. Bus. L., Section 350 by engaging in false advertising in the conduct of their businesses;

d.    whether Defendants committed fraud by advertising and selling financial products under the guise that the products are fit for the use intended knowing that in fact the financial products were defective and/or unfit for the intended use;

e.    whether Defendants were unjustly enriched at the expense of Plaintiffs and the Class;

f.    whether Defendants refused to reimburse consumers when the financial products issued by Defendant were not fit for their intended use;

g.    whether Defendants acted knowingly, as alleged herein;

h.    whether Plaintiffs and the Class are entitled to restitution of all monies acquired by Defendant from Plaintiffs and the Class and the general public as a result of Defendant's unlawful conduct, and, if so, the appropriate measure of damages;

i.    the appropriate form of injunctive, declaratory and monetary relief.

13.5    **Typicality** - Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of those of the Class in that plaintiffs are members of the Class and have no known interest that are antagonistic to or contrary to the interest of the Class.

13.6    **Adequacy** - Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately protect the interest of the members of the class because their interests do not conflict with the interests of the Class members they seek to represent. Plaintiffs have retained competent counsel experienced in class litigation and intend to prosecute this action vigorously.

13.7    **Superiority** - Fed. R. Civ. P. 23(b)(3): A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Plaintiffs know of no difficulty to be encountered in the management of this action which would preclude its maintenance as a class action. Furthermore, since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impracticable for the class members to seek redress individually or the wrongs they have suffered.

13.8    In the alternative, the Class may be certified under the provisions of Fed. R. Civ. P. 23(b)(1) and/or 23(b)(2) because:

a.    the prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Defendant;

b.    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

<u>14.  Attorney Fees</u>

14.0    As a result of defendant's breach, Plaintiffs retained an attorney and seeks reimbursement for their reasonable attorney fees, as authorized by the RICO act, and by any other remedy available at law or in equity.

<u>15.  Damages</u>

15.1    As a direct and proximate result of defendant's breach, plaintiff suffered the following damages:

      a.    Any and all amounts paid by the Plaintiffs for non-conforming letters of credit.

      b.    Reasonable expenses in reliance on the Defendant's performance of the contract.

      c.    Loss of net profits.

      d.    Punitive Damages.

      e.    Pre-judgment interest, and post judgment interest.

      f.    Unliquidated damaged within the jurisdictional limits of this court.

<u>16, Jury Demand</u>

16.0    Plaintiffs demand a jury trial.

<u>17. Prayer</u>

WHEREFORE, PREMISES CONSIDERED, PLAINTIFFS respectfully requests this Honorable Court for the following relief: That upon final hearing and trial hereof, this Honorable Court grant to the Plaintffs such relief as to which they may show themselves justly entitled, either at law or in equity; either general or special, including declaratory judgment, judgment against the CORPORATE FUNDING PARTNERS, LLC AND PABLO ANTONIAZZI, AN INDIVIDUAL, CAREN RAPHAEL, JOSEPH LAU, GREEN PAMPAS, INC. for actual attorney's fees, cost of suit, mental anguish, statutory penalties, and prejudgment and post judgment interest, including judgment for additional damages and punitive damage under the facts set forth in this or any amended pleading.

[signature block follows]

12

Respectfully submitted,

V. GONZALEZ & ASSOCIATES, P.C.
121 North 10th Street
McAllen, Texas 78501
Telephone: (956) 630-3266
Facsimile: (956) 630-0383

FREDERICK J. CASTRO, ESQ.
Attorney In Charge
Texas State Bar No.24045628
Southern District of Texas Admission No. 589577
VICENTE GONZALEZ
Texas State Bar No. 00798215
New York State Bar No. 4813655
Southern District of Texas Admission No. 22796
ATTORNEYS FOR PLAINTIFFS