Shipping from: ⊡
Shipping to: ⊡
Shipping from port/airport: ⊡  Ukrania
Shipping to port/airport: ⊡  Lima, Peru
Latest shipping date: ⊡  07/07/2008
Shipment period: ⊡
Shipment terms: ⊡  CIF - Cost Insurance & Freight
Location: Lima, Peru
Partial shipments? ⊡  NOT ALLOWED
Container shipments? ⊡  ALLOWED
Transhipments? ⊡  NOT ALLOWED
Insurance covered by: ⊡  SELLER

**MERCHANDISE:** ⊡
12,500 MT of Urea as per Proforma Invoice no. 008 dated April 28, 2008.
Purchase Order(s):

**DOCUMENTS:** ⊡

1. Signed Commercial Invoice issued by the beneficiary in 1 original plus 3 copies indicating LC number, name of the LC issuing bank, and full details of the goods shipped.
2. Full Set of clean on board Marine Bills of Lading made out to the order of the shipper, endorsed to the order of First American Bank, 1650 Louis Avenue, Elk Grove, IL 60007, USA, marked freight prepaid, indicating notify Continental Petroleum Corporation S.A.C., Fray Angelico 520 Of.203 Lima Peru L34.
3. Shipping Compliance Certificate signed and issued by an authorized officer of Ashford Finance LLC., 152 Madison Ave. Suite 1003, New York, NY 10016, USA on their letterhead and countersigned by the Trade Finance Division of First American Bank, 1650 Louis Avenue, Elk Grove, IL 60007, USA.
4. Negotiable Insurance Policy or Certificate for 110 percent of CIF invoice value, endorsed in blank, and covering all risks and war risks.
5. Certificate of Origin issued by the Chamber of Commerce of the country of origin or the Department of Trade or Ministry of Industry in 1 original and 3 copies.
6. Phytosanitary certificate issued by the government authority or agency in the country of origin in 1 original and 3 copies.
7. Certificate of Quality and Quantity (including total weight) issued by SGS at port of loading in 1 original and 3 copies.

Presented within ⊡ days.
Delivery in ⊡ ONE MAILING
Delivery by: ⊡ COURIER
Second mailing by: ⊡

[Stamps: "Ok To Issue"; "LOGISTICA INTEGRAL DO PALET, S.L. CIF: - 36.957.215"]

AV. Lilg Angelico Quico 20
San Borja
Lima Peru

[Ok To Issue]

**OTHER CONDITIONS:** ⊡
1. Drawings under this credit must be for total of 100 percent of the invoice value.
2. All bank charges other than those of First American Bank's Letter of Credit issuance charges are for beneficiary's account and will not be borne by the issuing bank and should be collected from the beneficiary at time service is

Continental Petroleum Corp. SAC.
AV. Fray Angelico 520 Of. 203
San Borja
Lima Peru'

https://www.firstamloc.com/FAB2_EB/ASHFORD-LIVE_TF.NSF/f3692ae9fc8f730c88256... 5/9/2008

rendered by the advising/remitting bank.
3. Discrepant documents will be subject to a discrepancy handling fee of USD75.00 which will be for beneficiary's account.
4 Documents to be presented within 21 days after shipment date, but within the validity of the credit.
5. This letter of credit is transferable in whole or part, provided this original credit is presented to Banco Pastor, Spain, for endorsement of transfer, under advice to us and their transfer commission is paid. Transfers to designated foreign nationals and/or specially designated nationals are not permitted as being contrary to U.S. Treasury Department, Foreign Assets Control Regulations. The transferring bank must inform us if the first beneficiary retains their rights to substitute their draft and invoices with those of the second beneficiary.
6. All documents must be issued in the English language.

Applicable Rules. UCP LATEST VERSION

The documentary credit is subject to the version of the ICC Uniform Customs and Practice for Documentary Credits, International Chamber of Commerce, Paris, France, which is in effect on the date of issue.

| Your Initials: D | Password: |
| On Hold | |

Ok To Issue

Continental Petroleum Corp. SAC
AV. Fray Angelico 520 Of. 203
San Borja
Lima Peru

Continental Petroleum Corp. SAC
AV. Fray Angelico 520 Of. 203
San Borja
Lima Peru

Ok To Issue

https://www.firstamloc.com/FAB2-EB/ASHFORD-LIVE_TF.NSF/f3692ae9fc8f730c88256...   5/9/2008

CPC_0022

# Wire Transfer Services
# Outgoing Wire Transfer Request



A customer or team member, with the customer present, completes this form when requesting to send a wire. Outgoing wires can only be sent for Wells Fargo customers. Retain the original copy in the bank and provide a copy to the customer ensuring you give the customer the Agreement for Outgoing Wire Transfer Request (page 2 when form is accessed on-line & preprinted on the back of printed forms). Required information is noted with an asterisk. Note: Wells Fargo Wire Transfer Services will route wires based on correspondent banking relationships. See back (page 2) for explanations of the Mexican CLABE account, the SWIFT BIC, the International Routing Code (IRC) and the International Bank Account Number (IBAN).

*Today's Date: 5/12/08
*Send Date (if next day submit wire after 4/30 CT. Store must hold if other than today or next day date.): 5/13/08

## 1. Originator's Information
*Customer's Name: ANGEL J. GAMBIRAZIO
*Phone Number: 650 333 6313
*Customer's Address, City, State, Zip Code: 4321 CALLAN BVD DALY CITY CA. 94015
*Transfer from Wells Fargo Bank 10 digit Account No.: 1787149085
*U.S. Dollar Wire Amount: 102,175

International Wire only: When sending in foreign currency, please ensure the beneficiary's account accepts the designated currency.
Foreign Currency Type/Name (FX will be used unless specified otherwise)
*Currency Code (if known)
*Foreign Currency Amount

## 2. Beneficiary/Recipient Information
*Beneficiary/Recipient Name: L.C. COM, Ltd. ANS
*Beneficiary Account Number, Mexican CLABE # or the International Bank Account Number (IBAN): 610859048
Beneficiary Address, City, State, Zip Code: 201 W 72nd STREET, Suite 6M, New YORK NY 10023
Beneficiary Phone Number
Information for the Beneficiary (invoice number, Purchase order number, etc.)

## 3. Beneficiary Bank Information
*Beneficiary Bank RTN or SWIFT Bank Identifier Code (SWIFT BIC): 021001088
*International Routing Code (IRC)
*Beneficiary Bank Name: HSBC - NEW YORK NY.
Beneficiary Bank Address, City, State, Zip Code & Country (optional information)
Information for Beneficiary Bank

## 4. Intermediary Bank Information
Optional: *Intermediary Beneficiary Bank RTN or SWIFT BIC
International Routing Code (IRC)
*Intermediary Bank Account No.: OK OK
*Intermediary Bank Name: PVP
Intermediary Bank Address, City, State, Zip, Country (optional information)
Information for Intermediary Bank

## 5. Wire Fee & Customer Signature
*AU where the Originator's account is located: 0064
*Fee Amount: $ 30 —
*Date: 5-12-08

X Angel J. [signature]

## 6. Bank Use Only – Bank Approval
International Wire Foreign Currency Information Rate
Contract No. (required when $15,000 or more U.S.$)
FX Trader Contact
*Wire Transaction/FAS Number: WF0064-133-042576
*Name on ID used by customer: Angel Javier Gambirazio
*1st ID type, number, issued by State/Country & Expiration Date: CA DL N0186113 EXP 05/12
*2nd ID type, issued by State/Country & Expiration Date: PV
Second Approval, if applicable
*Initiated by and AU#: 0064
*First Approval: X

## 7. Wires in Progress (WIP)

CPC_0023

From: Continental Petroleum Corp. SAC
AV. Fray Angelico 520 Of. 203
San Borja
Lima, Peru
("The Applicant")

TO:   LCCOM, Ltd.
201 W 72nd Street, Suite 6M
New York, NY 10023
("The Company")

## AGREEMENT AND INDEMNITY

In consideration of your having agreed to open a letter of credit for the amount of: USD 2,537,500.00 (Two Million Five Hundred Thirty-seven Thousand Five Hundred United Stated Dollars and Zero One-hundredths) in our beneficiary's name: Loxistica Integral Do Palet SL, Pl Margal Bapo 96 Vigo Pontevedra, Spain at our request, we hereby confirm that we have conducted our full due diligence on the beneficiary and the said transaction represents a routine commercial business transaction. We agree to indemnify you against all expenses, losses, claims and damages arising on account of said letter of credit which you may incur and we further undertake to make good all the losses, claims and damages that may arise on account of the said transaction including, but not limited to, all out-of-pocket expenses and reasonable attorneys fees which you may incur.   We understand that you are not acting as our agent and that you are an independent contractor.

We also agree that neither we nor the beneficiary nor any of our representatives, agents or attorneys shall contact you or your bank or make any claim against the letter of credit or dispute any of the conditions of the letter of credit application duly approved by us.

We further irrevocably waive any refund from the letter of credit opening, any bank charges and commissions paid to you for this transaction once the letter of credit has been opened. We waive any claim for any lawsuit or claim in arbitration with regard to this letter of credit.

The undersigned is fully aware that the letter of credit issuing bank bears no responsibility for the terms of the letter of credit and shall not be made a party defendant in any dispute of any kind for refund of commissions or charges should the advising/negotiating bank refuse to grant credit. The undersigned also agrees that it shall be required to sign an indemnity agreement for the letter of credit issuing bank.

We acknowledge that there will be a "special condition" clause included in an additional document required in the letter of credit established by the company on our behalf. We understand that the required document will be noticed in the "document required" section, or other appropriate section of the letter of credit to be issued. This required document has been fully explained to us and is understood by us and we have read it in its entirety. We will not request that the letter of credit be changed in any way. We have acknowledged by signing a copy a "draft" of the letter of credit prior to the actual issuance of the letter of credit that the

1

applicant of the letter of credit have fully informed us about the condition clause and we agree that this clause is an integral part of the letter of credit.

We further agree that we will not request from you or the letter of credit issuing bank any amendments to the letter of credit. However, in the event due to unforeseen circumstances, any amendment is sought in the letter of credit, a 100% margin will be provided. Unless we provide you with 100% of the LC value as margin towards due performance of our obligations and settlement of the documents to be received under the above letter of credit and we will keep you fully indemnified from all consequences arising out of the incorporation of the said clause in the letter of credit. For each presentation of a document, a minimum USD 1,000.00 plus bank charges will be paid to you by us by not later than three (3) business days from the date of the document presentation.

This Indemnity Agreement shall be irrevocable during the entire period that the letter of credit is in existence from the date of issuance to the date of expiration.

Date: 5/15/2008

**Applicants name: CONTINENTAL PETROLEUM CORP. SAC.**

By: *[signature]*
Officer
Full Name: Freddy Gambirazio Arias,
Title of the Signatory: President
(Company stamp/seal)

Continental Petroleum Corp. SAC.
AV. Fray Angelico 520 Of. 203
San Borja
Lima Peru`

Notarized as follows:

On this 15 TH day of MAY, 2008, before me, the undersigned, personally appeared, FREDDY GAMBIRAZIO ARIAS, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

*[signature]*
Notary Public

EDUARDO E. WIENER
MY COMMISSION # DD 621576
EXPIRES: December 11, 2010
Bonded Thru Notary Public Underwriters

2



Spain, 19 May 2008

CORPORATE FUNDING PARTNERS.
Mr. Joseph Lau.
Chief Processing Officer.

According to the request for you to information listed below:

### CONTACT

| COMPANY | **LOXISTICA INTEGRAL DO PALET S.L.** |
|---|---|
| CONTACT | CARLOS ALBERTO PAZOS LEIROS |
| TEL. OFFICE | 0034 986 247 602 |
| FAX OFFICE | 0034 986 897 880 |
| MOVILPHONE | 0034 619 30 18 78 |
| E.MAIL | galipack@telefonica.es |

### EXECUTIVES

| PRESIDENT | JESUS BARRALS. | INVESTMENTS |
|---|---|---|
| LEGAL REP. | JUAN CARLOS CARRACEDO. | **ECONOMIST** |
| ADMINISTRATOR | CARLOS PAZOS LEIROS | BUSSINES ADMIT. |

### BANKING COORDINATES

| ACCOUNT NAME | **LOXISTICA INTEGRAL DO PALET S.L.** |
|---|---|
| BANK NAME | BANCO PASTOR |
| ADDRESS BANK | SUC . 0422 |
| CITY | VIGO - PONTEVEDRA |
| COUNTRY | SPAIN |
| SWIFT | PSTRESMM |
| ACCOUNT NUMBER | ES81 0072 0422 9800 0010 3027 |
| TELEPHONE | 0034 986 21 31 97 |
| FAX | 0034 986 21 46 53 |
| BANK OFFICER | CASIMIRO CONLES |
| E.MAIL | oficina0422@bancopastor.es |

PI y MARGAL, 96 BAJO – VIGO – PONTEVEDRA – SPAIN
TEL +34 986 247 602 – email: galipack@telefonica.net

**LOXISTICA INTEGRAL DO PALET S.L.**

### UREA BUSINESS IN THE COMPANY

LOXISTICA INTEGRAL DO PALET S.L. STARTED AS SELLER MANDATE OF THE UKRANIAN UREA FACTORIES IN 2006, PLACING THE FERTILIZED PRODUCT IN MANY COUNTRIES AROUND DE WORLD, MOSTLY FOCUS IN SPAIN AND LATIN AMERICAN.

### BRIEF CORPORATE PROFILE OF THE BENEFICIARY

| | |
|---|---|
| COMPANY / COMPAÑIA | LOXISTICA INTEGRAL DO PALET S.L. |
| CIF | B 36957215 |
| LEGAL FORM | LIMITED COMPANY |
| DATE CONSTITUTION | 13 JUN 2005.- |
| ADDRESS | PI y MARGAL, 96 - BAJO |
| CITY / COUNTRY | VIGO / PONTEVEDRA / SPAIN |
| SOCIAL OBJETIVES | 1.- MANUFACTURING AND MARKETING OF WOOD PALLETS FOR EXPORTS AND OTHER OBJECTS IN WOOD FOR CONSTRUCTION<br>2.- MARKETING AND SALES OF UREA.<br>3.- MARKETING AND SALE OF SUGAR.<br>4.- MARKETING AND SALE OF CEMENT PORTLAND. |
| VALIDITY OF SOCIETY | INDEFENITLY. |
| LEGAL REPRESENTATIVE | JESUS BARRALS. / President. |
| PASSPORT | 35279119 V |
| COMPANY'S ATTORNEY | CARLOS DIEZ ORBEJON. |
| COMPANY HISTORY | THE COMPANY LOXISTICA DO PALLET S.L, BEGAN IN 2005, MANUFACTURING WOOD PALLETS AND OTHER OBJECTS IN WOOD FOR CONSTRUCTION FOR THE SPANISH LOCAL MARKET AND FOR FOREIGN MARKETS.<br><br>HAVING IN THE COMPANY EXECUTIVES WITH VERY LONG TRAYECTORY IN BUSINESS THROUGH ALL EUROPE, UREA BUSINESS BECAME A HIGHLY INTEREST FOR THE BOARD BY THAT TIME, AND CAME OUT AS A RESULT BEIGN NAMED "SELLER MANDATE" FOR SEVERAL UKRANIAN UREA REFINERIES.<br><br>TODAY IN THE WORLD WITH HIGH DEMAND FOR COMMODITIES, UREA BUSINESS FOR THE AGRICULTURE BECOMES A VERY IMPORTANT ISSUE FOR THE COMPANY'S INTERNATIONAL DEVELOPMENT. |



**LOXISTICA INTEGRAL DO PALET S.L**
Legal representative.

PI y MARGAL, 96 BAJO – VIGO – PONTEVEDRA – SPAIN
TEL +34 986 247 602 – email: galipack@telefonica.net

CPC_0027

# CPC
## CONTINENTAL PETROLEUM CORPORATION

June, 3 2008

To: Corporate Funding Partners
New York

Att.: Mr. Pablo Antoniazzi

Dear. Mr. Antoniazzi

This Letter is to confirm, that the Letter of Credit for $2'537,500, issued by First American Bank in favor to Logistical Integral Do Pallet is in Banco Español from Spain, this Bank received the Letter last Friday (30/5/2008).

Thanks,

*[signature]*

Freddy Gambirazzio Arias
President

*[seal: CONTINENTAL PETROLEUM CORPORATION S.A.C. PRESIDENT]*

Av. Fray Angélico 520-B of. 203
San Borja, Lima-Perú
Telf.: 224 2554 Cel.:9967 1353
www.continentalpetroleumcorp.com

**TRANSLATION**

**LOGISTICA INTEGRAL DO PALET, S.L.**
PI Y MARGALL, 96 BAJO-VIGO-PONTEVEDRA-SPAIN
CIF B36.957.215
TEL: 00 34 986 247 602  FAX: 00 34 986 247 766

BANCO PASTOR
BRANCH 0422
ATT. MR. CONLES

DEAR GENTLEMEN:

We hereby inform you that the letter of credit issued by First American Bank on behalf of Loxistica Integral Do Palet SL for the amount of 2,537,500 USD and with Banco Popular SA as advising bank, is not accepted by our company due to the lack of confirmation for said letter of credit.

We request its return to the issuing bank since the financial document was not received as it appears documented in the contract signed between us and Continental Petroleum Corporation.

With nothing else, we bid farewell sending warm regards.

Loxistica
 Integral
  Do Palet, S.L.
 C.I.F. B36.957.215
FDO. Jesus Jaime Barral Rodriguez
Legal Representative

Banco Pastor
Ag. Urb. No. 2 [illegible]
[illegible]
Entry



Davila & Associates, Inc.
4900 N. 23rd St., McAllen, Texas 78504   Phone (956) 630-1995 Fax- (956) 682-1739 Web Site: www.translateservices.com   Email: info@translateservices.com
Translation of Urea Purchase/Sale Documents for Plastitex S.A.   JN 4217   03/18/2011   Page 5 of 18

CPC_0029



**LOXISTICA INTEGRAL DO PALET S.L.**
PI Y MARGALL, 96 BAJO-VIGO-PONTEVEDRA-SPAIN
CIF B36.957.215
TLF 00 34 986 247 602 FAX 00 34 986 247 766

**BANCO PASTOR**
**SUCURSAL 0422**
**ATT. SR. CONLES**

**MUY SRS NUESTROS:**
LES COMUNICAMOS QUE LA CARTA DE CREDITO EMITIDA POR EL FIRST AMERICAN BANK, A FAVOR DE LOXISTICA INTEGRAL DO PALET SL, POR UN IMPORTE DE 2.537.500.- USD Y CON EL BANCO POPULAR SA, COMO BANCO AVISADOR, NO ES ACEPTADA POR NUESTRA EMPRESA DEBIDO A LA FALTA DE CONFIRMACION DE DICHA CARTA DE CREDITO.
SOLICITAMOS SU DEVOLUCION AL BANCO EMISOR AL NO RECIBIR EL DOCUMENTO FINANCIERO TAL COMO APARECE DOCUMENTADO EN EL CONTRATO FIRMADO ENTRE NOSOTROS Y LA EMPRESA CONTINENTAL PETROLEUN CORPORATION.

SIN OTRO PARTICULAR, NOS DESPEDIMOS SALUDANDOLES MUY ATENTAMENTE.



**FDO. JESUS JAIME BARRAL RODRÍGUEZ**
**APODERADO**
**VIGO, 05/06/2008**



CPC_0030

**CONTRACT NUMBER: TRI-UREA/CON-PERU0000154/05**
**SALES & PURCHASE AGREEMENT**
**AGRICULTURAL PRILLED UREA**
N46%

This Agreement has been made and entered into on this 27th day of June 2008 by & between:

**TRIFECTA TRADING 165 (PTY) LTD**
UNIT D8, THE BEACHHEAD OFFICE PARK, 10 NIBLICK WAY
SOMERSET WEST, WESTERN CAPE
SOUTH AFRICA

REPRESENTED BY:

MR FRANS BADENHORST [DIRECTOR]

(HEREINAFTER REFERRED TO AS THE SELLER)

AND

**CONTINENTAL PETROLEUM CORPORATION**

AVENIDA FRAY ANGELICO NUMERO 250, OFICINA NUMERO 203

LIMA, PERU

REPRESENTED BY:

MR. FREDDY GAMBIRAZIO

(HEREINAFTER REFERRED TO AS THE BUYER)

---

**WHEREAS:**
The Seller and Buyer, each with full corporate authority, certify, represent and warrant that each can fulfill the requirements of this agreement and respectively provide the products and the funds referred to herein, in time and under the terms agreed to hereafter; and

**WHEREAS:**
The Seller hereby agrees and makes an irrevocable firm contract to sell and deliver AGRICULTURAL PRILLED UREA N46% TO GOST 2081-92B Cost, Insurance and Freight (CIF) Incoterms 2000

**WHEREAS:**
The Buyer hereby agrees and makes an irrevocable firm contract to purchase AGRICULTURAL PRILLED UREA N46% TO GOST 2081-92B Cost, Insurance and Freight (CIF) Incoterms 2000

**WHEREAS:**
The Seller and the Buyer both agree to finalize and execute this contract under the terms and conditions hereinafter set forth:

Initials Seller                           Page 1 of 9                           Initials Buyer

CPC_0031

**NOW THEREFORE:**

In consideration of the mutual promises, agreements, terms & conditions of this agreement, assertions and covenants herein and other good and valuable considerations, the receipt of which is acknowledged hereby, the parties hereto mutually and voluntarily agree as follows:

**TERMS AND CONDITIONS:**

1. **PRODUCT:**

    AGRICULTURAL PRILLED UREA N46% TO GOST 2081-92B (hereinafter referred to as "The Product") shall conform to the following specifications with the following main characteristics:

    1. 46% N, GOST 2081-92
    2. UREE 46% N, GOST 2081-92
    3. NITROGEN 46%
    4. BIURET BY WEIGHT MAX 1%
    5. MOISTURE 0.4% MAX BY METHOD OF DRYING
    6. FREE AMMONIA 160 PXT PPM MAX
    7. GRANULATION 1-4MM 90%MN
    8. COLOUR STANDARD PURE WHITE PRILLED
    9. PRII 95%
    10. FREE FLOWING 100% ANTI-CAKING TREATMENT
    11. MELTING POINT 132 DEGREES CELCIUS
    12. PHYSICAL FREE FROM HARMFUL SUBSTANCE, IMPURITIES & DUST
    13. RADIATION CERTIFIED NON RADIATION

2. **ORIGIN:**

    a. Ukraine, Russia, Romania, Italy. Seller's Choice with a complete buyer's approval.

3. **DESTINATION / PRODUCT DISCHARGE:**

    The destination shall be: CIF port Lima, Peru

    a. The minimum discharge rate of 1,500 (One thousand, five hundred) metric tons per Weather Working Day (WWD)
    b. subject to discharge port off-loading capabilities.

4. **PRODUCT DELIVERY:**

    The date (s) of bill of lading shall be considered the date (s) of delivery. The first delivery shall begin no later than, thirty (30) to fifty days after receipt and confirmation of operative financial instruments, acceptable to the Seller.

    Regardless of the shipping date indicated on the Financial Instrument, the Seller shall have the right to deliver earlier than agreed herein, but shall give sufficient notice to all designated parties and more particularly, the Buyer.



Initials Seller        Page 2 of 9        Initials Buyer

CPC_0032

The product shall be shipped to the destination port(s) of discharge in accordance with the relevant provisions of this contract and in minimum shipments of 12 500 (Twelve Thousand and Five Hundreds) metric tons (+/- 5 %) one per shipment to cover the total deliveries stated in the shipment schedule.

Total shipments shall be according to a shipping schedule (To be agreed and attached as Addendum "A" to this contract). The Buyer however accepts that shipping dates may vary slightly due to slight and reasonable variations in schedules as a result of the customary and usual exigencies. Consecutive shipments shall be shipped and delivered in accordance with the Buyer's receiving schedule, as sent to and approved by the seller, following execution hereof, with all shipments conforming to Incoterms 2000.

Partial shipments - allowed
Trans-shipment - not allowed

5. **PRODUCT WEIGHT AND QUALITY:**

The Seller guarantees that each shipment of The Product shall be provided with an inspection certificate of weight and quality at time of loading and such certificate shall be provided by Société Générale de Surveillance (Hereinafter referred to as "SGS") or similar recognized authority approved in writing by the Buyer at the Seller's expense, and shall be deemed final. The Seller shall instruct said authority to carry out the inspection in strict accordance with the International Chamber of Commerce (I.C.C.) Rules & Regulations.

The Buyer shall, if desired, and at his own expense have the right to arrange an additional inspection at Port of Loading to confirm loading. If discrepancies should at any time and in any particular case, result in relation to the inspection certificate (s) issued at the Port of Loading and Destination, it is hereby agreed that arbitration shall be employed to determine the appropriate judgment. Both parties agree to be bound by the arbitrator's decision for or against either Buyer or Seller. The parties shall apply rules of Arbitration applicable to the laws of South Africa at Buyer's election.

6. **QUANTITY:**

12 500 MT (Twelve Thousand Five Hundred) Metric Tons (+/- 5 %) to be delivered.
The precise programmed shipping schedule to be furnished by the Buyer in Appendix A attached and agreed by the Seller.

7. **PACKING:**

The product is to be packed in net 50 Kg. (Fifty kilograms) new Polypropylene bags with polyethylene lining. The bags have a combined tare of 140 grams and are sufficient to ensure the safe arrival of product to destination.

8. **PRICE PER METRIC TON:**

Price per Metric Ton of The Product shall be US$ 325.00 (Three Hundred and Twenty Five United States Dollars) per metric ton, Cost, Insurance and Freight (CIF)

9. **CONTRACT VALUE:**

N46% The quantity of product sold in this contract has been given the value of US$ 4,062,500.00 (Four Million and Sixty Two Thousand Five Hundred United States Dollars), being 12 500 metric tons (+/- 5%).

10. **PAYMENT TERMS:**

Payment shall be made by: Documentary Letter of Credit, Irrevocable, Transferable, Divisible, Assignable, Unencumbered Bank Guarantee payable 100% at sight upon presentation of relevant SGS Inspection and clean shipping documents

The Documentary Letter of Credit documents shall be negotiable and payable at the Buyer's Bank.

All bank charges accrued at Buyer's bank regarding the opening of the letter of credit shall be for the Buyer's account.

11. **PROOF OF PRODUCT:**

Proof of Product shall be provided by the Seller after receipt of Buyer's payment instrument.

12. **PRODUCT DOCUMENTATION PER LIFT:**

Product documentation required for payment under the Buyer's Letters of Credit/ Payment Instrument may include the following, but to be agreed between Buyer and Seller before final operative instruments are submitted by the Buyer's Bank to the Seller's Bank:

A. Three (3) original and three (3) copies of signed commercial invoices;
B. Three (3) original and three (3) copies of full set of clean on board Ocean Bill of Lading (B/L) marked "freight pre-paid" or "payable per charter party" issued to the order of buyer;
C. Three (3) original and three (3) copies of Certificate of quality quantity and weight inspection issued by SGS only;
D. Three (3) original and three (3) copies of Certificate of Origin, issued by the Chamber of Commerce and Industry of the country of origin;
E. One (1) original and three (3) copies of shipping company statement confirming that the age of the vessel does not exceed twenty (20) years and the vessel is registered under Lloyds registry;
F. Three (3) original and three (3) copies of Specification certificate issued by the appropriate government authority in country of origin;
G. Three (3) original and three (3) copies of packing list showing:
  i) gross / net weight;
  ii) ii) the number of ocean bill of lading;

13. **SHIPPING AND DEMURRAGE CONDITIONS**

A. All charges at the loading port for Seller's account.
B. All supervision charges at the port of unloading shall be for the Buyer's account.
C. Seller shall provide written alert to Buyer within 24 (twenty- four) hours after receipt of notice that vessel transporting commodity has experienced damage, peril, loss, breakdown or accident.
D. The Buyer shall be responsible for the import permit.
E. All import expenses including but not limited to; import taxes, consular fees, customs, import clearance, any necessary documentation imposed by the country of destination, discharging and any



N46%

related expenses at discharge port are for the account of the Buyer and are the sole responsibility of the Buyer.

- F. Demurrage shall be calculated on the basis of actual Vessel Master's certified, recorded time sheet & statement of facts.
- G. The discharge rate shall be 1,500 metric tons per weather working day of twenty-four (24) consecutive hours.
- H. The times preceding to 0800 hours on the day succeeding any holidays are excluded, even if used, whether in berth or not, (WIBON), whether in port or not (WIPON), whether in free practice or not (WIFPON), whether customs cleared or not, (WICCON).
- I. Vessel hatch opening and closing shall be performed under crew responsibility, control and account.
- J. Time to count from 1300 same working day if notice of readiness tendered/accepted before noon, and from 0800 hours next working day if notice of readiness tendered/accepted after 1200 hours during a working day.
- K. Within seventy two (72) hours after vessel's departure from the port of loading, the Seller's shipping agent shall advise the Buyer by way of telex/fax/email indicating: the vessel's sailing date; the name of the nominated vessel and steamship company; name of ship's captain; tonnage; ocean bill of lading number; contract number; the flags of the vessel; net quantity loaded; number of hatches; and steamed time of arrival (hereinafter known as "ETA") at the discharge port.
- L. The ship's captain or master of the vessel shall give the Buyer notice of estimated time of arrival by telex/fax/email at 72/48/24 hours prior to ETA at each port of discharge. It is agreed that the demurrage or premium for speed of dispatch be settled by the buyer and the within three (3) international banking days from receipt of the vessel's master invoice. Vessel Master shall issue master's invoice within six (6) standard business hours.
- M. Lighterage/lightering: due to insufficient draft shall all be for the Seller's account since it is agreed that minimum draft is established in clause T. Hereunder. All lighterage operations shall be conducted under the Vessel Master's approval and supervision.
- N. If Buyer fails to pay demurrage charges for any shipment under this contract, Seller shall without incurring default under this contract, have the right to delay or terminate further shipment(s) until any past due demurrage is paid by unconditional swift wire.
- O. Geared vessels are mandatory. The Buyer will not accept gearless vessels.
- P. Should the vessel be required to shift from one berth to another at port of discharge, the expense in shifting shall be for the Buyer's account if same is ordered by authorities due to cargo related matters.
- Q. If same is ordered due to vessel related matters, same will be for owner's account. In any event, actual time utilized in moving from the anchorage/ waiting area to berth when available due to tide, pilot availability, port authority restrictions, and/or other reasons beyond owner's control, time will count as lay time until vessel is underway to berth.
- R. It is understood by sellers that vessel load shall not exceed 159 meters as per discharge port restriction.
- S. Vessel may not be older than 20 years.
- T. Vessel draft may not exceed 9.6 meters unless so requested and agreed between buyer and seller.
- U. Vessel to have four hatches and discharge operational ability to discharge all four hatches simultaneously.
- V. All necessary import/custom formalities and arrangements for taking delivery of cargo prior to vessel's arrival are the responsibility of the Buyer. In the event of incomplete import formalities, or no storage facilities, or no transport arrangements, or in the event customs or port authorities do not allow discharge to commerce or halt discharge due to Buyer's or their cargo receivers failure to arrange or complete the formalities, the Buyer to pay the demurrage and any other associated costs, including but not limited to shifting costs incurred to the seller's/vessel's/owner's before discharge can commence or can recommence.
- W. Trans-shipment is not allowed.
- X. Partial shipment is allowed.
- Y. All delivery vessels used by the seller shall and will be an "ICE CLASS VESSELS" for the term of winter time between months on October to June.

N46%  Z.  Buyer shall on its own account, place any necessary icebreakers at Vessel's disposal.

**14. FORCE MAJEURE:**

Neither party to this contract shall be held responsible for breach of contract caused by an Act of God, Insurrection, Civil War, War, Military operation or local emergency. The parties do hereby accept the international provision of "Force Majeure" as published by the International Chamber of Commerce, Geneva, Switzerland, and as defined by I.C.C. Rules Uniform Customs and Practice.

**15. DISPUTES AND ARBITRATION:**

If any dispute arises, the two parties agree to try their utmost to solve it by friendly negotiation. If the dispute proves impossible to settle, all disputes arising out of or in connection with the present contract shall be finally settled under the Rules Of Arbitration Of The International Chamber Of Commerce + the disputed matter will be subject to Arbitration by an Arbitrator in Paris, France under ICC Rules And Regulations. The losing party will pay the Arbitration fee. It is understood that in the event of dispute or arbitration, English shall prevail. The award of the Arbitrator shall be final and binding for both parties.

**16. AUTHORITY TO EXECUTE THIS CONTRACT:**

The parties to this contract declare that they have full authority to execute this document and accordingly to be fully bound by the terms and conditions.

**17. EXECUTION OF THIS CONTRACT:**

This contract may be executed simultaneously in two or more counterparts via telex or facsimile transmission, each of which shall be deemed as originals and legally binding.

**18. GOVERNING LAW:**

This contract shall be governed, and interpreted in accordance with the United Nation Convention for the Sale of Goods (U.N. Convention). In event of inconsistency between this contract and the provisions of the U.N. Convention, this contract shall have priority. For the purpose of Article 39, of the U.N. Convention, a reasonable period of time shall be deemed to be 5 days.

**19. LANGUAGE USED:**

The English language shall be used in all documentation and communication relating to this contract, including legal proceedings

**20. ASSIGNMENT:**

This agreement is not assignable or transferable by either party, without prior written permission of the buyer and any approved assignment shall be subject to such transfer being strictly required for the general performance of this contract.



Initials Seller                    Page 6 of 9                    Initials Buyer

21. **NON-CIRCUMVENTION AND NON-DISCLOSURE:**

The parties accept and agree to the provisions of the International Chamber of Commerce, Geneva, Switzerland for non-circumvention and non-disclosure with regards to all and everyone of the parties involved in this transaction and contract, additions, renewals, and third party assignments, with full reciprocation for a period of (3) three years from the date of execution of this contract.

22. **PROCEDURES THAT ARE TO BE FOLLOWED IN TIMELY MANNER:**
    1. Buyer sends a Letter of Intent
    2. Sellers sends a draft contract
    3. Sellers sends the proforma Invoice
    4. Buyer signs and seals the contract
    5. Sellers signs and seal the contract
    6. Sellers send 2 hard copies to the buyer
    7. Buyer issues the Documentary Letter of Credit (as per attached verbiage)

23. **CONTRACT TERM**

This contract shall come into force and effect on the date of signature by the Buyer and shall be in effect for the length of period that would expressly be required to deliver the total quantity of 12,500 Metric Tons per month for 12 months to the Buyer's discharge port, which shall include 5 (five) days for signature of contract and issuance of the financial instrument (one DLC per month), 30 (thirty) – 50 days allowance for shipping logistics and 5 (five) days for final payment settlement by negotiation of documents under the Letter of Credit

24 **BREACH OF CONTRACT AND TERMINATION**

In the event of a breach of any term of this contract the defaulting party shall be given a reasonable period in which to rectify the said breach. If the defaulting party fails to rectify the breach, the aggrieved party shall be entitled to cancel the contract and claim damages for losses and/or expenses suffered. Consequential losses shall be specifically excluded from this contract.

25 **OTHER MISCELLANEOUS TERMS AND CONDITIONS**

The Buyer confirms that their funds are good clean, cleared, unencumbered, legitimately earned funds from legal sources.

Both parties agree to promptly provide all reasonable due diligence and/or "Know Your Client" information requested by the other party and/or their bankers and/or applicable regulatory authorities.

Both parties agree that time is of the essence in relation to this contract and shall promptly and efficiently attend to their respective undertakings and responsibilities.

Both signatories hereto acknowledge that they have read this agreement, they have fully understood the terms and conditions contained herein, and by attaching their initial and signature hereto have unconditionally agreed to be bound hereto as of the date noted herein.

Once executed, any changes hereto must be mutually agreed and confirmed by the parties in writing.

**CONTRACT NUMBER: TRI-UREA/CON-PERU0000154/05**
**SALES & PURCHASE AGREEMENT**
**AGRICULTURAL PRILLED UREA**

N46%

Start and End date will be determined by Date of Signature of the contract by both parties.

This agreement may be signed in one or more counterparts and the parties agree that facsimile/email copies of this agreement to be considered as a legal original and signatures thereon shall be legal and binding agreement.

| **BANKING COORDINATES: BUYER** | | **BANKING COORDINATES: SELLER** | |
|---|---|---|---|
| Bank Name | : | Bank Name | : ABSA – South Africa |
| Address | : | Bank Address | : 116 Main Road, Somerset West |
| Account Name | : | Bank Officer | : Hannes Brandt |
| Account No | : | Bank Phone | : +27 (0)21 850 7100 |
| SWIFT Code | : | Bank Fax | : +27 (0)21 |
| Phone No | : | Swift Code | : ABSAZAJJ |
| Fax No | : | Account Name | : Trifecta Trading 165 (Pty) Ltd |
| Officer Name | : | Account Number | : 4068824313 |

The Contractual Parties herein have read and understand the Terms & Conditions contained herein while reserved the rights to legal representation and waving such rights, the parties have executed this agreement on this 27th day of June 2008

For and on Behalf of Seller: TRIFECTA TRADING 165 (PTY) LTD

DATED: 27th day of June 2008

For and Behalf of Buyer:

Dated: _____ day of _____ 2008

---

Initials Seller                    Page 8 of 9                    Initials Buyer

CPC_0038

**CONTRACT NUMBER:** TRI-UREA/CONFPERU0000154/05
**SALES & PURCHASE AGREEMENT**
**AGRICULTURAL PRILLED UREA**

N46%

**APPENDIX A**

DELIVERY SCHEDULE:

12, 500 (+/- 5%) Metric Tons X 1 Shipment



| Initials Seller | Page 9 of 9 | Initials Buyer |

CPC_0039

# CORPORATE FUNDING PARTNERS
global trade finance • letter of credit facilities

Date: July 8, 2008                                    Invoice # 07080081

| | | |
|---|---|---|
| Client Name | : | Freddy Gambirazio |
| Company | : | Continental Petroleum Corporation S.A.C. |
| Address | : | Fray Angelico 520 Of. 203 |
| | | L34 Lima, Peru |
| Telephone | : | 511-593-50-95 |
| Fax | : | N/A |
| Email | : | lvargaspa2004@yahoo.com |
| Agent | : | Pablo Antoniazzi |
| Agent email | : | pantoniazzi@aol.com |

Total of all Letters of Credit for this worksheet only          USD 4,062,500.00
(Plus 5% variance)

### Detail

**Description**                                                        **Amount**

Type: Irrevocable Transferable Letter of Credit to applicant supplier     USD 4,265,625.00
Includes 5% variance
Validity: Up to 90 days
Requirements:
- pro-forma invoice from supplier
- purchase order from client to supplier
- additional statement of the underlying transaction from your company

| | |
|---|---|
| Letter of Credit Charges | USD 106,640.62* |
| Standard LC Opening Fee | 275.00 |
| Document Negotiation Fee | 400.00 |
| Total Letter of Credit Charges | USD 107,315.62 |

**Total due prior to LC opening (100% of total)**                 **USD 107,315.62**

*ONE TIME RATE
For each instance of non-negotiation, there will be a charge of $ 250.00 payable upon receipt of invoice. Upon negotiation there may be a holdback of up to 0.25 percent of the payment to the beneficiary from the LC issuing bank.
If additional fees are required they must be paid upon receipt of invoice. They may include any items that are shown in the letter of credit to be paid by the beneficiary and where the beneficiary refuses to pay.
All letters of credit are governed by the Uniform Customs and Practices for Documentary Credits 1993 ("UCP") Per UCP article no.18cii it states:
"Where a Credit stipulates that such charges are for the account of a party other than the instructing party, and charges cannot be collected, the instructing party remains ultimately liable for the payment thereof."

### *Please Fax A Copy Of Your Wire Transfer When Paying This Invoice*

Please remit to: LC.COM, Ltd. 201 W 72nd Street, Suite 6M, New York, NY  10023
Phone +1.212.724.8333                     Fax +1.212.656.1509
Wire transfer instructions: HSBC – New York. NY
aba#: 021001088   acct#:610859048   SWIFT:MRMDUS33

CPC_0040