28/04/08-16:42:58      LocalSwiftAcks-7730-000001     3

REMITTING BANK TO FORWARD DOCUMENTS IN ONE MAILING TO FIRST AMERICAN BANK, ATTN: TRADE FINANCE DIVISION, 1850 LOUIS AVENUE, ELK GROVE, IL 60007 BY COURIER, AT BENEFICIARY'S EXPENSE, UNDER SWIFT ADVICE TO US. PLEASE INCLUDE YOUR PAYMENT INSTRUCTIONS. PAYMENT WILL BE EFFECTED, IN ACCORDANCE WITH YOUR INSTRUCTIONS, UPON RECEIPT OF COMPLYING DOCUMENTS AT OUR COUNTERS.

57D: 'Advise Through' Bank -Name&Addr
    BANCAJA
    AVENIDA DE LA PUERTO
    31 FLOOR 6
    46021 VALENCIA, SPAIN
72: Sender to Receiver Information
    TRANSFER BANK: BANCAJA

---------- Message Trailer ----------

{MAC:61801560}
{CHK:14F212D5E7AB}
PKI Signature: MAC-Equivalent

---------- Interventions ----------

Category   : Network Report
Creation Time : 28/04/08 16:42:37
Application  : SWIFT Interface
Operator   : SYSTEM
Text
{1:F21FAMBUS44AXXX4859012983}{4:{177:0804251638}{451:0}{108:EXPRESSTRADE}}

Plas-21

# PLASTITEX S.A.

Colonia Elisa 481
Villa Elisa - Paraguay
Tel.: (595-21) 946 273 / 945 830
Fax: (595-21) 945 914
e-mail: plastitex@tigo.com.py



Industria de Plástico
Importación – Exportación – Distribución

Villa Elisa, 22 de mayo de 2008

**REF.:** Demora Confirmación Carta de Crédito Nº RIMP/08/101606

Señores
FIRST AMERICAN BANK
Elk Grove Village, Il 60007, USA
Presente

Por la presente solicitamos que la Carta de Crédito Nº RIMP/08/101606 con fecha 25/04/08, abierta por vuestro Banco, que confirme al Banco BANCAJA beneficiario. Sentimos la demora que estamos soportando para que se realice el negocio, esto obedece a la solicitud del Proveedor que dicha Confirmación esta claramente expresada en la Factura Pro forma/Invoice Nº 8 con fecha 03/31/08 y es el único detalle para la realización plena de esta negociación, por tanto, lo mas urgente se extienda la confirmación con aviso de retorno.

Se acompaña la Factura Proforma

Atentamente,

PLASTITEX S.A.
JOSE MARIA MUSSA
APODERADO

Plas-22


# GRANAPA limited Society

PLASTITEX
Paraguay
Att. Jose Mussa

**ASUNTO: CARTA DE CREDITO**
**FECHA: 23.05.08**

MUY SRS. NUESTROS:
    LES INFORMAMOS QUE HEMOS RECIBIDO UNA NOTIFICACION DE NUESTRO PRODUCTOR DE UREA, DONDE NOS INDICA QUE LA CARTA DE CREDITO Nº RIMP/08/101606 A FAVOR DE GRANAPA S.L. EMITIDA POR EL FIRST AMERICAN BANK. NO SE CONSIDERA VALIDA AL NO VENIR CONFIRMADA POR UN SEGUNDO BANCO TOP 25 DEL MUNDO.
    A PESAR DE TODA NUESTRA BUENA VOLUNTAD E INTENCION DE LLEVAR A CABO EL NEGOCIO NOS VEMOS OBLIGADOS A CANCELAR LA OPERACIÓN SI LA CARTA DE CREDITO NO SE CONFIRMA POR PARTE DE SU BANCO.

Saludos cordiales.

José Antonio Pazos
Presidente

Eduardo Vicenta 12-1ª Cangas (Pontevedra) Spain
CIF: B-36.460.962
Telf: +34 986 851 841 Fax: +34 986 697 851 Movil 034 622 018 873 Email galipack@telefonica.net

Plas-23

**Trifecta Trading 165 (Pty) Ltd**
Unit D9, The Beachhead Office Park
10 Niblick Way
Somerset West, Western Cape 7129
South Africa



**Proforma Invoice**

Proforma No   2554
Date          27-Jun-2008
Page          1

Sold To:
Plastitex S.A.
Colonia Elisa 451
Villa Elisa
Paraguay

Ship To:
Plastitex S.A.
Colonia Elisa 451
Villa Elisa
Paraguay

Business No.: 2002/009728/07

| Item No. | Quantity | Unit | Description | Tax | Unit Price | Amount |
|---|---|---|---|---|---|---|
| urea0001 | 12,500 | MT | Urea Carbamide, Prilled, Agri Nitrogen 46.0% by weight min Moisture 0.5% max Biuret 1% max by weight Fisper 0.35 max Anti-caking agent 0.5% max Free ammonia 160 pxt ppm max Prill 94% max Granulation dimension from 1-4 mm: 90% min Dimension less than 1mm: absence Melting point @ 132 degrees Celsius centigrade Colour pure white Odor threshold odorless or slight ammonia Boiling point decomposes before boiling Hazardous ingredients none according to controlled product regulations Account Name : Trifecta Trading 165 (Pty) Ltd Account Number : 4058824313 Branch : Somerset West Bank : ABSA - South Africa Swift Code : ABSAZAJJ  - No Tax | | 350.00 | 4,375,000.00 |

| Comments | | Freight | 0.00 |
|---|---|---|---|
| | | Total Amount in USD | 4,375,000.00 |

Plas-24

**CONTRACT NUMBER: TRI-UREA/CON-PERU0000154/08**
**SALES & PURCHASE AGREEMENT**
**AGRICULTURAL PRILLED UREA**

This Agreement has been made and entered into on this 2nd day of July 2008 by & between:

**TRIFECTA TRADING 165 (PTY) LTD**
UNIT D8, THE BEACHHEAD OFFICE PARK, 10 NIBLICK WAY
SOMERSET WEST, WESTERN CAPE
SOUTH AFRICA

**REPRESENTED BY:**

**MR FRANS BADENHORST [DIRECTOR]**
(HEREINAFTER REFERRED TO AS THE SELLER)

**AND**

**PLASTITEX SA**
**COLONIA ELISA 461, VILLA ELISA**
**PARAGUAY**

**REPRESENTED BY:**
**MR JOSE MARIA MUSSA**
(HEREINAFTER REFERRED TO AS THE BUYER)

**WHEREAS:**
The Seller and Buyer, each with full corporate authority, certify, represent and warrant that each can fulfill the requirements of this agreement and respectively provide the products and the funds referred to herein, in time and under the terms agreed to hereafter; and

**WHEREAS:**
The Seller hereby agrees and makes an irrevocable firm contract to sell and deliver AGRICULTURAL PRILLED UREA N46% TO GOST 2081-92B Cost, Insurance and Freight (CIF) Incoterms 2000

**WHEREAS:**
The Buyer hereby agrees and makes an irrevocable firm contract to purchase AGRICULTURAL PRILLED UREA N46% TO GOST 2081-92B Cost, Insurance and Freight (CIF) Incoterms 2000

**WHEREAS:**
The Seller and the Buyer both agree to finalize and execute this contract under the terms and conditions hereinafter set forth:

**NOW THEREFORE:**
In consideration of the mutual promises, agreements, terms & conditions of this agreement, assertions and covenants herein and other good and valuable considerations, the receipt of which is acknowledged hereby, the parties hereto mutually and voluntarily agree as follows:

Initials Seller                    Page 1 of 7                    Initials Buyer

**CONTRACT NUMBER: TRI-UREA/CON-PERU0000154/06**
**SALES & PURCHASE AGREEMENT**
**AGRICULTURAL PRILLED UREA**

**TERMS AND CONDITIONS:**

1. **PRODUCT:**

   AGRICULTURAL PRILLED UREA N46% TO GOST 2081-92B (hereinafter referred to as "The Product") shall conform to the following specifications with the following main characteristics:

   1. 46% N, GOST 2081-92
   2. UREE 46% N, GOST 2081-92
   3. NITROGEN 46%
   4. BIURET BY WEIGHT MAX 1%
   5. MOISTURE 0.4% MAX BY METHOD OF DRYING
   6. FREE AMMONIA 160 PXT PPM MAX
   7. GRANULATION 1-4MM 90%MN
   8. COLOUR STANDARD PURE WHITE PRILLED
   9. PRII 95%
   10. FREE FLOWING 100% ANTI-CAKING TREATMENT
   11. MELTING POINT 132 DEGREES CELCIUS
   12. PHYSICAL FREE FROM HARMFUL SUBSTANCE, IMPURITIES& DUST
   13. RADIATION CERTIFIED NON RADIATION

2. **ORIGIN:**

   a. Ukraine, Russia, Romania, Italy. Seller's Choice with a complete buyer's approval.

3. **DESTINATION / PRODUCT DISCHARGE:**

   The destination shall be: CIF Puerto Villeta – Ceregral SAECA - Paraguay

   a. The minimum discharge rate of 1,500 (One thousand, five hundred) metric tons per Weather Working Day (WWD)
   b. subject to discharge port off-loading capabilities

4. **PRODUCT DELIVERY:**

   The date (s) of bill of lading shall be considered the date (s) of delivery. The first delivery shall begin no later than, thirty (30) to fifty days after receipt and confirmation of operative financial instruments, acceptable to the Seller.

   Regardless of the shipping date indicated on the Financial Instrument, the Seller shall have the right to deliver earlier than agreed herein, but shall give sufficient notice to all designated parties and more particularly, the Buyer.

   The product shall be shipped to the destination port(s) of discharge in accordance with the relevant provisions of this contract and in minimum shipments of 12 500 (Twelve Thousand and Five Hundreds) metric tons (+/- 5 %) one per shipment to cover the total deliveries stated in the shipment schedule

   Total shipments shall be according to a shipping schedule (To be agreed and attached as Addendum "A" to this contract). The Buyer however accepts that shipping dates may vary slightly due to slight and reasonable variations in schedules as a result of the customary and usual exigencies. Consecutive shipments shall be shipped and delivered in accordance with the Buyer's receiving schedule, as sent to and approved by the seller, following execution hereof, with all shipments conforming to Incoterms 2000.

Initials Seller                                                    Page 2 of 7                                                    Initials Buyer

CONTRACT NUMBER: TRI-UREA/CON-PERU0000154/06
**SALES & PURCHASE AGREEMENT**
AGRICULTURAL PRILLED UREA

### 5. PRODUCT WEIGHT AND QUALITY:

The Seller guarantees that each shipment of The Product shall be provided with an inspection certificate of weight and quality at time of loading and such certificate shall be provided by Société Générale de Surveillance (Hereinafter referred to as "SGS") or similar recognized authority approved in writing by the Buyer at the Seller's expense, and shall be deemed final. The Seller shall instruct said authority to carry out the inspection in strict accordance with the International Chamber of Commerce (I C C ) Rules & Regulations.

The Buyer shall, if desired, and at his own expense have the right to arrange an additional inspection at Port of Loading to confirm loading. If discrepancies should at any time and in any particular case, result in relation to the inspection certificate (s) issued at the Port of Loading and Destination, it is hereby agreed that arbitration shall be employed to determine the appropriate judgment. Both parties agree to be bound by the arbitrator's decision for or against either Buyer or Seller. The parties shall apply rules of Arbitration applicable to the laws of South Africa at Buyer's election.

### 6. QUANTITY:

12 500 MT (Twelve Thousand Five Hundred) Metric Tons (+/- 5 %) to be delivered
The precise programmed shipping schedule to be furnished by the Buyer in Appendix A attached and agreed by the Seller

### 7. PACKING:

The product is to be packed in net 50 Kg. (Fifty kilograms) new Polypropylene bags with polyethylene lining. The bags have a combined tare of 140 grams and are sufficient to ensure the safe arrival of product to destination. 30 bags packed in a slingbag of 1500kg

### 8. PRICE PER METRIC TON:

Price per Metric Ton of The Product shall be US$ 350.00 (Three Hundred and Fifty United States Dollars) per metric ton, Cost, Insurance and Freight (CIF)

### 9. CONTRACT VALUE:

The quantity of product sold in this contract has been given the value of US$ 4,375,000.00 (Four Million Three Hundred and Seventy Five Thousand United States Dollars), being 12 500 metric tons (+/- 5%)

### 10. PAYMENT TERMS:

Payment shall be made by: Irrevocable and Transferable (divisible) Documentary Letter of Credit, payable 100% at sight upon presentation of relevant shipping documents.

The Documentary Letter of Credit documents shall be negotiable and payable at the Buyer's Bank.

All bank charges accrued at Buyer's bank regarding the opening of the letter of credit shall be for the Buyer's account.

### 11. PROOF OF PRODUCT

Proof of Product shall be provided by the Seller after receipt of Buyer's payment instrument.

### 12. PRODUCT DOCUMENTATION PER LIFT:

Product documentation required for payment under the Buyer's Letters of Credit/ Payment Instrument may include the following, but to be agreed between Buyer and Seller before final operative instruments are submitted by the Buyer's Bank to the Seller's Bank:

**CONTRACT NUMBER: TRI-UREA/CON-PERU0000154/06**
**SALES & PURCHASE AGREEMENT**
**AGRICULTURAL PRILLED UREA**

1. Signed commercial invoice issued by the beneficiary in 1 original plus 3 Copies indicating lc number, name of the lc issuing bank, and full details of the Goods shipped
2. Full set of clean on board marine bills of lading made out to the order of The shipper, endorsed to the order of xxxxxxxxxxxxxxxx marked freight prepaid, indicating notify xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
3. Shipping compliance certificate signed and issued by an authorized officer Of xxxxxxxxxxxxxxxxxxxxxxxxxx on their letterhead and countersigned by the trade Finance division of xxxxxxxx bank xxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
4. Negotiable insurance policy or certificate for 110 percent of cif invoice Value, endorsed in blank, and covering all risks and war risks
5. Certificate of origin issued by the chamber of commerce of the country of Origin or the department of trade or the ministry of industry in 1 original and 3 copies
6. Phytosanitary certificate issued by the government authority or agency in The country of origin in 1 original and 3 copies
7. Certificate of quality and quantity (including total weight) issued by sgs At port of loading in 1 original and 3 copies.

13. **SHIPPING AND DEMURRAGE CONDITIONS**
   A. All charges at the loading port for Seller's account
   B. All supervision charges at the port of unloading shall be for the Buyer's account
   C. Seller shall provide written alert to Buyer within 24 (twenty-four) hours after receipt of notice that vessel transporting commodity has experienced damage, peril, loss, breakdown or accident
   D. The Buyer shall be responsible for the import permit
   E. All import expenses including but not limited to, import taxes, consular fees, customs, import clearance, any necessary documentation imposed by the country of destination, discharging and any related expenses at discharge port are for the account of the Buyer and are the sole responsibility of the Buyer
   F. Demurrage shall be calculated on the basis of actual Vessel Master's certified, recorded time sheet & statement of facts
   G. The discharge rate shall be 1,500 metric tons per weather working day of twenty-four (24) consecutive hours
   H. The times preceding to 0800 hours on the day succeeding any holidays are excluded, even if used, whether in berth or not, (WIBON), whether in port or not (WIPON), whether in free practice or not (WIFPON), whether customs cleared or not, (WICCON)
   I. Vessel hatch opening and closing shall be performed under crew responsibility, control and account
   J. Time to count from 1300 same working day if notice of readiness tendered/accepted before noon, and from 0800 hours next working day if notice of readiness tendered/accepted after 1200 hours during a working day
   K. Within seventy two (72) hours after vessel's departure from the port of loading, the Seller's shipping agent shall advise the Buyer by way of telex/fax/email indicating: the vessel's sailing date; the name of the nominated vessel and steamship company, name of ship's captain; tonnage; ocean bill of lading number; contract number; the flags of the vessel, net quantity loaded; number of hatches; and steamed time of arrival (hereinafter known as "ETA") at the discharge port.
   L. The ship's captain or master of the vessel shall give the Buyer notice of estimated time of arrival by telex/fax/email at 72/48/24 hours prior to ETA at each port of discharge. It is agreed that the demurrage or premium for speed of dispatch be settled by the buyer and the within three (3) international banking days from receipt of the vessel's master invoice. Vessel Master shall issue master's invoice within six (6) standard business hours.
   M. Lighterage/lightering: due to insufficient draft shall all be for the Seller's account since it is agreed that minimum draft is established in clause T. Hereunder. All lighterage operations shall be conducted under the Vessel Master's approval and supervision.
   N. If Buyer fails to pay demurrage charges for any shipment under this contract, Seller shall without incurring default under this contract, have the right to delay or terminate further shipment(s) until any past due demurrage is paid by unconditional swift wire

**CONTRACT NUMBER: TRI-UREA/CON-PERU0000154/06**
**SALES & PURCHASE AGREEMENT**
**AGRICULTURAL PRILLED UREA**

- O  Geared vessels are mandatory. The Buyer will not accept gearless vessels.
- P  Should the vessel be required to shift from one berth to another at port of discharge, the expense in shifting shall be for the Buyer's account if same is ordered by authorities due to cargo related matters.
- Q  If same is ordered due to vessel related matters, same will be for owner's account. In any event actual time utilized in moving from the anchorage/waiting area to berth when available due to tide, pilot availability, port authority restrictions, and/or other reasons beyond owner's control, time will count as lay time until vessel is underway to berth.
- R  It is understood by sellers that vessel load shall not exceed 159 meters as per discharge port restriction.
- S  Vessel may not be older than 20 years.
- T  Vessel draft may not exceed 9.6 meters unless so requested and agreed between buyer and seller.
- U  Vessel to have four hatches and discharge operational ability to discharge all four hatches simultaneously.
- V  All necessary import/custom formalities and arrangements for taking delivery of cargo prior to vessel's arrival are the responsibility of the Buyer. In the event of incomplete import formalities, or no storage facilities, or no transport arrangements, or in the event customs or port authorities do not allow discharge to commence or halt discharge due to Buyer's or their cargo receivers failure to arrange or complete the formalities, the Buyer to pay the demurrage and any other associated costs, including but not limited to shifting costs incurred to the seller's/vessel's/owner's before discharge can commence or can recommence.
- W  Trans-shipment is allowed.
- X  Partial shipment is not allowed.
- Y  All delivery vessels used by the seller shall and will be an "ICE CLASS VESSELS" for the term of winter time between months of October to June.
- Z  Buyer shall on its own account, place any necessary icebreakers at Vessel's disposal.

### 14. FORCE MAJEURE:
Neither party to this contract shall be held responsible for breach of contract caused by an Act of God, Insurrection, Civil War, War, Military operation or local emergency. The parties do hereby accept the international provision of "Force Majeure" as published by the International Chamber of Commerce, Geneva, Switzerland, and as defined by I.C.C. Rules Uniform Customs and Practice.

### 15. DISPUTES AND ARBITRATION:
If any dispute arises, the two parties agree to try their utmost to solve it by friendly negotiation. If the dispute proves impossible to settle, all disputes arising out of or in connection with the present contract shall be finally settled under the Rules Of Arbitration Of The International Chamber Of Commerce - the disputed matter will be subject to Arbitration by an Arbitrator in Paris, France under ICC Rules And Regulations. The losing party will pay the Arbitration fee. It is understood that in the event of dispute or arbitration, English shall prevail. The award of the Arbitrator shall be final and binding for both parties.

### 16. AUTHORITY TO EXECUTE THIS CONTRACT:
The parties to this contract declare that they have full authority to execute this document and accordingly to be fully bound by the terms and conditions.

### 17. EXECUTION OF THIS CONTRACT:
This contract may be executed simultaneously in two or more counterparts via telex or facsimile transmission, each of which shall be deemed as originals and legally binding.

### 18. GOVERNING LAW:
This contract shall be governed, and interpreted in accordance with the United Nation Convention for the Sale of Goods (U.N. Convention). In event of inconsistency between this contract and the provisions of the U.N. Convention, this contract shall have priority. For the purpose of Article 39, of the U.N. Convention, a reasonable period of time shall be deemed to be 5 days.

Initial Seller     Page 5 of 7     Initial Buyer

**CONTRACT NUMBER: TRI-UREA/CON-PERU0000154/06**
**SALES & PURCHASE AGREEMENT**
**AGRICULTURAL PRILLED UREA**

### 19. LANGUAGE USED:
The English language shall be used in all documentation and communication relating to this contract, including legal proceedings.

### 20. ASSIGNMENT:
This agreement is not assignable or transferable by either party without prior written permission of the buyer and any approved assignment shall be subject to such transfer being strictly required for the general performance of this contract.

### 21. NON-CIRCUMVENTION AND NON-DISCLOSURE:
The parties accept and agree to the provisions of the International Chamber of Commerce, Geneva, Switzerland for non-circumvention and non-disclosure with regards to all and everyone of the parties involved in this transaction and contract, additions, renewals, and third party assignments, with full reciprocation for a period of (3) three years from the date of execution of this contract.

### 22. PROCEDURES THAT ARE TO BE FOLLOWED IN TIMELY MANNER:
1. Buyer sends a Letter of Intent
2. Sellers sends a draft contract
3. Sellers sends the proforma invoice
4. Buyer signs and seals the contract
5. Sellers signs and seal the contract
6. Sellers send 2 hard copies to the buyer
7. Buyer issues the Documentary Letter of Credit (as per attached verbiage)

### 23. CONTRACT TERM
This contract shall come into force and effect on the date of signature by the Buyer and shall be in effect for the length of period that would expressly be required to deliver the total quantity of 12,500 Metric Tons per month for 12 months to the Buyer's discharge port, which shall include 5 (five) days for signature of contract and issuance of the financial instrument (one DLC per month), 30 (thirty) – 60 days allowance for shipping logistics and 5 (five) days for final payment settlement by negotiation of documents under the Letter of Credit.

### 24. BREACH OF CONTRACT AND TERMINATION
In the event of a breach of any term of this contract the defaulting party shall be given a reasonable period in which to rectify the said breach. If the defaulting party fails to rectify the breach, the aggrieved party shall be entitled to cancel the contract and claim damages for losses and/or expenses suffered. Consequential losses shall be specifically excluded from this contract.

### 25. OTHER MISCELLANEOUS TERMS AND CONDITIONS
The Buyer confirms that their funds are good clean, cleared, unencumbered, legitimately earned funds from legal sources.

Both parties agree to promptly provide all reasonable due diligence and/or "Know Your Client" information requested by the other party and/or their bankers and/or applicable regulatory authorities.

Both parties agree that time is of the essence in relation to this contract and shall promptly and efficiently attend to their respective undertakings and responsibilities.

Both signatories hereto acknowledge that they have read this agreement, they have fully understood the terms and conditions contained herein, and by attaching their initial and signature hereto have unconditionally agreed to be bound hereto as of the date noted herein.

Once executed, any changes hereto must be mutually agreed and confirmed by the parties in writing.

Initials Seller                                  Page 6 of 7                                  Initials Buyer

**CONTRACT NUMBER: TRI-UREA/CON-PERU00015406**
**SALES & PURCHASE AGREEMENT**
**AGRICULTURAL PRILLED UREA**

Start and End date will be determined by Date of Signature of the contract by both parties.

This agreement may be signed in one or more counterparts and the parties agree that facsimile/email copies of this agreement to be considered as a legal original and signatures thereon shall be legal and binding agreement

The Contractual Parties herein have read and understand the Terms & Conditions contained herein while reserved the rights to legal representation and waving such rights, the parties have executed this agreement on this 2nd day of July 2008

For and on Behalf of Seller:
TRIFECTA TRADING 165 (PTY) LTD

DATED 2ND DAY OF JULY 2008

For and Behalf of Buyer:
PLASTITEX S.A.

PLASTITEX S.A.
JOSE MARIA MUSSA
APODERADO

Initials Seller                    Page 7 of 7                    Initials Buyer

# CORPORATE FUNDING PARTNERS
global trade finance • letter of credit facilities

Invoice #07030083

Date: July 3, 2008

| | | |
|---|---|---|
| Company | : | Plastitex S.A. |
| Address | : | Colonia Elisa 461 |
| | | Villa Elisa |
| | | Paraguay |
| Telephone | : | +59521 945 630 |
| Mobile | : | 0991 777 319 |
| Fax | : | N/A |
| Email | : | PANTONIAZZI@aol.com |
| Agent | : | Pablo Antoniazzi |
| Agent email | : | PANTONIAZZI@aol.com |

Total of all Letters of Credit for this worksheet only        USD 4,375,000.00

**Detail**

Description        Amount

Type: Irrevocable Transferable Letter of Credit to applicant supplier        USD 4,375,000.00
Validity: Up to 90 days
Requirements:
- pro-forma invoice from supplier
- purchase order from client to supplier
- additional statement of the underlying transaction from your company

Letter of credit charges        USD 109,375.00
Standard LC Opening Fee        275.00
Document Negotiation Fee        400.00
Total Letter of Credit Charges        USD 110,050.00

**Total due prior to LC opening (100% of total)**        **USD 110,050.00**

For each instance of non-negotiation, there will be a charge of $ 250.00 payable upon receipt of invoice.

Upon negotiation there may be a holdback of up to 0.25 percent of the payment to the beneficiary from the LC issuing bank.
If additional fees are required they must be paid upon receipt of invoice. They may include any items that are shown in the letter of credit to be paid by the beneficiary and where the beneficiary refuses to pay. All letters of credit are governed by the Uniform Customs and Practices for Documentary Credits 1993 ("UCP") Per UCP article no.18cii it states:
"Where a Credit stipulates that such charges are for the account of a party other than the instructing party, and charges cannot be collected, the instructing party remains ultimately liable for the payment thereof."

**Please Fax A Copy Of Your Wire Transfer When Paying This Invoice**

Please remit to: LC COM, Ltd. 201 W 72nd Street, New York, NY 10023
Phone +1.212.724.8933
Wire transfer instructions: HSBC – New York NY
aba#: 021001088    acct#: 6108590

Plas-32



### FIRST AMERICAN BANK

Request No: X-2774/ASHFORD

## Application for Import Letter of Credit

July 3, 2008

Please issue an irrevocable, transferable commercial letter of credit as set forth below and forward same to your branch office or correspondent bank for delivery to the beneficiary.

**Expiry Date:** September 30, 2008
**Latest shipping date:** September 9, 2008

**Expiry Place:** Issuing Bank's Counters
**Advise credit by:** Cable

**Applicant's Name and Address:**
Plastiter S.A.
Colonia Elisa 461 Central
Asuncion Paraguay

**Beneficiary's Name and Address:**
Trifect Trading 65 (PTY) Ltd
Unit D8 the Beachhead Office Park,
10 Niblick Way Western Cape
Sommerset West, South Africa 7129

**Beneficiary's Bank and Address:**
ABSA
Western Cape Sommerset West
South Africa 7129
Swift: ABSAZAJJ

### AMOUNT INFORMATION

**Amount:** USD 4,375,000
**Variance:** %
**Maximum Credit Amt:**
**Percentage of Invoice:** %
**Additional Amount Spec.:**

### AVAILABLE WITH

Credit available with: First American Bank
Available by: Payment
Drafts at: Sight
days:

Additional tenor information:
Drawee: First American Bank



OK TO ISSUE — Trifecta

https://www.firstamloc.com/FAB2-EB/ASHFORD-LIVE_TF.NSF/f3692ae9fe8f730e88256...  7/3/2008

Plas-33

**SHIPPING ARRANGEMENTS:**

Shipping from: 🗓
Shipping to: 🗓
Shipping from port/airport: 🗓 ???????
Shipping to port/airport: 🗓 Paraguay
Latest shipping date: 🗓 09/09/2008
Shipment period: 🗓
Shipment terms: 🗓 CIF - Cost Insurance & Freight
Location: Paraguay
Partial shipments? 🗓 ALLOWED
Container shipments? 🗓 ALLOWED
Transhipments? 🗓 ALLOWED
Insurance covered by: 🗓 SELLER

**MERCHANDISE:** 🗓
12.500 Metric Tons (+/- 5%) Urea 46% N Granular as per Proforma Invoice no. 2554
Purchase Order(s):

**DOCUMENTS :** 🗓

1. Signed Commercial Invoice issued by the beneficiary in 1 original plus 3 copies indicating LC number, name of the LC issuing bank, and full details of the goods shipped.
2. Packing List in 1 original and 3 copies.
3. Full Set of Clean Shipped on Board Marine Bills of Lading consigned to the order of the shipper, endorsed to the order of First American Bank, 1650 Louis Avenue, Elk Grove Village, IL 60007, USA marked freight prepaid and indicating notify Plastitex S.A., Colonia Elisa 461 Central Asuncion Paraguay.
4. Shipping Compliance Certificate signed and issued by an authorized officer of Ashford Finance LLC., 152 Madison Ave. Suite 1003, New York, NY 10016, USA on their letterhead and countersigned by the Trade Finance Division of First American Bank, 1650 Louis Avenue, Elk Grove, IL 60007, USA.
5. Negotiable Insurance Policy or Certificate for 110 percent of CIF invoice value, endorsed in blank, and covering all risks and war risks.
6. Certificate of Origin issued by the Chamber of Commerce of the country of origin or the Department of Trade or Ministry of Industry in 1 original and 3 copies.
7. Phytosanitary certificate issued by the government authority or agency in the country of origin in 1 original and 3 copies.
8. Certificate of Quality and Quantity (including total weight) issued by SGS at port of loading in 1 original and 3 copies.

Presented within 🗓 days.
Delivery in 🗓 ONE MAILING
Delivery by: 🗓 COURIER
Second mailing by: 🗓

**OTHER CONDITIONS:** 🗓
1. Drawings under this credit must be for 100 percent of the invoice value. OK TO ISSUE
2. All bank charges other than those of First American Bank's Letter of Credit issuance charges are for beneficiary's account and will not be borne by the issuing bank and should be collected from the beneficiary at the time service is rendered by the advising/remitting bank.

https://www.firstamloc.com/FAB2-EB/ASHFORD-LIVE_TF.NSF/f3692ae9fe8f730e88256...   7/3/2008

3. Discrepant documents will be subject to a discrepancy handling fee of USD75.00 which will be for the beneficiary's account.
4. Documents to be presented within 21 days after the Bill Of Lading date, but within the validity of the L/C.
5. This letter of credit is transferable in whole or part, provided this original credit is presented to ABSA for endorsement of the transfer, under advice to us and their transfer commission is paid. Transfers to designated foreign nationals and/or specially designated nationals are not permitted as being contrary to the U.S. Treasury Department, Foreign Assets Control Regulations. The transferring bank must inform us if the first beneficiary retains their rights to substitute their draft and invoices with those of the second beneficiary.
6. All documents must be issued in the English language.

Applicable Rules: UCP LATEST VERSION

The documentary credit is subject to the version of the ICC Uniform Customs and Practice for Documentary Credits, International Chamber of Commerce, Paris, France, which is in effect on the date of issue.

Please complete the following:

| Back | Escape |
|---|---|
| Your initials: D | Password: D |
| D On Hold | |

# TRIFECTA

Trading 165 (Pty) Ltd.

Tel: +27 21 840-9360
Fax: +27 21 852-2395
E-mail: trifecta@absamail.co.za
Reg. No.: 2002/009728/07

P.O. Box 944
Somerset West
7129
South Africa

Unit D8 The Beachhead
10 Niblick Way
Somerset West, 7129
South Africa



11 July 2008

TO WHOM IT MAY CONCERN

Dear Sir / Madam

**RE: Acceptance of draft text for LC – Plastitex:**

This letter serves to advise that we, with full corporate authority, accept the draft verbiage of the LC as signed and sealed and in receipt of Plastitex.

With indication of a specific port.

Yours faithfully

Frans Badenhorst
Managing Director

-1-

Plas-36

# TRANSLATION

International Department
Foreign Transfer Application

Asuncion, July 14, 2008

Mr. Manager for
BANCO CONTINENTAL S.A.
<u>Hand delivered</u>

Pleas issue on my/our account and order a foreign transfer according to the following instructions:

Effective Date:
☒ 0 HOURS – no expense to the beneficiary
☐ 24 HOURS – no expense to the beneficiary
☐ 48 HOURS – no expense to the beneficiary

Country of Destination: USA
Currency: US DOLLARS
Amount: 110,050.00

ORIGIN OF THE FUNDS (Mark only one box)
☐ Private – person (physical person)
☒ Private (company or corporation)
☐ Public Sector
☐ Bank

REASON FOR THE TRANSACTION
☒ Foreign Trade goods or services (Business oper. for the purchase of goods and/or services)
☐ Investment in financial instruments (Deposit on account or foreign account or savings)
☐ Investment in real estate (purchase of lots, homes, etc. abroad)
☐ Remittance of profits (transactions with parent company)
☐ Donation (sending money to workers, relatives, friends, etc.)
☐ Loan payments (received abroad)
☐ Other

FINANCING FOR THE TRANSACTION
☒ Cash
☐ Deposit advising bank (debit to account, savings account)
☐ Check to local bank (banks in operation within the republic)
☐ Check to non local bank (banks in operation outside the republic)
☐ Other

TRANSFER INFORMATION
LC COM, Ltd

BENEFICIARY'S ADDRESS:



Davila & Associates, Inc.
4900 N. 23rd St., McAllen, Texas 78504   Phone (956) 630-1995 Fax- (956) 682-1739  Web Site: www.translateservices.com  Email: Info@translateservices.com
Translation of Urea Purchase/Sale Documents for Plastitex        JN 4217              03/18/2011                Page 12 of 18
S.A.

## TRANSLATION

201 W 72 Street, Suite 6M, New York, NY 10023
BENEFICIARY ACCOUNT NUMBER: 610859048

BENEFICIARY'S BANK: HSBC BANK NEW YORK
CITY (COUNTRY): NEW YORK – USA
BANKING CODE (ABA, FEDWIRE, SWIFT, CHIPS): MRMDUS33   021001088
SPECIAL INSTRUCTIONS: (specify branch, office or bank agency number)

INTERMEDIARY BANK:
CITY/COUNTRY:
BANKING CODE (ABA, FEDWIRE, SWIFT, CHIPS):
BENEFICIARY'S BANK ACCOUNT NUMBER:

PAYMENT DETAILS (REFERENCE/INVOICE): CANCELATION INVOICE NO. 07030083

☒ We hereby give sufficient authorization to debit from my/our account.
                                                          ☒ Guaranies
☒ [illegible]   ☐ Savings        34-807657-0      ☐ Dollars
                                                          ☐ Euro

|  |  |
|---|---|
| For the amount of the transfer plus our expenses.<br>We hold your bank harmless of any responsibility for any delay in the execution of the payment order. | PLASTITEX, S.A.<br>Jose Maria Mussa<br>Legal Representative<br>[illegible signature] |
| Applicant's name:<br>PLASTITEX S.A.<br>Applicant's Address:<br>COLONIA ELISA 461 – VILLA ELISA<br>Telephone: 945 830 FAX: 945 914 | Signature(s)<br>RUC and/or CI 80012167-8 |

Obs.: sealed if from a legal entity

**Translator's notes:**

In the right mid margin appears a partially legible seal that reads: [illegible] Received 14 Jul 2008 [illegible]

In the right lower margin appears a seal that reads: Bco. Continental, JOE< Verified Signature.

The following page was in English.



Davila & Associates, Inc.
4900 N. 23rd St., McAllen, Texas 78504   Phone (956) 630-1995 Fax- (956) 682-1739   Web Site: www.translateservices.com   Email: info@translateservices.com
Translation of Urea Purchase/Sale Documents for Plastitex   JN 4217   03/18/2011   Page 13 of 18
S.A.

Plas-38

From: PLASTITEX S.A.
COLONIA ELISA 461
VILLA ELISA
PARAGUAY

TO: LCCOM, Ltd.
201 W 72nd Street, Suite 6M
New York, NY 10023

## AGREEMENT AND INDEMNITY

In consideration of your having agreed to open a letter of credit for the amount of: USD 4,375,000.00 (in words): FOUR MILLION THREE HUNDRED SEVENTY-FIVE THOUSAND UNITED STATES DOLLARS AND ZERO ONE-HUNDREDTHS in our beneficiary's name: TRIFECTA TRADING 165 (PTY) LTD., UNIT D8, THE BEACHHEAD OFFICE PARK, 10 NIBLICK WAY, SOMERSET WEST, WESTERN CAPE 7129 SOUTH AFRICA at our request, we hereby confirm that we have conducted our full due diligence on the beneficiary and the said transaction represents a routine commercial business transaction. We agree to indemnify you against all expenses, losses, claims and damages arising on account of said letter of credit which you may incur and we further undertake to make good all the losses, claims and damages that may arise on account of the said transaction including, but not limited to, all out-of-pocket expenses and reasonable attorneys fees which you may incur. We understand that you are not acting as our agent and that you are an independent contractor.

We also agree that neither we nor the beneficiary nor any of our representatives, agents or attorneys shall contact you or your bank or make any claim against the letter of credit or dispute any of the conditions of the letter of credit application duly approved by us.

We further irrevocably waive any refund from the letter of credit opening, any bank charges and commissions paid to you for this transaction once the letter of credit has been opened. We waive any claim for any lawsuit or claim in arbitration with regard to this letter of credit.

The undersigned is fully aware that the letter of credit issuing bank bears no responsibility for the terms of the letter of credit and shall not be made a party defendant in any dispute of any kind for refund of commissions or charges should the advising/negotiating bank refuse to grant credit. The undersigned also agrees that it shall be required to sign an indemnity agreement for the letter of credit issuing bank.

We acknowledge that there will be a "special condition" clause included in an additional document required in the letter of credit established by the company on our behalf. We understand that the required document will be noticed in the "document required" section, or other appropriate section of the letter of credit to be issued. This required document has been fully explained to us and is understood by us and we have read it in its entirety. We will not request that the letter of credit be changed in any way. We have acknowledged by signing a copy a "draft" of the letter of credit prior to the actual issuance of the letter of credit that the

PLASTITEX S.A.
JOSE MARIA MUSSA
APODERADO

LE SIGUE L AHOJA DE CERTIFICACION DE FIRMA CON No. 2656750 CON SERIE BB...CONS..///

Plas-39

applicant of the letter of credit have fully informed us about the condition clause and we agree that this clause is an integral part of the letter of credit.

We further agree that we will not request from you or the letter of credit issuing bank any amendments to the letter of credit. However, in the event due to unforeseen circumstances, any amendment is sought in the letter of credit, a 100% margin will be provided. Unless we provide you with 100% of the LC value as margin towards due performance of our obligations and settlement of the documents to be received under the above letter of credit and we will keep you fully indemnified from all consequences arising out of the incorporation of the said clause in the letter of credit. For each presentation of a document, a minimum USD 1,000.00 plus bank charges will be paid to you by us by not later than three (3) business days from the date of the document presentation.

This Indemnity Agreement shall be irrevocable during the entire period that the letter of credit is in existence from the date of issuance to the date of expiration.

Date: 15/07/2008.-

**PLASTITEX S.A.**
By: ......[signature]......
Officer
Full Name: _____ PLASTITEX S.A.
Title of the Signatory: _____ JOSE MARIA MUSSA
(Company stamp/seal)               APODERADO

Notarized as follows:

On this __15__ day of __Julio__, 20_08_, before me, the undersigned, personally appeared, __Jose Maria Mussa__, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

Ante mí [signature]

Notary [seal: Magdalena Villalba Mora, Notaria Publica, Registro N° 609, Telf. 511 707]

2

LE SIGUE LA HOJA DE CERTIFICACION DE FIRMAS CON No. 2656750 CON SERIE BB..CONT..///