## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Continental Petroleum Corporation, Inc.,
and Plastitex, S.A.

        plaintiffs,

   v.

                                     Civil Action No. 11-CV-7801

Corporation Funding Partners, LLC,
Pablo Antoniazzi, Caren Raphael, Joseph
Lau, and Green Pampas, Inc.,

        defendants.

_____/

## GREEN PAMPAS, INC.'S MEMORANDUM
## OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR STAY,
## IN LIGHT OF ARBITRATION AGREEMENT, TO DISMISS FOR LACK OF
## PERSONAL JURISDICTION, AND TO DISMISS FOR FAILURE TO STATE A CLAIM

Jorge A. Mestre
SDNY Bar No. JM4977
Andrés Rivero*
RIVERO MESTRE LLP
2525 Ponce de Leon Blvd, Suite 1000
Miami, Florida 33134
Phone Number: 305-445-2500
Fax Number:  305-445-2505
Email:  arivero@riveromestre.com

Attorneys for Green Pampas, Inc.

*Pro hac vice admission pending

## Table of Contents

Page(s)

PRELIMINARY STATEMENT...............................................................................1

STATEMENT OF FACTS..................................................................................2

DISCUSSION..........................................................................................5

I.    This action must be dismissed or stayed in light of the
arbitration provision in the Plastitex-Green Pampas Agreement..............5

    A.    This case should be dismissed or stayed
because the Issues raised in the complaint
are subject to an arbitration agreement...................................5

        1.    Federal law requires arbitration where
the parties have contracted for it.................................5

        2.    The parties' Agreement mandates arbitration...................6

II.    This action should be dismissed because this Court
lacks personal jurisdiction over Green Pampas.................................8

    A.    This Court lacks general jurisdiction over
Green Pampas because it is not doing business
in New York under C.P.L.R. § 301...........................................8

    B.    This Court lacks specific jurisdiction over
Green Pampas under C.P.L.R. § 302........................................10

    C.    The exercise of jurisdiction over Green Pampas
would be inconsistent with federal due process requirements...........11

III.    The Complaint should be dismissed for failure
to state a claim against Green Pampas..........................................12

    A.    The plaintiffs fail to state a valid RICO claim...........................13

        i.    The plaintiff fail to allege a RICO enterprise........................14

        ii.    The plaintiffs fail to allege a pattern of activity.....................15

        1.    No facts alleged in the complaint establish
the existence of closed-ended continuity..................15

2.      No facts alleged in the complaint support
the existence of open-ended continuity.....................16

iii.    The plaintiffs fail to show racketerring activity....................17

1.      The plaintiffs fail to meet the statutory
requirements for alleging mail and wire fraud.............18

2.      The plaintiffs fail to meet the statutory
requirements for alleging bank fraud......................19

3.      The plaintiffs fail to allege the illegal
transmission of money.........................................20

iv.     The plaintiffs fail to plead mail, wire, and bank fraud
with the particularity required by Rule 9(b).........................20

B.      The RICO conspiracy claim must be dismissed....................................21

C.      The plaintiffs' fraudulent inducement claim fails for
lack of facial plausibility as to Green Pampas and lack
of particularity under Rule 9(b)...................................................22

D.      The deceptive trade practices claim should be dismissed against
Green Pampas because the claim arises out of a private commercial
relationship between sophisticated corporate entities, and the alleged
conduct does not affect the public interest of New York...........................24

CONCLUSION...................................................................................25

## Table of Authorities

**Federal Cases**                                                                  **Page(s)**

*Amida Capital Mgmt. II, LLC v. Cerberus Capital Mgmt., L.P.*,
669 F. Supp. 2d 430 (S.D.N.Y. 2009)……………………………………………...........23

*Arma v. Buyseasons, Inc.*,
591 F. Supp. 2d 637 (S.D.N.Y. 2008)…………………………………………………....8

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937 (2009)……………………………………………………13

*Atl. Gypsum Co. v. Lloyds Int'l Corp.*,
753 F. Supp. 505 (S.D.N.Y. 1990)………………………………………………………20

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
171 F.3d 779 (2d Cir.1999)………………………………………………………………8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)……………………………………………………………………...13

*Bensusan Rest. Corp. v. King*,
126 F.3d 25 (2d Cir. 1997)………………………………………………………………11

*C.A. Westel de Venezuela v. American Tel. & Tel. Co.*,
No. 90-Civ. 6665, 1994 WL 558026 (S.D.N.Y. Oct. 11, 1994)…………………………21

*Chanayil v. Gulati*,
169 F.3d 168, 171(2d Cir. 1999)………………………………………………………....18

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir.2010)………………………………………………………………11

*Cofacredit, S.A.v. Windsor Plumbing Supply Co. Inc.*,
187 F.3d 229 (2d Cir.1999)…………………………………………………………...14, 16

*Cortec Indus. Inc. v. Sum Holding L.P.*,
949 F.2d 42, 48 (2d Cir.1991)……………………………………………………………1

*Cosmas v. Hassett*,
886 F.2d 8 (2d Cir.1989)…………………………………………………………………2

*Crab House of Douglaston, Inc. v. Newsday, Inc.*,
418 F. Supp. 2d 193 (E.D.N.Y. 2006)…………………………………………………...18, 24

*David L. Threlkeid & Co., v. Metallgesellschaft, Ltd.,*
923 F.2d 245 (2d Cir.1991)…………………………………………………………………5

*Dean Witter Reynolds, Inc. v. Byrd,*
470 U.S. 213 (1985)…………………………………………………………...........6

*DeFalco v. Bernas,*
244 F.3d 286 (2d Cir. 2001)……………………………………………………………15, 21

*Dwyer v. Regan,*
777 F.2d 825 (2d Cir.1985), *modified by* 793 F.2d 457 (2d Cir.1986)……………………..3

*Eastern Fish Co. v. South Pacific Shipping Co., Ltd.,*
105 F. Supp. 2d 234 (S.D.N.Y. 2001)…………………………………………………...6, 7

*Eaves v. Designs for Finance, Inc.,*
785 F. Supp. 2d 229 (S.D.N.Y. 2011)………………………………………………….23, 24

*First Capital Asset Mgmt., Inc. v. Stainwood Inc.,*
385 F.3d 159 (2d Cir.2004)…………………………………………………………...15, 16

*First Nationwide Bank v. Gelt Funding Corp.,*
27 F.3d 763, 769 (2d Cir. 1994)……………………………………………………………14

*Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic,*
582 F.3d 393 (2d Cir.2009)…………………………………………………………….11, 14

*Harris v. Mills,*
572 F.3d 66 (2d Cir. 2009)…………………………………………………………………13

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.,*
246 F.3d 219 (2d Cir. 2001)……………………………………………………………...6

*H.J. Inc. v. N.W. Bell Tel. Co.,*
492 U.S. 229 (1989)…………………………………………………………………...15, 16

*Jacobs v. Felix Block Erben Verlag Fur Buhne Film Und Funk KG,*
160 F. Supp. 2d 722 (S.D.N.Y. 2001)…………………………………………………...9

*Louis Dreyfus Negoce, S.A. v. Blystad Shipping & Trading Inc.,*
252 F.3d 218 (2d Cir.2001)………………………………………………………………6

*Lou v. Belzberg,*
728 F. Supp. 1010 (S.D.N.Y. 1990)……………………………………………………..21

*Maersk, Inc. v. Neewra, Inc.*,
554 F.Supp.2d 424 (S.D.N.Y. 2008)……………………………………………………12

*Mehler v. Terminex Int'l Co.*,
205 F.3d 44 (2d Cir. 2000)………………………………………………………6, 7

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir.1993)………………………………………………  2, 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)………………………………………………………...6

*Moss v. Morgan Stanley, Inc.*,
719 F.2d 5 (2d Cir.1983)………………………………………………2

*Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*,
165 F. Supp. 2d 514 (S.D.N.Y. 2001)……………………………………15, 22

*Ozbakir v. Scotti*,
764 F. Supp. 2d 556, 564 (W.D.N.Y. 2011)……………………………………14

*PaineWebber Inc. v. Westgate Group, Inc.*,
748 F. Supp. 115 (S.D.N.Y. 1990)……………………………………………10

*Pier Connection, Inc. v. Lakhani*,
907 F. Supp.72 (S.D.N.Y.1995)……………………………………………17

*Rubin v. Sona Int'l Corp.*,
457 F. Supp. 2d 191 (S.D.N.Y. 2006)……………………………………...5

*SecuritronMagnalock Corp. v. Schnabolk*,
65 F.3d 256 (2d Cir.1995)……………………………………………24

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir.1994)……………………………………………20

*Spool v. World Child Int'l Adoption Agency*,
520 F.3d 178 (2d Cir. 2008)……………………………………........15, 16

*S.Q.K.F.C. v. Bell Atl. TriCon Leasing Corp.*,
84 F.3d 629 (2d Cir. 1996)……………………………………………18

*United States v. Turkette*,
452 U.S. 576 (1981)……………………………………………14, 15

*U.S. v. Mazz-Alaluf,*
607 F. Supp. 2d 484 (S.D.N.Y. 2009)……………………………………………………...20

*Vargas v. Choice Health Leasing,*
No. 09-Civ-8264, 2011 WL 1758619 (S.D.N.Y. May 9, 2011)……………………………19

*Wiwa v. Royal Dutch Petroleum Co.,*
226 F.3d 88(2d Cir.2000)……………………………………………………………………8

*Ziegler, Ziegler & Associates LLP v. China Digital Media Corp.,*
No. 05-cv-4960, 2010 WL 2835567 (S.D.N.Y. July 13, 2010)……………………………10


**State Cases**

*Landoil Res. Corp., v. Alexander &Alexander Servs., Inc.,*
77 N.Y.2d 28 (N.Y. 1990)……………………………………………………………………9

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
647 N.E.2d 741 (N.Y.1995)…………………..……………………………………………24


**Rules**

Fed. R. Civ. P. 9(b) ................................................................2, 18, 20, 22, 23

Fed. R. Civ. P. 12(b)(6)........................................................................ 13


**Statutes**

Federal Arbitration Act, 9 U.S.C. § 3 ........................................................ 5, 6

N.Y. GEN. BUS. LAW § 349. ...................................................2, 4, 24, 25

N.Y. C.P.L.R. 301 (McKinney's 2011) ........................................... 2, 8, 9, 12

N.Y. C.P.L.R. 302 (McKinney's 2011) .....................................2, 8, 10, 11, 12

18 U.S.C. § 1341....................................................................... 17

18 U.S.C. § 1343....................................................................... 17

18 U.S.C. § 1344....................................................................... 17, 19

18 U.S.C. § 1960....................................................................... 17, 20

18 U.S.C. § 1961 ................................................................................................. 14

18 U.S.C. § 1962 ................................................................................. 4, 13, 14, 21, 22

## PRELIMINARY STATEMENT

As admitted in the Complaint, Plastitex and Green Pampas executed a written contract. (Complaint ¶¶ 4.20, 5.2).  Plastitex brings suit against Green Pampas for breach of contract, fraudulent inducement, deceptive trade practices, and RICO, relating to a January 20, 2009 Sale and Purchase Agreement between Green Pampas and Plastitex (the "Agreement").  (Complaint; Declaration of Jorge Mestre, dated December 27, 2011 ("Mestre Decl."), Exhibit A).[1]  Under the Agreement, Green Pampas was to sell urea to Plastitex.  (Complaint ¶¶ 4.20, 5.2; Mestre Decl., Exhibit A, p. 1).  In the Agreement, Plastitex and Green Pampas expressly agreed that "***all disputes arising out of or in connection with the present contract***" shall be resolved by arbitration.  (Mestre Decl., Exhibit A, §12) (emphasis added).  Specifically, under Section 12 of their Agreement, if the parties were unable to resolve their dispute by "friendly negotiation," Plastitex agreed that all disputes

> ***shall be finally settled under the Rules of Arbitration of The International Chamber Of Commerce***. The disputed matter will be subject to Arbitration by an Arbitrator in Paris, France under ICC Rules and Regulations . . . The award of the Arbitrator shall be final and binding for both parties.

*Id.*, §12 (emphasis added). Thus, Plastitex mistakenly invokes this Court's jurisdiction. If Plastitex wants to make claims against Green Pampas, it must do so in arbitration.

Even if there were no arbitration clause, this Court should dismiss Green Pampas from the lawsuit because:

***First***, the plaintiffs have failed to allege facts sufficient to establish that this Court has personal jurisdiction over Green Pampas.  Green Pampas is foreign corporation with no ties to

---

[1] The plaintiffs failed to attach the Agreement to their Complaint, despite bringing a cause of action for breach of the Agreement.  (Complaint ¶¶ 5-5.2). The Court may consider the Agreement, even though the plaintiff failed to attach it and it is outside the four corners of the Complaint because the Agreement is integral to the plaintiffs' claims and "a plaintiff should not so easily be allowed to escape the consequences of its own failure."  *Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991).

New York.  *See* Declaration of Mario Antoniazzi, dated December 21, 2011 ("Antoniazzi

Decl.").  Further, the plaintiffs have failed to allege that Green Pampas (1) transacted business in

New York, (ii) undertook tortious activity in New York or (iii) has owned, used or possessed any

property in New York, as required for personal jurisdiction under C.P.L.R. §§ 301, 302.  In short,

the record establishes that Green Pampas does not conduct any business in New York that would

allow this Court to exercise personal jurisdiction over it;

*Second*, the plaintiffs have failed to allege a valid RICO cause of action.  In their

Complaint, the plaintiffs fail to allege an "enterprise," a "pattern" of racketeering activity or two

predicate acts, as required by the RICO statute. Failure to allege facts sufficient to demonstrate

any single element of a RICO claim is fatal to the claim.  *See Moss v. Morgan Stanley, Inc.*, 719

F.2d 5, 23 (2d Cir.1983).  In this case, the plaintiffs fail to allege facts sufficient to demonstrate

*any* of the statutory elements;

*Third,* the plaintiffs do not plead fraudulent inducement claim specifically as required by

Rule 9(b); and

*Fourth*, the plaintiffs' deceptive trade practice claims under Section 349 of the New York

General Business Law fails because (1) the claim arises out of a private commercial relationship

between sophisticated corporate entities, and (2) the alleged conduct does not affect the public

interest of New York.

## STATEMENT OF FACTS

### *The Parties*

Plaintiff Plastitex is incorporated in Paraguay, and plaintiff Continental Petroleum

Corporation, Inc. is incorporated in Peru.[2] (Complaint ¶ ¶ 1.1, 1.2).

---

[2]At the dismissal stage, the facts alleged in the complaint are presumed to be true and all factual inferences must be
drawn in the plaintiffs' favor. *See Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993); *Cosmas v.*

Green Pampas is incorporated in Delaware and has its principal place of business in Florida. (Antoniazzi Decl. ¶ 1).

**Green Pampas's Lack of Contacts with New York.**

Green Pampas does not conduct any business in New York. Green Pampas has offices in Florida and employs individuals in Florida only (Antoniazzi Decl. ¶ 2); does not have an office or any employees in New York. (*Id.*, ¶¶ 3, 6); has never conducted any business in New York. (*Id.*, ¶ 10); and does not have any bank accounts in New York. (*Id.*, ¶ 6); indeed, Green Pampas does not own any real or personal property in New York. (*Id.*, ¶ 4); and all of its revenue is derived from customers outside of New York. *Id.*, ¶ 8.

**Complaint Allegations**

In this action, a Peruvian corporation and a Paraguayan corporation have sued multiple defendants, including Green Pampas, a Delaware corporation, in New York. The case is nothing more than an alleged breach of contract dispute arising from a series of transactions in which the plaintiffs attempted to purchase urea.

In April 2008, Plastitex and Continental each contacted defendant Corporate Funding Partners ("CFP") to obtain funding for separate contracts with non-parties for the purchase of urea. *Id.*, ¶¶ 4.0, 4.1, 4.15. Defendant Pablo Antoniazzi was the representative for both of these transactions. *Id.*, ¶¶ 4.1, 4.16. Both Contintental and Plastitex filled out various forms provided by CFP and paid the fees required for the issuance of letters of credit. *Id.*, ¶¶ 4.1-4.6, 4.15, 4.16. Both letters of credit issued by CFP were rejected by the urea suppliers' banks because they were not confirmed *Id.*, ¶¶ 4.8, 4.16. Antoniazzi then proposed to Continental and Plastitex that he could find a urea supplier who would accept a letter of credit like the ones previously issued. *Id.*,

---

*Hassett*, 886 F.2d 8, 11 (2d Cir.1989); *Dwyer v. Regan,* 777 F.2d 825, 828-29 (2d Cir.1985), *modified by,* 793 F.2d 457 (2d Cir.1986). For this reason, Green Pampas uses the facts alleged even though they are, in the main, false and distorted.

¶ 4.10. Both Plastitex and Continental entered into contracts with non-party Trifecta Trading, an entity recommended by Antoniazzi, for the purchase of urea. *Id.*, ¶¶ 4.10-.11.   Both Plastitex and Continental paid CFP for letters of credit which were sent to Trifecta Trading. *Id.*, ¶¶ 4.12, 4.18. Trifecta Trading never delivered urea to either Plastitex or Continental.  *Id.*, ¶¶ 4.12, 4.19.

Antoniazzi subsequently recommended Green Pampas as a source for the purchase of urea. *Id.*, ¶¶ 4.13, 4.20.  Continental declined to contract with Green Pampas. *Id.*, ¶ 4.13. Plastitex entered into the January 20, 2009 Purchase and Sale Agreement with Green Pampas. *Id.*, ¶ 4.20.  Plastitex paid CFP for another letter of credit, but no urea was delivered.  *Id.*

Instead of suing for contract damages, the plaintiffs try to transform basic contract claims into a RICO conspiracy, with fraud and try deceptive trade practices claims thrown in for good measure.  The Complaint alleges four causes of action against Green Pampas.  Count 1(a) alleges separate breach of contract claims against Green Pampas and CFP.  (Complaint ¶¶ 5.0-5.2). Count 3 alleges that three individual defendants and Green Pampas violated the federal RICO statute, 18 U.S.C. §§1962(c) and (d), Green Pampas defendants. *Id.*, ¶¶ 9.0-9.15.  Count 4 alleges that all the defendants engaged in deceptive trade practice in violation of General Business Law §349(a). *Id.*, ¶¶ 10.1-10.5.  Finally, Count 5 alleges that all the defendants engaged in fraudulent inducement. *Id.*, ¶¶ 11.1-11.5.[3] Counts 4 and 5 appeared to be against all defendants because the plaintiffs fail to specifically who is being sued.

***Arbitration Clause of the Purchase and Sale Agreement between Plastitex and Green Pampas***

In January 2009, Plastitex and Green Pampas executed the Purchase and Sale Agreement. (Complaint ¶ 4.20; Mestre Decl., Exhibit A).  As reflected in Section 12 of the Agreement, the parties expressly agreed on a procedure for resolving "all disputes arising out of or in connection

---

[3] Count 1(b) is a second breach of contract claim against CFP. Counts 2(a) and 2(b) are fraud claims against all the defendants except Green Pampas.

with the present contract." *Id.*, §12.  The first step in that process involves "friendly negotiation."

*Id.*  Section 12 then provides that if friendly negotiations do not resolve the dispute:

> [***A***]***ll disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of The International Chamber Of Commerce***.  The disputed matter will be subject to Arbitration by an Arbitrator in Paris, France under ICC Rules and Regulations.  The losing party will pay the Arbitration fee . . . The award of the Arbitrator shall be final and binding for both parties.

*Id.* (emphasis added).

## DISCUSSION

I.    **This action must be dismissed or stayed in light of the arbitration provision in the Plastitex-Green Pampas Agreement.**

The parties' Agreement contains a broad arbitration provision that covers any dispute arising out of or connected to their written contract. Under Section 3 of the Federal Arbitration Act (the "FAA"), the Court should dismiss or stay this action.[4] If the Court decides that the parties must abide by their contract, it need not reach the remaining grounds for relief discussed below.

A.    **This case should be dismissed or stayed because the issues raised in the complaint are subject to an arbitration agreement.**

1.    **Federal law requires arbitration where the parties have contracted for it.**

Federal policy "strongly favors arbitration as an alternative dispute resolution process."

*David L. Threlkeid & Co., v. Metallgesellschaft, Ltd.,* 923 F.2d 245, 248 (2d Cir.1991) (citing

*Rodriguez de Quijas v. Shearson/American Express, Inc.* 490 U.S. 477 (1989)). "[T]he [FAA]

***leaves no place for the exercise of discretion by a district court,*** but instead mandates that

district courts *shall* direct the parties to proceed to arbitration on issues to which an arbitration

---

[4]"Where all of the issues raised in the complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings." *Rubin v. Sona Int'l Corp.,* 457 F. Supp. 2d 191, 198 (S.D.N.Y. 2006) (Scheindlin, J.).

agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985)

(emphasis added). Where there is a question as to whether claims are arbitrable, federal

arbitration policy requires that "any doubts . . . be resolved in favor of arbitration." *Moses H.*

*Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Louis Dreyfus*

*Negoce, S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 223 (2d Cir.2001).

> ### 2.   The parties' Agreement mandates arbitration.

Section 12 of the Agreement, already quoted above, plainly requires arbitration of this

controversy arising out of and connected to the parties', urea contract. Section 3 of the FAA

provides:

> If any suit or proceeding be brought in any of the courts of the United States upon
> any issues referable to arbitration under an agreement in writing for such
> arbitration, the court in which suit is pending, upon being satisfied that the issue
> involved in such suit or proceeding is referable to arbitration under such an
> agreement, shall on application of one of the parties stay the trial of the action
> until such arbitration has been had in accordance with the terms of the agreement .
> . .

9 U.S.C. §3.

In determining whether a dispute is subject to arbitration, a court must decide "(1)

whether there exists a valid agreement to arbitration at all under the contract in question . . . and

if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the

arbitration agreement." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246

F.3d 219, 226 (2d Cir. 2001) (quoting *National Union Fire Ins. Co. v. Belco Petroleum Corp.,* 88

F.3d 129, 135 (2d Cir. 1996)); *Mehler v. Terminex Int'l Co.*, 205 F.3d 44, 47 (2d Cir. 2000).

"Arbitration should be ordered 'unless it can be said with positive assurance that the arbitration

clause is not susceptible of an interpretation that covers the asserted dispute.'" *Eastern Fish Co.*

*v. South Pacific Shipping Co., Ltd.,* 105 F. Supp. 2d 234, 237 (S.D.N.Y. 2001) (Berman, J.)

(citation omitted).  Under this analysis, this dispute is plainly subject to arbitration.

First, Plastitex unquestionably agreed to arbitrate.  Plastitex admits that it entered into the

Agreement. (Complaint ¶ 4.20). Section 12 of the Agreement plainly states the procedure for

resolving "all disputes arising out of or in connection with the present contract."  (Mestre Decl.,

Exhibit A, § 12).

Second, the scope of the arbitration provision plainly covers all of Plastitex's claims.  The

arbitration agreement applies to "all disputes *arising out of or in connection with* the present

contract." *Id.* (emphasis added).  This is "precisely the kind of broad arbitration clause that

justifies a presumption of arbitrability." *Mehler*, 205 F. 3d at 49 (internal quotations omitted).

"Courts have consistently constructed the 'arising out of or relating to' language in arbitration

clauses as all encompassing."  *Eastern Fish*, 105 F. Supp. 2d at 237 (citation omitted). Though,

Plastitex has sued Green Pampas for breach of the Agreement, civil RICO, deceptive trade

practices and fraudulent inducement, all of those claims rely on the allegations regarding Green

Pampas' purported failure to provide urea as required under the Agreement.  *See* Complaint, ¶

4.20 (". . .[Green Pampas] did not have any urea.") and ¶ 5.2 ("Green Pampas, Inc., however, has

not performed its contractual obligations.  Specifically, Green Pampas, Inc. failed to provide the

Urea.").  Those allegations are incorporated "verbatim herein by reference" in each of its claims.

*Id.*, ¶¶ 9.0, 10.0, 11.0.  All of Plastitex's claims against Green Pampas arise out of its alleged

failure to deliver urea as required by the Agreement and thus, all must be arbitrated.

Accordingly, well-established law requires that this Court dismiss all claims against

Green Pampas because those claims must be arbitrated under the Agreement.[5]

---

[5]To clarify, Green Pampas does not seek to compel arbitration, nor is it required to do so in order to enforce its
rights under the Agreement.  Rather, Green Pampas seeks to enforce its rights under both the Agreement and Section

II.     **This action should be dismissed because this
        Court lacks personal jurisdiction over Green Pampas.**

The plaintiffs have involved this Court's power where the Court does not have personal

jurisdiction over Green Pampas. This Court engages in a two-part analysis to determine whether

it has personal jurisdiction over a defendant. First, the Court must determine whether it has

jurisdiction under to New York's laws. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,

171 F.3d 779, 784 (2d Cir.1999). Second, the Court must determine whether an exercise of

jurisdiction under the state's jurisdiction laws is consistent with federal due process

requirements.  *Id*.  The plaintiffs bear the burden of proving that Green Pampas is present in the

state thereby giving this Court personal jurisdiction over it. The plaintiffs must allege sufficient

facts in the complaint to bring the nonresidents within the confines of C.P.L.R. §§ 301 and 302.

*Id*.  The plaintiffs are unable to sustain this burden.

A.      **This Court lacks general jurisdiction over Green Pampas because it
        is not doing business in New York under C.P.L.R. § 301.**

A New York court has general jurisdiction over a foreign defendant pursuant to C.P.L.R.

§ 301 if the defendant is engaged in such a continuous and systematic course of 'doing business'

in New York as to warrant a finding of its presence in the state.  *Arma v. Buyseasons, Inc.*, 591 F.

Supp. 2d 637, 646 (S.D.N.Y. 2008) (Sweet, J). The defendant's business in New York must be

more than occasional or casual.  Rather, the facts must demonstrate that the defendant's business

is conducted in New York with a "fair measure of permanence and continuity." *Wiwa v. Royal

Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir.2000) (citations omitted). New York courts apply

this test stringently because a corporation found to fall within the general jurisdiction of New

York "may be sued in New York on causes of action wholly unrelated to acts done in New

---

3 of the FAA—that is, if the plaintiffs desire to make a claim arising out of or in connection with Agreement, that
must be made in the appropriate arbitration proceeding.

York." *Jacobs v. Felix Block Erben Verlag Fur Buhne Film Und Funk KG*, 160 F. Supp. 2d 722, 731 (S.D.N.Y. 2001) (Sand, J.) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir.2001)).

In deciding whether a foreign corporation is doing business in New York, courts examine several factors, including: (1) whether the foreign corporation has an office in New York; (2) whether the corporation has any bank accounts or any other property in New York; (3) whether the corporation has any employees in New York; (4) whether the corporation has solicited any business in New York; and (5) whether the corporation has a phone number in New York. *See Wiwa*, 226 F.3d at 98. No single factor is determinative; instead, the courts look at the totality of the circumstances to determine whether a corporation should be deemed to be doing business in New York.

Under the totality of the circumstances, Green Pampas does not conduct business in New York with any permanence or regularity to warrant this Court's exercising general jurisdiction over Green Pampas under C.P.L.R. § 301. Green Pampas has no offices or employees in New York. (Antoniazzi Decl. ¶¶ 3, 6), has never conducted any business activities in New York (*Id.*, ¶ 10), has no bank accounts in New York (*Id.*, ¶ 6), and does not own any real or personal property in New York. *Id.*, ¶ 4. All of Green Pampas's revenue is derived from customers outside of New York. *Id.*, ¶ 8. It has not solicited any business from any New York residents. *Id.*, ¶ 7. It does not generate revenue from any sources in New York. *Id.*, ¶ 8. Based on these facts, this Court lacks personal jurisdiction over Green Pampas pursuant to C.P.L.R. § 301.

**B.      This Court lacks specific jurisdiction
over Green Pampas under C.P.L.R. § 302.**

This Court should not exercise specific jurisdiction over Green Pampas under C.P.L.R. §

302, because none of the claims result from New York transactions.  Section 302 provides that a

court may exercise specific jurisdiction over a defendant if the defendant (1) transacts any

business within the state or contracts to supply goods or services in New York, (2) commits a

tortious act within New York, (3) commits a tortious act that causes injury to a person or

property in the state, or (4) owns, uses, or possesses any real property situated within the state.

*See* C.P.L.R. § 302(a) 1-4.  At the crux of the inquiry is whether the cause of action arises out of

alleged New York transactions or activity.  *PaineWebber Inc. v. Westgate Group, Inc.*, 748 F.

Supp. 115, 119 (S.D.N.Y. 1990) (Sweet, J.).  The plaintiffs cannot establish any of these

requirements for specific jurisdiction.

Jurisdiction pursuant to §302(a)(1) fails because the Complaint fails to allege any

business activity by Green Pampas within New York.  As noted above, Green Pampas has

neither transacted any business in New York, nor contracted to supply goods or services in New

York. (Antoniazzi Decl. ¶¶ 5, 10). Similarly, this Court does not have jurisdiction over Green

Pampas under § 302(a)(2), which grants jurisdiction over a foreign defendant if it commits a

tortious act in New York.  C.P.L.R. § 302(a)(2).  Courts construe this requirement strictly.

*Ziegler, Ziegler & Associates LLP v. China Digital Media Corp.*, No. 05-cv-4960, 2010 WL

2835567, *6 -7 (S.D.N.Y. July 13, 2010) (Preska, C.J).  Green Pampas is not physically present

in New York  (Antoniazzi Decl., ¶¶ 2, 4, 6, 10, 11), and plaintiffs have not alleged that Green

Pampas committed a tort while in New York.  Green Pampas is not subject to specific

jurisdiction in New York under C.P.L.R. § 302(a)(1) or (2).

Nor do the facts in this case support finding personal jurisdiction over Green Pampas under sections 302(a)(3) or (4).  Under C.P.L.R. § 302(a)(3), a court can obtain jurisdiction over a defendant if the defendant committed a tortious act that causes injury to person or property in the state. The plaintiffs fail to allege any injury to a person or property in New York, but rather allege only injury to Peruvian and Paraguayan corporations. (Complaint ¶¶1.1, 1.2, 4.14, 5.1). Finally, C.P.L.R. § 302(a)(4) grants jurisdiction over a claim arising out of the ownership, use, or possession of real property in New York.  Green Pampas does not own, use or possess any real property in New York (Antoniazzi Decl. ¶¶ 2, 4, 6), and the plaintiffs' complaint has nothing to do with real property located in New York.  Sections 302(a)(3) and 302(a)(4) do not provide a basis for specific jurisdiction over Green Pampas.

C.   **The exercise of jurisdiction over Green Pampas would be inconsistent with federal due process requirements**.

Since New York law does not confer general or specific jurisdiction over Green Pampas, this Court is not required to undertake a separate analysis to determine whether the exercise of jurisdiction violates due process.  *See Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997) (If New York law does not confer personal jurisdiction, then this court does "not address the issue of due process.").

Nevertheless, the constitutional due process requirement for personal jurisdiction is not satisfied here.  To determine whether it is appropriate to exercise jurisdiction over a foreign defendant, the court must engage in a two-part analysis:  "the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir.2010).  Under the first inquiry, the court determines whether a defendant has sufficient minimum contacts with the forum that it would not "offend traditional notions of fair play and substantial justice" to maintain an action against the defendant in the forum. *Frontera Resources*

11

*Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 396 (2d Cir.2009).  If the court determines that the defendant has sufficient minimum contacts, then the court must determine whether it would be reasonable to exercise jurisdiction over the defendant.  *Maersk, Inc. v. Neewra, Inc.*, 554 F.Supp.2d 424, 445 (S.D.N.Y. 2008) (McMahon, J.).  When evaluating the reasonableness component, the court should focus on the following factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies."  *Maersk*, 54 F. Supp. 2d at 445 (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir.1996)).

The plaintiffs have not, and cannot, allege that Green Pampas has sufficient contacts to be subject to jurisdiction in New York.  There are no such allegations in the Complaint.  Green Pampas is not a New York company, and it does not conduct any continuous and systematic business in or affecting New York.  *See generally* Antoniazzi Decl. ¶¶ 3-11.  Without the requisite minimum contacts, the exercise of jurisdiction is not warranted and thus, would be in violation of due process.

Under the two-part analysis, this Court lacks personal jurisdiction over Green Pampas both under New York's jurisdictional statutes C.P.L.R. §§ 301 and 302 and under federal due process requirements.  Accordingly, this Court should dismiss the Complaint as to Green Pampas for lack of personal jurisdiction.

**III.   The Complaint should be dismissed for failure to state a claim against Green Pampas.**

To the extent that this Court has not already decided to dismiss this action because of the enforceable arbitration clause or the lack of personal jurisdiction, the Court should dismiss this action as to Green Pampas under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

Although this Court is required to accept as true the factual allegations in the Complaint and draw all inferences in favor of the plaintiffs (*see, e.g., Harris v. Mills*, 572 F.3d 667 (2d Cir. 2009)), the plaintiffs must allege "enough facts to state a claim to relief" that are plausible on their face in order to survive a motion to dismiss pursuant to Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Facial plausibility only exists when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1449 (2009). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. This Court is not required to accept as true allegations that are inadequately pleaded but instead consist of vague references to the elements of the statute and are supported by conclusory statements only. *Id.*

The allegations that purport to state RICO, fraudulent inducement, and deceptive trade practices claims against Green Pampas are unable to withstand this scrutiny. The allegations are vague and do not include the minimum specificity required to survive a Rule 12(b)(6) motion to dismiss.

A.      **The plaintiffs fail to state a valid RICO claim.**

In Count 3 of the Complaint, the plaintiffs purport to allege a civil RICO claim pursuant to 18 U.S.C. § 1962(c) and (d). (Complaint ¶¶ 9.1-9.12). Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, . . . in the

conduct of such enterprise's affairs through a pattern of racketeering activity."  18  U.S.C.

§1962(c).  To support a civil RICO claim, plaintiffs "must be able to support allegations of (1) a

RICO violation, (2) injury, and (3) transaction and loss causation."  *Ozbakir v. Scotti*, 764 F.

Supp. 2d 556, 564 (W.D.N.Y. 2011) (internal quotations omitted); *see also First Nationwide*

*Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994). To establish a violation of Section

1962(c), the plaintiffs must establish that they were injured by Green Pampas' (1) conduct of an

enterprise, (2) through a pattern (3) of racketeering activity.  *Cofacredit, S.A.v. Windsor*

*Plumbing Supply Co. Inc.*, 187 F.3d 229, 242 (2d Cir.1999).

> **i.       The plaintiffs fail to allege a RICO enterprise.**

The plaintiffs fail to allege the existence of an "enterprise" as required by the statute.

Section 1961(4) defines an "enterprise" as "any individual, partnership, corporation, association,

or other legal entity, [or] any union or group of individuals associated in fact although not a legal

entity."  18 U.S.C. § 1961(4).  The enterprise "is an entity . . . a group of persons associated

together for a common purpose of engaging in a course of conduct." *United States v. Turkette*,

452 U.S. 576, 583 (1981). Here, the plaintiffs make a conclusory allegation that "Defendants . . .

were a for-profit entity and constitutes (sic) an 'enterprise.'"[6] (Complaint ¶ 9.4).  Throughout the

Complaint, the plaintiffs fail to provide any *facts* to support their claim that an enterprise existed.

There are no allegations that demonstrate that the RICO defendants worked together.  There are

no allegations regarding the hierarchy of the enterprise besides the mere listing of the alleged

participants.  A list of several defendants with an assertion lacking any plausible basis that they

constituted an enterprise is insufficient for a RICO claim.  Fatally, the plaintiffs have failed to

describe the organization, hierarchy, and activities of the alleged enterprise or to adequately

---

[6]Further, the plaintiffs allege that defendant CFP is a vehicle of the enterprise (Complaint ¶ 9.9) and that CFP
"managed the enterprise" (*Id.*, ¶ 9.10), but the plaintiffs do not explain what the alleged enterprise or name CFP in
the RICO count.

allege that the defendants were a continuing unit with a common purpose. *Id.* at 175 (citing *United States v. Coonan*, 938 F.2d 1553, 1560-61 (2d Cir.1991)) ("Plaintiffs have both failed to allege a nexus between the . . . Enterprise and the alleged RICO predicates and failed to explain each participant's role in the alleged course of fraudulent or illegal conduct."). Dismissal is appropriate because the pleading cannot survive this failure to establish that the defendants "functioned as a unit" in a RICO enterprise. *Id.* (citing *Nasik Breeding & Research Farm, Ltd. v. Merck & Co.,* 165 F.Supp.2d 514, 539 (S.D.N.Y.2001).

ii.   The plaintiffs fail to allege a pattern of activity.

The Complaint also fails to include a plausible claim that a "pattern" of activity occurred. In order to show a pattern of activity, the plaintiffs must show that the defendants engaged in multiple predicate acts, that the acts were related to each other, and that the acts "amount to, or that they otherwise constitute a threat of, continuing racketeering activity." *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). The requirement of "continued criminal activity" refers either to "a closed period of repeated conduct" (known as "closed-ended continuity"), or to "past conduct that by its nature projects into the future with a threat of repetition (known as "open-ended continuity"). *See H.J,* 492 U.S. at 239-242. No such activity is alleged here.

1.   No facts alleged in the complaint establish<br>the existence of closed-ended continuity.

Closed-ended continuity requires "a series of related predicates extending over a substantial period of time." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) (quotations omitted). Acts extending over weeks or months do not satisfy this requirement. *H.J.*, 492 U.S. at 242. Generally, the Second Circuit requires a period of at least two years to constitute a pattern. *DeFalco v. Bernas*, 244 F.3d 286, 321 (2d Cir. 2001); *Spool,* 520 F.3d at 184; *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d

15

Cir.2004) (The Second Circuit has "never found a closed-ended pattern where the predicate acts spanned fewer than two years."). Unless a plaintiff alleges that the predicate acts covered a period of at least two years, it cannot satisfy the "pattern" element of its RICO claim.

In this case, the plaintiffs' allegations fail to meet the "pattern" of racketeering activity element necessary for establishing a RICO claim. The plaintiffs have not adequately pled predicate acts over a period of at least two years. According to the Complaint, the plaintiffs allege that the date of the first transaction was April 11, 2008. (Complaint ¶4.0). The last transaction that could form part of the alleged pattern occurred in April 2009. *Id.*, ¶¶ 4:0-21. Even accepting plaintiffs' allegations, the alleged pattern of racketeering activity could not have exceeded a year, which is well short of the two-year threshold required in the Second Circuit. There are no other allegations in the Complaint that would extend the alleged pattern to a length of time that would satisfy this element of a RICO claim. On the face of the Complaint, the plaintiffs have alleged a pattern of activity that lasted no more than a year and have failed to successfully plead closed-ended continuity. Thus, the RICO claim should be dismissed.

## 2. No facts alleged in the complaint support the existence of open-ended continuity.

To find an "open-ended" pattern of racketeering, the plaintiffs must allege either "a specific threat of repetition extending indefinitely," or "the predicate[] [acts] are a regular way of conducting the defendant[s] ongoing legitimate business." *H.J.*, 492 U.S. at 242-3; *Spool*, 520 F.3d at 185 (quoting *Cofacredit*, 187 F.3d at 244). A scheme of limited duration is insufficient to demonstrate an open-ended pattern of racketeering activity. *See Cofacredit*, 187 F.3d at 244. To determine whether open-ended continuity exists for an enterprise engaged in a legitimate business, the plaintiffs must show that the predicate acts were either the regular way of operating

16

the business or the predicate acts imply a threat of continued criminal activity beyond the period during which the predicate acts were performed.  *See First Capital*, 385 F.3d at 190.

Here, the plaintiffs have alleged neither.  They have failed to plead facts from which it may be inferred that Green Pampas's regular way of operating its business was through the fraudulent use of the mails or wires, two of the predicate acts on which the plaintiffs rely.  The Complaint suggests that the alleged fraud perpetrated on the plaintiffs concluded in April 2009. (Complaint ¶4.21).   Additionally, there is nothing in the Complaint regarding a continued threat of conduct; plaintiffs only make the catch all, boiler-plate allegation that "Defendant;s deceptive practices are likely to continue to deceive thousands of persons via the internet who will also be injured thereby." *Id.*, ¶ 9.14. A mere suggestion of the possibility of continued fraud without more is not sufficient to establish open-ended continuity.  *See Pier Connection, Inc. v. Lakhani*, 907 F. Supp.72, 76 (S.D.N.Y.1995) (Scheindlin, J.) ("A simple statement that the 'scheme continues to date' . . . without more, does not suffice."). The plaintiffs have failed to plead adequately open-ended continuity to sustain a RICO violation.

Because the Complaint falls short of suggesting either closed- or open-ended continuity with regard to Green Pampas, the RICO claim should be dismissed.

### iii.    The plaintiffs fail to show racketeering activity.

In addition to pleading a viable "pattern" of conduct, the plaintiffs must allege sufficient facts to demonstrate that each defendant engaged in "racketeering activity."  "Racketeering activity" is defined to include a number of predicate state and federal criminal acts.  The alleged predicate acts are used to determine the existence of a pattern of racketeering activity.  Here, the plaintiffs have alleged mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), and the illegal transmission of money (18 U.S.C. § 1960). (Complaint ¶ 9.5).

With respect to this essential element, the plaintiffs' RICO claim fails because (1) the plaintiffs have not met the statutory requirements for asserting any of these underlying fraud claims; and (2) even if the statutory requirement for asserting any of these claims were met, the plaintiffs have not pleaded them with the requisite particularity required under Fed. R. Civ. P. 9(b).

1.    **The plaintiffs fail to meet the statutory requirements for alleging mail and wire fraud.**

"A complaint alleging mail or wire fraud must show: (1) the existence of a scheme to defraud, (2) the defendants' knowing and intentional participation in the scheme, and (3) the use of wire or mail communications in furtherance of the scheme." *Chanayil v. Gulati*, 169 F.3d 168, 171(2d Cir. 1999) (citing *S.Q.K.F.C. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996)). Allegations of predicate mail and wire fraud acts "should state the contents of the communications, who was involved, [and] where and when they took place, and [should] explain why they were fraudulent." *Spool*, 520 F.3d at 185 (quoting *Mills*, 12 F.3d at 1176.) The plaintiffs must show that the defendant caused the "mailing" and that the mailing was for the purpose of furthering the alleged scheme. An alleged act of mail fraud will not serve as a predicate act under the RICO statute unless it is established that the U.S. mails were used in the commission of the act. *S.Q.K.F.C.*, 84 F.3d at 633.

The Complaint fails to allege that U.S. Mail was used in the alleged scheme to defraud. Other than the reference to "mail fraud" in the RICO count of the Complaint (Complaint ¶ 9.5), the plaintiffs never mention U.S. mail or allege Green Pampas' use of the mail in furtherance of the alleged scheme. The use of the words "mail fraud" without any reference to any mailings in the Complaint is inadequate. *See, e.g. Crab House of Douglaston, Inc. v. Newsday, Inc.*, 418 F. Supp. 2d 193, 211 (E.D.N.Y. 2006) (dismissing RICO claim predicated on mail fraud where in "the section entitled, 'Mail Fraud,' the words 'mail fraud' [were] used, but the substance of the

paragraph ma[de]no reference to any mailings.").  Without any allegations that Green Pampas or

the other defendants used the mail or any facts that demonstrate how the use of the mails

furthered the alleged RICO scheme, the mail fraud claim must be dismissed. *See Cofacredit*, 187

F.3d at 243.

      Similarly, the plaintiffs fail to allege any interstate communications by Green Pampas

(see Complaint ¶ ¶ 4.0- 5.2) and how any acts of wire fraud furthered the alleged fraudulent

scheme. The plaintiffs' allegations of wire fraud are insufficient to serve as a predicate act under

the RICO statute. *Id.*

### 2.      The plaintiffs fail to meet the statutory requirements for alleging bank fraud.

      The plaintiffs allege that the defendants committed financial institution fraud under 18

U.S.C. § 1344.  To support this claim, the plaintiffs must provide facts suggesting that Green

Pampas "(1) engaged in a course of conduct designed to deceive a federally chartered or insured

financial institution into releasing property; and (2) possessed an intent to victimize the

institution by exposing it to actual or potential loss." 18 U.S.C. § 1344. The plaintiffs fail to

allege any facts that would support either element of this supposed predicate act. Indeed, the

plaintiffs fail to allege that Green Pampas caused any federally chartered or insured financial

institution to release any property. Liability under § 1344 does not attach when a party other than

a federally insured institution was defrauded.  *Vargas v. Choice Health Leasing*, No. 09-Civ-

8264, 2011 WL 1758619 (S.D.N.Y. May 9, 2011) (Cote, J.) (citing *U.S. v. Laljie*, 184 F.3d 180,

189-90 (2d Cir. 1999)). Not only is there no allegation regarding the defrauding of a banking

institution, but there is also no allegation that Green Pampas had the requisite intent to victimize

any financial institution by exposing it to any actual or potential loss. Accordingly, because the

plaintiffs failed to provide any facts to establish this allegation, the predicate act of bank fraud should be dismissed.

> **3.      The plaintiffs fail to allege the illegal transmission of money.**

The plaintiffs' allegations in the Complaint cannot sustain an illegal-transmission-of-money claim.  Under section1960, the plaintiffs must allege that Green Pampas (1) "knowingly conducted, controlled, managed, supervised, directed or owned (2) a money-transmitting business that (3) affected interstate or foreign commerce, and (4) was not in compliance with applicable licensing requirement under either state or federal law." *U.S. v. Mazz-Alaluf*, 607 F. Supp. 2d 484, 489 (S.D.N.Y. 2009) (Castel, J.). As with the other predicate acts, these allegations are inadequate.  The Complaint is lacking specific examples of money transfers or any other acts that allegedly violate the statute. Therefore, the plaintiffs' allegation of the illegal transmission of money cannot serve as a predicate for the plaintiffs' RICO claim.

> **iv.      The plaintiffs fail to plead mail, wire, and
> bank fraud with the particularity required by Rule 9(b).**

The plaintiffs' allegations in the Complaint do not meet the pleading standard of Rule 9(b). Rule 9(b) requires that the plaintiff "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Concerns about the requirement of specificity in fraud allegations "are even more immediate in civil RICO actions, because such suits 'implicate the reputation interests of defendants accused of committing racketeering offenses.'" *Atl. Gypsum Co. v. Lloyds Int'l Corp.*, 753 F. Supp. 505, 512 (S.D.N.Y. 1990) (Mukasey, J.). For allegations of predicate fraud acts, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d

1124, 1128 (2d Cir.1994).  Additionally, the fraud allegations need to be particularized as to each defendant.  *Lou v. Belzberg*, 728 F. Supp. 1010, 1022 (S.D.N.Y. 1990) (Sweet, J.).

Here, the plaintiffs' allegations fail to meet these standards.  The fraud allegations in the complaint are vague, broad, unsubstantiated and wholly inadequate.  The plaintiffs merely allege that Green Pampas "committed predicate offenses . . . to wit, numerous counts of bank fraud . . .. mail fraud . . ..[and] wire fraud[.]"  (Complaint ¶ 9.5).  The plaintiffs fail to allege that Green Pampas had the requisite fraudulent intent or used the mail or wires to further an alleged fraudulent scheme.  Moreover, the Complaint fails to allege with any specificity the details of the two predicate acts in which Green Pampas allegedly engaged.  *See DeFalco*, 244 F.3d at 306 ("[t]he focus of section

(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise. . .").  In short, because the Complaint lacks any specificity about alleged mail fraud, wire fraud, and bank fraud committed by Green Pampas, it must be dismissed.

**B.     The RICO conspiracy claim must be dismissed.**

The allegation of a civil conspiracy pursuant to 18 U.S.C. § 1962(d) should be dismissed for the same reasons the underlying RICO claim should be dismissed.  Section 1962(d) provides "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."18 U.S.C. § 1962(d).  In order to prove the conspiracy claim, the plaintiffs must prove an agreement to violate one of the RICO provisions. The plaintiffs' conspiracy claim is based on a defective RICO claim and thus, is similarly defective.  A RICO conspiracy claim based on a defectively pleaded RICO claim also fails.  *See C.A. Westel de*

*Venezuela v. American Tel. & Tel. Co.*, No. 90-Civ. 6665,1994 WL 558026, *9 (S.D.N.Y. Oct. 11, 1994) (Leisure, J.).

Moreover, the conspiracy allegation is defective in that it is not at all specific.  A RICO conspiracy claim must include "specific allegations supporting an inference that each defendant knowingly agreed to participate in a conspiracy." *Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.,* 165 F. Supp. 2d 514, 541 (S.D.N.Y. 2001) (Schwartz, J.).  The Complaint alleges only that Green Pampas "also conspired to violate 18 U.S.C. § 1962(a) (*sic*) in violation of 18 U.S.C. § 1962(d)."  (Complaint ¶ 9.12).  This allegation is vague and conclusory and fails to support an inference that Green Pampas knowingly agreed to participate in anything.  Accordingly, the plaintiffs' civil conspiracy claim should be dismissed.

As shown above, the RICO claim fails because the Complaint fails to allege facts sufficient to assert an "enterprise" or a "pattern" of "racketeering activity."  Moreover, the plaintiffs' allegations regarding the predicate acts are deficient.  The allegations are lacking specificity about Green Pampas' supposed fraud.  Accordingly, the Court should dismiss the RICO claim against Green Pampas.

C.    **The plaintiffs' fraudulent inducement claim fails for lack of facial plausibility as to Green Pampas and lack of particularity under Rule 9(b).**

The plaintiffs allege that "Defendants, knowingly or recklessly, made false or misleading representations by representing that their letters of credit would be issued as confirmed letters of credit, when they knew that they would not be confirmed letters." (Complaint ¶ 11.2).  The plaintiffs make conclusory allegations about the defendants' conduct without differentiating as to the conduct of any of them or pleading with the required specificity Green Pampas' alleged actions.  There are no allegations whatsoever that Green Pampas made any representations about issuing letter of credit or that Green Pampas was at all involved in issuing any letters of credit.

Rather, Green Pampas is alleged only to have failed to perform its contractual obligation to provide urea to Plastitex. *Id.*, ¶¶ 4.20, 5.2. The plaintiffs have failed to plead facts content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal,* 129 S.Ct. at 1949.

Under New York law, the elements for a fraudulent inducement claim are: " '(1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury.' " *Eaves v. Designs for Finance, Inc.*, 785 F. Supp. 2d 229, 246 (S.D.N.Y. 2011) (Seibel, J.) (citations omitted). Furthermore, a fraudulent inducement claim must satisfy the requirements of Rule 9(b). In addition, plaintiffs must show scienter by alleging that the statements were known to be false and were intended to be relied on when made. *Amida Capital Mgmt. II, LLC v. Cerberus Capital Mgmt., L.P.*, 669 F. Supp. 2d 430, 444 (S.D.N.Y. 2009) (Stein, J.) (citation omitted). Again, like the fraud predicates for the RICO claim, plaintiffs must " '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " *Eaves,* 785 F. Supp. 2d at 247 (citations omitted). Moreover, when the fraud is alleged against multiple defendants, the Complaint must specify the role of each actor. The plaintiffs fail to meet these strict pleading requirements by lumping all of the defendants together in a vague and collective fraud allegation. *See Eaves*, 785 F. Supp. 2d at 246.

Additionally, the fraudulent inducement claim should be dismissed because the plaintiffs' allegations fail to meet the scienter requirement. Plaintiffs must allege general facts to give rise

to an inference of fraudulent intent. *Eaves*, 785 F. Supp. 2d at 247 (citing *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir.2006)). The Complaint is silent regarding Green Pampas's intent. Instead, the plaintiffs submit a boilerplate allegation that the defendants knowingly made false and misleading representations. (Complaint ¶ 11.2). This allegation is not sufficient to survive a motion to dismiss, because the language is so broad that it is meaningless. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d at 1129 (citations omitted).

For these reasons, the fraudulent inducement claim should be dismissed against Green Pampas.

**D.    The deceptive trade practices claim should be dismissed against Green Pampas because the claim arises out of a private commercial relationship between sophisticated corporate entities, and the alleged conduct does not affect the public interest of New York.**

Section 349 of New York General Business Law is a consumer protection device which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state [.]"N.Y. GEN. BUS. LAW § 349(a). Under the Act, "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages . . . or both such actions." N.Y. GEN. BUS. LAW § 349(h). In order to succeed, the plaintiffs must allege that (1) defendants engaged in deceptive and unfair acts and (2) the conduct affected the public. "Conduct is considered 'consumer oriented' if it has 'a broader impact on consumers at large.'" *Crab House of Douglaston,* No.04-cv-0558, 2011 WL 2748147, *20 (citing *Gaidon v. Guardian Life Ins. Co.*, 725 N.E.2d 598, 604 (N.Y.1999)). The complaint must involve "consumer injury or harm to the public interest." *SecuritronMagnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir.1995). The statute does not cover private contract disputes that are unique

between the parties.  *Eaves*, 785 F. Supp. 2d at 266; *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y.1995).

The plaintiffs' claims pursuant to § 349 should be dismissed for failure to state a claim against Green Pampas.  As with the fraudulent inducement claim, the defendants lump all of the defendants into a conclusory allegation involving misrepresentations regarding the letters of credit that "they" would provide.  (Complaint ¶ 10.2).  First, this allegation lacks facial plausibility as to Green Pampas, which made no representations about letters of credit and did not issue letters of credit. The claim fails because the plaintiffs are both businesses, and neither is a general consumer within the meaning of the statute. Further, the subject of this dispute is a private transaction not covered by the statute. The alleged conduct is not directed towards the general public of New York, and the transaction does not fall with the protections of the statute. Accordingly, this claim should be dismissed.

## CONCLUSION

For the ample stated here, the plaintiffs' Complaint should be dismissed.

Date: December 27, 2011                    Respectfully Submitted,

                                           /s/ Jorge A. Mestre
                                           Jorge A. Mestre
                                           SDNY Bar No. JM4977
                                           Andrés Rivero*
                                           RIVERO MESTRE LLP
                                           2525 Ponce de Leon Blvd, Suite 1000
                                           Miami, Florida 33134
                                           Phone Number: 305-445-2500
                                           Fax Number:  305-445-2505
                                           Email:  arivero@riveromestre.com

                                           Attorneys for Green Pampas, Inc.

*Pro hac vice admission pending*

## <u>CERTIFICATE OF SERVICE</u>

     I certify that on December 27, 2011, this memorandum was served by CM/ECF to the counsel of record in this action.

<u>/s/ Jorge A. Mestre</u>
Jorge A. Mestre
