# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

Continental Petroleum Corporation, Inc.,
and Plastitex, S.A.

      Plaintiffs,

  v.

                 Civil Action No. 11-CV-7801

Corporation Funding Partners, LLC,
Pablo Antoniazzi, Caren Raphael, Joseph
Lau, and Green Pampas, Inc.,

      Defendants.

_____/

**GREEN PAMPAS, INC.'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS AMENDED COMPLAINT OR STAY IN LIGHT OF
ARBITRATION AGREEMENT, AND TO DISMISS FOR LACK OF PERSONAL
JURISDICTION AND FOR FAILURE TO STATE A CLAIM**

Jorge A. Mestre
SDNY Bar No. JM4977
Andrés Rivero (admitted *Pro hac vice*)
RIVERO MESTRE LLP
2525 Ponce de Leon Blvd, Suite 1000
Miami, Florida 33134
Phone Number: 305-445-2500
Fax Number:  305-445-2505
Email:  arivero@riveromestre.com

Attorneys for Green Pampas, Inc.

## Table of Contents

Page(s)

PRELIMINARY STATEMENT ..................................................................... 1

STATEMENT OF FACTS .......................................................................... 2

DISCUSSION ........................................................................................ 5

I.      The arbitration provision of the Agreement mandates dismissal .............. 5

II.     This Court should dismiss the Amended Complaint for failure
        to state a claim against Green Pampas ..................................... 6

        A.      The plaintiffs fail to state a valid RICO claim ............................ 7

                i.      The plaintiff fail to allege a RICO enterprise........................... 8

                ii.     The plaintiffs fail to allege a pattern of activity ...................... 9

                        1.      No facts alleged in the Amended
                                Complaint establish the existence
                                of closed-ended continuity .................................. 10

                        2.      No facts alleged in the Amended
                                Complaint support the existence of
                                open-ended continuity ........................................ 11

                iii.    The plaintiffs fail to show racketeering activity.................... 12

                        1.      The plaintiffs fail to meet the statutory
                                requirements for alleging mail and wire fraud...... 12

                        2.      The plaintiffs fail to meet the statutory
                                requirements for alleging bank fraud .................. 14

                        3.      The plaintiffs fail to allege the illegal
                                transmission of money ......................................... 14

                iv.     The plaintiffs fail to plead mail, wire, and bank fraud
                        with the particularity required by Rule 9(b)..................... 15

        B.      The RICO conspiracy claim must be dismissed .......................... 16

III.  This Court should dismiss this action because this
      Court lacks personal jurisdiction over Green Pampas ........................... 16

      A.  This Court lacks personal jurisdiction over
          Green Pampas under the RICO Statute ...................................... 17

      B.  This Court should decline to exercise
          Supplemental jurisdiction over the plaintiffs'
          state claims against Green Pampas .......................................... 17

      C.  For the state law claims, the plaintiffs have failed
          to provide evidence that Green Pampas is subject
          to personal jurisdiction in New York .......................................... 18

          i.   This Court lacks general jurisdiction over
               Green Pampas because it is not doing business
               in New York under C.P.L.R. § 301 ................................. 18

          ii.  This Court lacks specific jurisdiction over
               Green Pampas under C.P.L.R. § 302 .............................. 20

          iii. The exercise of jurisdiction over
               Green Pampas would be inconsistent
               with federal due process requirements ........................... 21

      D.  The plaintiffs' fraud and fraudulent
          inducement claims fail for lack of
          facial plausibility as to Green Pampas
          and lack of particularity under Rule 9(b) .................................... 22

      E.  The deceptive trade practices claim should
          be dismissed against Green Pampas because
          the claim arises out of a private commercial
          relationship between sophisticated corporate
          entities, and the alleged conduct does not
          affect New York's public interest ................................................ 24

CONCLUSION .................................................................................. 25

## **Table of Authorities**

**Federal Cases**                                                                   **Page(s)**

*Ametex Fabrics, Inc. v. Just In Materials, Inc.,*
140 F.3d 101 (2d Cir. 1998) ...................................................................... 18

*Amida Capital Mgmt. II, LLC v. Cerberus Capital Mgmt., L.P.,*
669 F. Supp. 2d 430 (S.D.N.Y. 2009)........................................................... 24

*Arma v. Buyseasons, Inc.,*
591 F. Supp. 2d 637 (S.D.N.Y. 2008)........................................................... 19

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S.Ct. 1937 (2009)......................................................... 7, 23

*Atl. Gypsum Co. v. Lloyds Int'l Corp.,*
753 F. Supp. 505 (S.D.N.Y. 1990)............................................................... 15

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
171 F.3d 779 (2d Cir. 1999) ...................................................................... 17

*Ball v. Metallurgie Hoboken-Overpelt, S.A.,*
902 F.2d 194 (2d Cir. 2001) ...................................................................... 19

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)................................................................................... 7

*Bensusan Rest. Corp. v. King,*
126 F.3d 25 (2d Cir. 1997) ........................................................................ 21

*Boyle v. U.S.,*
--- U.S. ---, 129 S. Ct. 2237 (2009)............................................................... 8

*Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,*
98 F.3d 13 (2d Cir. 1996) .......................................................................... 23

*C.A. Westel de Venezuela v. American Tel. & Tel. Co.,*
No.-Civ-6665, 1994 WL 558026 (S.D.N.Y. Oct. 11, 1994) ............................... 16

*Chanayil v. Gulati,*
169 F.3d 168 (2d Cir. 1999) ...................................................................... 13

*Chloe v. Queen Bee of Beverly Hills, LLC,*
616 F.3d 158 (2d Cir. 2010) ...................................................................... 21

*Cofacredit, S.A. v. Windsor Plumbing Supply Co. Inc.*,
187 F.3d 229 (2d Cir. 1999) ....................................................................7, 11, 13

*Continental Realty Corp. v. J.C. Penny Co.*,
729 F. Supp. 1452 (S.D.N.Y. 1990) ............................................................. 10

*Cortec Indus. Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991) ............................................................................. 1

*Cosmas v. Hassett*,
886 F.2d 8 (2d Cir. 1989) ............................................................................... 2

*Crab House of Douglaston, Inc. v. Newsday, Inc.*,
418 F. Supp. 2d 193 (E.D.N.Y. 2006) .......................................................... 13

*Crab House of Douglaston, Inc. v. Newsday Inc.*,
801 F. Supp. 2d 64 (E.D.N.Y. 2011) ............................................................ 24

*David L. Threlkeid & Co. v. Metallgesellschaft, Ltd.*,
923 F.2d 245 (2d Cir. 1991) ........................................................................... 5

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ........................................................................................ 5

*DeFalco v. Bernas*,
244 F.3d 286 (2d Cir. 2001) .................................................................... 10, 15

*Dwyer v. Regan*,
777 F.2d 825 (2d Cir. 1985), *modified by* 793 F.2d 457 (2d Cir. 1986) .......... 2

*Eastern Fish Co. v. South Pacific Shipping Co., Ltd.*,
105 F. Supp. 2d 234 (S.D.N.Y. 2001) ............................................................ 6

*Eaves v. Designs for Finance, Inc.*,
785 F. Supp. 2d 229 (S.D.N.Y. 2011) ..................................................... 23, 24

*Elsevier Inc. v. W.H.P.R., Inc.*,
692 F. Supp. 2d 297 (S.D.N.Y. 2010) ...................................................... 8, 18

*First Capital Asset Mgmt., Inc. v. Stainwood Inc.*,
385 F.3d 159 (2d Cir. 2004) ..................................................................9, 10, 11

*Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*,
582 F.3d 393 (2d Cir. 2009) ......................................................................... 21

*GICC Capital Corp. v. Tech. Financial Group, Inc.,*
67 F.3d 463 (2d Cir. 1995) ................................................................................... 11

*Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp.,*
246 F.3d 219 (2d Cir. 2001) ................................................................................... 6

*H.J. Inc. v. N.W. Bell Tel. Co.,*
492 U.S. 229 (1989) ...................................................................................... 10, 11

*Jacobs v. Felix Block ErbenVerlag Fur Buhne Film Und Funk KG,*
160 F. Supp. 2d 722 (S.D.N.Y. 2001) ................................................................. 19

*Louis Dreyfus Negoce, S.A. v. Blystad Shipping & Trading Inc.,*
252 F.3d 218 (2d Cir. 2001) ................................................................................... 5

*Lou v. Belzberg,*
728 F. Supp. 1010 (S.D.N.Y. 1990) ..................................................................... 15

*Maersk, Inc. v. Neewra, Inc.,*
554 F. Supp. 2d 424 (S.D.N.Y. 2008) ............................................................ 22, 30

*Mehler v. Terminex Int'l Co.,*
205 F.3d 44 (2d Cir. 2000) ..................................................................................... 6

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
84 F.3d 560 (2d Cir. 1996) ................................................................................... 22

*Mills v. Polar Molecular Corp.,*
12 F.3d 1170 (2d Cir. 1993) ............................................................................. 2, 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1 (1983) ................................................................................................... 5

*Moss v. Morgan Stanley, Inc.,*
719 F.2d 5 (2d Cir. 1983) ....................................................................................... 1

*Motorola Credit Corp. v. Uzan,*
388 F.3d 39 (2d Cir. 2004) ................................................................................... 18

*Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.,*
165 F. Supp. 2d 514 (S.D.N.Y. 2001) ............................................................... 9, 16

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*
88 F.3d 129 (2d Cir. 1996) ..................................................................................... 6

*PaineWebber Inc. v. Westgate Group, Inc.*,
748 F. Supp. 115 (S.D.N.Y. 1990).................................................................. 20

*Pier Connections, Inc. v. Lakhani*,
907 F. Supp. 72 (S.D.N.Y. 1995).................................................................... 12

*PT United Can Co. Ltd. v. Crown Cork & Seal Co. Inc.*,
138 F.3d 65 (2d Cir. 1998) ............................................................................ 17

*Purgess v. Sharrock*,
33 F.3d 134 (2d Cir. 1994) ............................................................................ 18

*Reves v. Ernst & Young*,
507 U.S. 170 (1993)......................................................................................... 9

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
490 U.S. 477 (1989)......................................................................................... 5

*Rubin v. Sona Int'l Corp.*,
457 F. Supp. 2d 191 (S.D.N.Y. 2006)............................................................... 5

*Securitron Magnalock Corp. v. Schnabolk*,
65 F.3d 256 (2d Cir. 1995) ............................................................................ 24

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994) ..................................................................... 15, 24

*Spool v. World Child Int'l Adoption Agency*,
520 F.3d 178 (2d Cir. 2008) .............................................................10, 11, 13

*S.Q.K.F.C. v. Bell Atl. TriCon Leasing Corp.*,
84 F.3d 629 (2d Cir. 1996) ............................................................................ 13

*Sudul v. Computer Outsourcing Services*,
868 F. Supp. 59 (S.D.N.Y. 1994).................................................................... 23

*United States v. Coonan*,
938 F. 2d 1553 (2d Cir. 1991) ......................................................................... 9

*United States v. Laljie*,
184 F.3d 180 (2d Cir. 1999) .......................................................................... 14

*United States v. Mazz-Alaluf*,
607 F. Supp. 2d 484 (S.D.N.Y. 2009)............................................................. 14

*United States v. Turkette*,
452 U.S. 576 (1981) ................................................................................................. 8

*Vargas v. Choice Health Leasing*,
No. 09 Civ. 8264, 2011 WL 1758619 (S.D.N.Y. May 9, 2011)..................................... 14

*Wall v. CSX Transp., Inc.*,
471 F.3d 410 (2d Cir. 2006) ..................................................................................... 23

*Wiwa v. Royal Dutch Petroleum Co.*,
226 F.3d 88 (2d Cir. 2000) ....................................................................................... 19

*Ziegler, Ziegler & Associates LLP v. China Digital Media Corp.*,
No. 05 CV 4960, 2010 WL 2835567 (S.D.N.Y. July 13, 2010) ................................... 20

**State Cases**

*Gaidon v. Guardian Life Ins. Co. of America*,
725 N.E.2d 598 (N.Y. 1999) ..................................................................................... 24

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
647 N.E.2d 741 (N.Y. 1995) ..................................................................................... 25

**Rules**

Fed. R. Civ. P. 9(b) ...........................................................................................2, 12, 15, 22

Fed. R. Civ. P. 12(b)(6)............................................................................................... 7

**Statutes**

N.Y. C.P.L.R. 301 (McKinney's 2011) ................................................2, 17, 18, 19, 20, 22

N.Y. C.P.L.R. 302 (McKinney's 2011) ....................................................2, 17, 20, 21, 22

N.Y. General Business Law § 349.................................................................2, 4, 24, 25

9 U.S.C. § 3 .................................................................................................................. 6

18 U.S.C. § 1341 ......................................................................................................... 12

18 U.S.C. § 1343............................................................................................................ 12

18 U.S.C. § 1344............................................................................................................ 12, 14

18 U.S.C. § 1960.................................................................................................... 12

18 U.S.C. § 1961...................................................................................................... 8

18 U.S.C. § 1962……………………………………………………………….7, 16

28 U.S.C. § 1367……………………………………………………………………18

## PRELIMINARY STATEMENT

As admitted by the plaintiffs, Plastitex and Green Pampas executed a written contract. (Am. Compl. ¶¶ 4.20, 5.2.) Plastitex sues Green Pampas for breach of contract, fraudulent inducement, deceptive trade practices, and RICO, relating to a January 20, 2009 Sale and Purchase Agreement between Green Pampas and Plastitex (the "Agreement"). (Declaration of Jorge Mestre, dated December 27, 2011 ("Mestre Decl."), at Exhibit A).[1] The Agreement was for Green Pampas to sell urea to Plastitex. (Am. Compl. ¶¶ 4.20, 5.2; Mestre Decl., Ex. A, 1.) Plastitex and Green Pampas expressly agreed that "all disputes arising out of or in connection with the present contract**" *were to be arbitrated.*** (Mestre Decl., Ex. A, § 12.) Specifically, if the parties were unable to resolve their dispute by "friendly negotiation," Plastitex agreed that:

> *[A]ll disputes shall be finally settled under the Rules of Arbitration of The International Chamber Of Commerce*. The disputed matter will be subject to Arbitration by an Arbitrator in Paris, France under ICC Rules and Regulations . . . . The award of the Arbitrator shall be final and binding for both parties.

*Id.* § 12 (emphasis added). Thus, Plastitex mistakenly invokes this Court's jurisdiction. If it wants to make claims against Green Pampas, it must do so in arbitration.

Yet even if there were no arbitration clause, this Court should dismiss Green Pampas from the lawsuit for at least four reasons.

***First***, plaintiffs fail to allege a valid RICO claim. Plaintiffs' Amended Complaint lacks allegations of an "enterprise," a "pattern" of racketeering activity, or two predicate acts, all required under the RICO statute. *See Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 23 (2d Cir. 1983). Here, plaintiffs fail to allege facts enough to demonstrate *any* of these statutory elements.

---

[1] Plaintiffs neglect to attach the Agreement despite suing over its supposed breach (Am. Compl. ¶¶ 5-5.2), and even though Green Pampas pointed this out in the motion to dismiss their original complaint. The Court may consider the Agreement, even though it is outside the four corners of the Amended Complaint, because the Agreement is integral to the plaintiffs' claims and because "a plaintiff should not so easily be allowed to escape the consequences of its own failure." *Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991).

**Second**, because the RICO claim against Green Pampas fails, the Court should decline supplemental jurisdiction over plaintiffs' state claims because, once the RICO claim is dismissed, the state law claims are not properly before this Court.  Even if the Court were inclined to exercise supplemental jurisdiction over the state law claims, plaintiffs fail to allege facts sufficient to establish that this Court has personal jurisdiction over Green Pampas under C.P.L.R. §§ 301 and 302. The record establishes that Green Pampas does not conduct any business in New York that would allow this Court to exercise personal jurisdiction over it.

**Third,** the plaintiffs do not plead their fraud or fraudulent inducement claims with particularity as required by Rule 9(b).

**And fourth**, plaintiffs' deceptive trade practice claim under New York General Business Law § 349 fails because (1) it arises out of a private commercial relationship between sophisticated corporate entities, and (2) the conduct does not affect New York's public interest.

## STATEMENT OF FACTS

### The Parties

Plaintiff Plastitex is incorporated in Paraguay, and plaintiff Continental Petroleum Corporation is incorporated in Peru.[2] (Am. Compl. ¶¶ 1.1 and 1.2). Green Pampas is incorporated in Delaware and is headquartered in Florida. (Declaration of Marco Antoniazzi, dated December 21, 2011 ("Antoniazzi Decl.") ¶ 1.)

### Green Pampas's Lack of Contacts with New York

Green Pampas does not conduct any business in New York. In fact, Green Pampas has offices in Florida and employs individuals in Florida only (Antoniazzi Decl. ¶ 2), does not have

---

[2] At the dismissal stage, the facts alleged in a complaint are presumed to be true and all factual inferences must be drawn in the plaintiffs' favor. *See Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir. 1993); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir. 1989); *Dwyer v. Regan,* 777 F.2d 825, 828-29 (2d Cir. 1985), *modified by,* 793 F. 2d 457 (2d Cir. 1986). Thus, for purposes of this motion alone, Green Pampas will, accept reluctantly the facts alleged even though they are, in the main, false and distorted.

an office or any employees in New York (*Id.* ¶¶ 3, 6), has never conducted any business in New York, (*Id.* ¶ 10), and does not have any bank accounts in New York. (*Id.* ¶ 6.) Indeed, Green Pampas does not own any real or personal property in New York. (*Id.* ¶ 4) and all of its revenue is derived from customers outside of New York (*Id.* ¶ 8.)

***Allegations of the Amended Complaint***

Here, Peruvian and Paraguayan corporations have sued multiple defendants, including Green Pampas of Delaware, in New York. The case is simply an alleged breach of contract dispute arising from a series of transactions in which the plaintiffs tried to buy urea.[3]

In April 2008, Plastitex and Continental each contacted defendant Corporate Funding Partners ("CFP") to obtain funding for separate contracts with non-parties for the purchase of urea. (*Id.* ¶¶ 4.0, 4.1, 4.15.) Defendant Pablo Antoniazzi was the South American representative for CFP for both of these transactions. (*Id.* ¶¶ 4.1, 4.16.) To secure letters of credit to fund their respective transactions, both Continental and Plastitex filled out various forms provided by CFP and paid the fees required for the issuance of letters of credit. (*Id.* ¶¶ 4.1-4.6, 4.15, 4.16.) The urea suppliers' banks rejected both letters of credit issued by CFP because they were not confirmed. (*Id.* ¶¶ 4.8, 4.16.) Antoniazzi then proposed to Continental and Plastitex that he could find a urea supplier who would accept a letter of credit like the ones previously issued. (*Id.* ¶ 4.10.) Both Plastitex and Continental entered into contracts with non-party Trifecta Trading, an entity recommended by Antoniazzi, to buy urea. (*Id.* ¶¶ 4.10-11.) Both Plastitex and Continental paid CFP for letters of credit, which were sent to Trifecta Trading. (*Id.* ¶¶ 4.12, 4.18.) Trifecta Trading never delivered urea to either Plastitex or Continental. (*Id.* ¶¶ 4.12, 4.19.)

Antoniazzi then suggested Green Pampas as a source of urea (*Id.* ¶¶ 4.13, 4.20), but Continental declined. (*Id.* ¶ 4.13.) Plastitex, however, made the Agreement with Green Pampas.

---

[3] A synthetic form of urea is used as a fertilizer, animal feed, and in the manufacture of synthetic resins.

(*Id.* ¶ 4.20.) Plastitex paid CFP for another letter of credit, but no urea was delivered. (*Id.*)

Instead of suing for contract damages, the plaintiffs try to transform basic contract claims into a RICO conspiracy and fraud—and throw in deceptive trade practices claims for good measure. The Amended Complaint names Green Pampas in:  count 1(a), breach of contract (Am. Compl. ¶¶ 5.0-5.2) (Count 1(b) is a second breach of contract claim against CFP); count 2(a), fraud (*Id.* ¶¶ 7.1-7.4); and count 3, violation of the federal RICO statute (*Id.* ¶¶ 9.0-9.15.)  The plaintiffs make allegations generally, and with no specificity, against "Defendants" in count 4, alleging deceptive trade practices in violation of General Business Law §349(a) (*Id.* ¶¶ 10.1-10.5), and count 5, alleging fraudulent inducement. (*Id.* ¶¶ 11.1-11.5.)

*Arbitration Clause of the Agreement*

In Agreement, the parties expressly contracted for alternative dispute resolution. (Mestre Decl., Ex. A, § 12.) In the event of a dispute, the parties were, first, to engage in a "friendly negotiation." (*Id.*) Friendly negotiations failing, the parties are contractually obligated to submit their disputes to arbitration:

> [*A*]*ll disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of The International Chamber Of Commerce*.  The disputed matter will be subject to Arbitration by an Arbitrator in Paris, France under ICC Rules and Regulations.  The losing party will pay the Arbitration fee . . . The award of the Arbitrator shall be final and binding for both parties.

*Id.* (emphasis added).

## DISCUSSION

### I.     The arbitration provision of the Agreement mandates dismissal.

The Court should enforce the parties' agreement and dismiss or stay this action in favor

of arbitration as required by Federal Arbitration Act § 3 (the "FAA").[4] For this reason, the Court

need not reach the many other grounds for dismissal.

Federal policy "strongly favors arbitration as an alternative dispute resolution process."

*David L. Threlkeid & Co. v. Metallgesellschaft, Ltd.,* 923 F. 2d 245, 248 (2d Cir. 1991) (citing

*Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477 (1989)). "[T]he [FAA]

***leaves no place for the exercise of discretion by a district court,*** but instead mandates that

district courts *shall* direct the parties to proceed to arbitration on issues to which an arbitration

agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985)

(emphasis added). Where there is a question whether claims are arbitrable, federal arbitration

policy requires that "any doubts . . . be resolved in favor of arbitration." *Moses H. Cone Mem'l*

*Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983); *see also Louis Dreyfus Negoce, S.A.*

*v. Blystad Shipping & Trading Inc.,* 252 F.3d 218, 223 (2d Cir. 2001).

Section 12 of the Agreement, quoted above, requires arbitration of this controversy

arising out of and connected to the parties' urea contract. Section 3 of the FAA provides that

once the Court determines an issue is arbitrable, it shall stay the case pending arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon
> any issues referable to arbitration under an agreement in writing for such
> arbitration, the court in which suit is pending, upon being satisfied that the issue
> involved in such suit or proceeding is referable to arbitration under such an
> agreement, shall on application of one of the parties stay the trial of the action

---

[4] "Where all of the issues raised in the complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings." *Rubin v. Sona Int'l Corp.,* 457 F. Supp. 2d 191, 198 (S.D.N.Y. 2006)(Scheindlin, J.).
[6] Green Pampas does not seek to compel arbitration, and it is not required to do so to enforce its rights under the Agreement. At this point, Green Pampas merely seeks to enforce its rights under both the Agreement and Section 3 of the FAA by requiring that any claims under the Agreement be brought in arbitration.

until such arbitration has been had in accordance with the terms of the agreement…

9 U.S.C. § 3.

In determining whether a specific dispute is subject to arbitration, a court must decide "(1) whether there exists a valid agreement to arbitration at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (quoting *National Union Fire Ins. Co. v. Belco Petroleum Corp.,* 88 F.3d 129, 135 (2d Cir. 1996)); *Mehler v. Terminex Int'l Co.*, 205 F.3d 44, 47 (2d Cir. 2000). "Arbitration should be ordered 'unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Eastern Fish Co. v. South Pacific Shipping Co., Ltd.,* 105 F. Supp. 2d 234, 237 (S.D.N.Y. 2001) (Berman, J.) (citation omitted). The relevant arbitration provision adopted by the parties covers "all disputes *arising out of or in connection with* the present contract." (Mestre Decl., Ex. A, § 12) (emphasis added). This is "precisely the kind of broad arbitration clause that justifies a presumption of arbitrability." *Mehler*, 205 F.3d at 49 (internal quotations omitted). "Courts have consistently constructed the 'arising out of or relating to' language in arbitration clauses as all encompassing." *Eastern Fish,* 105 F. Supp. 2d at 237 (citation omitted).

Because all claims are based on allegations about Green Pampas' purported failure to provide urea as required by the Agreement (Am. Compl. ¶ 4.20) ("[Green Pampas] did not have any urea.") (*Id.* ¶ 5.2) ("Green Pampas, Inc., failed to provide the Urea.") the Agreement requires arbitration of this dispute.[6]

**II.     This Court should dismiss the Amended Complaint for failure to state a claim against Green Pampas.**

Should this Court decide not to dismiss or stay this action in favor of arbitration, it should nevertheless dismiss Green Pampas under Federal Rules of Civil Procedure 12(b)(6) for plaintiffs' failure to state a claim upon which relief can be granted.

While the Court must accept as true factual allegations of complaint, the plaintiffs are still required to allege "enough facts to state a claim to relief" that are plausible on their face in order to survive a motion to dismiss pursuant to Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Facial plausibility only exists when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. This Court is not required to accept as true allegations that consist of vague references to the elements of the statute and are supported only by conclusory statements *Id*.

The allegations against Green Pampas that purport to state claims for RICO, fraud, fraudulent inducement, and deceptive trade practices claims do not withstand this scrutiny because they are vague and lack the minimum specificity required.

### A.    *The plaintiffs fail to state a valid RICO claim.*

In Count 3, the plaintiffs purport to allege a RICO claim under 18 U.S.C. § 1962(c) and (d). (Am. Compl. ¶¶ 9.1-9.12.) Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity." To establish a violation, the plaintiffs must show that they were injured by Green Pampas' (1) conduct of an enterprise, (2) through a pattern (3) of racketeering activity. *Cofacredit, S.A. v. Windsor Plumbing Supply Co. Inc.*, 187 F.3d 229, 242 (2d Cir. 1999).

### i.   *The plaintiffs fail to allege a RICO enterprise.*

Plaintiffs fail to adequately allege that an association-in-fact comprised of all of the named defendants is an "enterprise".  Section 1961(4) defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, [or] any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  The enterprise "is an entity . . . a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981).  An association-in-fact enterprise must have "three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, --- U.S. ---, 129 S.Ct. 2237, 2244 (2009); *see also Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 305-306 (S.D.N.Y. 2010).

The plaintiffs' attempt to plead an enterprise or an association-in-fact enterprise lacks all substance. Nowhere do the plaintiffs provide the necessary *facts* to support their claim that an association-in-fact existed. Rather, the plaintiffs make formulaic recitations of the elements for a RICO claim and conclusory allegations about the defendants as though such talismanic pleading made out a RICO claim. They allege "***upon information and belief*** that [the defendants] . . . played roles in the association in fact enterprise . . . ." but give no detail even for this supposition.[7] (Am. Compl. ¶ 17.6)(emphasis added). The plaintiffs allege, without more, that "Defendants . . . were a for-profit entity and constitutes (sic) an 'enterprise'. . . ."[8] (*Id.* ¶ 9.2.) They recite that "each of the Defendants . . . conducted or participated, directly or indirectly, in the conduct of the affairs of an enterprise through a pattern of racketeering activity . . . ." (*Id.* ¶

---

[7] The plaintiffs offer no basis for the allegation that "Green Pampas is a straw company with no assets or income that is simply used for its name and its website to further perpetrate [the scam]." (Am. Compl. ¶ 17.6).

[8] First, plaintiffs allege that the defendants, except LC Scam Corp., are an enterprise. (Am. Compl. ¶ 9.2). Second, plaintiffs allege that the association-in-fact enterprise, LC Scam Corp., is comprised of the named defendants. (Am. Compl. ¶ 17.2) The enterprise allegations against which Green Pampas must defend itself have been inadequately pleaded and are unclear.

9.4.) These rote, undetailed statements do not begin to explain how the RICO defendants worked together. Besides the mere listing of the alleged participants, plaintiffs do not allege the hierarchy of the enterprise. (*Id*. ¶ 17.2.) They utterly fail to describe the mechanics of the enterprise or how defendants joined together for a common purpose. A list of several defendants with an assertion lacking any plausible basis that they operated as an enterprise does not make out a RICO claim.

Without describing in detail the organization, hierarchy, and activities of the alleged enterprise, or adequately alleging that the defendants were a continuing unit with a common purpose, plaintiffs do not begin to allege an enterprise. *First Capital Asset Management*, 385 F.3d at 175 (citing *United States v. Coonan*, 938 F. 2d 1553, 1560-61 (2d Cir. 1991)) ("Plaintiffs have both failed to allege a nexus between the . . . [e]nterprise and the alleged RICO predicates and failed to explain each participant's role in the alleged course of fraudulent or illegal conduct."). The Amended Complaint cannot survive without alleging that the defendants "functioned as a unit" in a RICO enterprise. *Id*. (citing *Nasik Breeding & Research Farm, Ltd. v. Merck & Co.,* 165 F. Supp. 2d 514, 539 (S.D.N.Y. 2001)).

To violate the RICO statute, a defendant must participate in the operation or management of the enterprise and must have been involved in directing its affairs—assisting the enterprise is not enough.  *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  The plaintiffs not only fail to allege that Green Pampas ran the alleged enterprise--they **allege that Green Pampas was controlled by other defendants**. (Am. Compl. ¶ 17.2.) Given that Green Pampas did not have discretion in its own acts, it is implausible to suggest that it had any control over the activities of the alleged enterprise. And, indeed, the plaintiffs simply do not allege that Green Pampas controlled or directed the enterprise as required by the law.

## ii.    *The plaintiffs fail to allege a pattern of activity.*

9

To establish a pattern of activity, plaintiffs must allege that defendants engaged in multiple predicate acts, that the acts were related to each other, and that they "amount to, or that they otherwise constitute a threat of, continuing racketeering activity." *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). "Continued criminal activity" refers either to "a closed period of repeated conduct" ("closed-ended continuity"), or to "past conduct that by its nature projects into the future with a threat of repetition" ("open-ended continuity"). *See H.J*, 492 U.S. at 239-242. Here, all they allege are two isolated, failed transactions within a too-short time.

### 1. No facts alleged in the Amended Complaint establish the existence of closed-ended continuity.

Closed-ended continuity requires "a series of related predicates extending over a substantial period of time." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) (quotations omitted). Acts extending over weeks or months will not do. *H.J.*, 492 U.S. at 242. Generally, the Second Circuit requires a period of at least two years to constitute a pattern. *DeFalco v. Bernas*, 244 F.3d 286, 321 (2d Cir. 2001); *Spool,* 520 F.3d at 184; *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004) (The Second Circuit has "never found a closed-ended pattern where the predicate acts spanned fewer than two years."). Without alleging predicate acts extending for a period of at least two years, a plaintiff cannot satisfy the "pattern" requirement. A court will not find closed-ended continuity when the acts consist of narrowly-tailored action toward a singular fraudulent end in a short period of time. *Continental Realty Corp. v. J.C. Penney Co.*, 729 F. Supp. 1452, 1455 (S.D.N.Y. 1990).

Here, no pattern exists because the plaintiffs have not adequately pleaded predicate acts over a period of at least two years. According to the Amended Complaint, the first transaction took place on April 11, 2008 (Am. Compl. ¶ 4.0), and Green Pampas was involved only after July 8, 2008. (*Id*. ¶ 4.12-13.) The last transaction that could form part of the alleged pattern

happened in April 2009. (*Id.* ¶¶ 4:0-21.) The alleged pattern of racketeering activity did not exceed a year, well short of the two-year threshold required in the Second Circuit. No other allegations in the Amended Complaint extend the supposed pattern to a period long enough to establish closed-ended continuity.[9]

Moreover, plaintiffs allege this scheme was directed towards them and was carried out by a small number of participants with the aid of a few others, including Green Pampas. Green Pampas was only briefly involved after July 2008. The plaintiffs allege only a short, simplistic, two-event scheme—nothing close to the complex, multi-faceted scheme involving more than a few participants and transactions over a long enough time period as RICO requires. *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 467-8 (2d Cir. 1995). Plaintiffs have alleged a pattern of activity that lasted no more than a year, thus failing to sufficiently plead closed-ended continuity. Therefore, their RICO claim fails, and this Court should dismiss it.

### 2. No facts alleged in the Amended Complaint support the existence of open-ended continuity.

To find an "open-ended" pattern of racketeering, the plaintiffs must allege either "a specific threat of repetition extending indefinitely," or "the predicate[] [acts] are a regular way of conducting the defendant[s] ongoing legitimate business." *H.J.*, 492 U.S. at 242-3; *Spool*, 520 F.3d at 185 (quoting *Cofacredit*, 187 F.3d at 244). A scheme of limited duration is insufficient to demonstrate an open-ended pattern of racketeering activity. *Cofacredit*, 187 F.3d at 244. To establish open-ended continuity for an enterprise engaged in legitimate business, plaintiffs must show that the predicate acts were either the regular way of operating the business or the predicate acts imply a threat of continued criminal activity beyond the period during which the predicate acts were performed. *See First Capital*, 385 F.3d at 190.

---

[9] In the Amended Complaint, the plaintiffs refer to another litigation, filed in 2010, involving one of the defendants. This litigation does not include the same defendants and is unrelated to this case.( Am. Compl. ¶¶4.6, 17.4.)

Here, the plaintiffs have alleged neither. They have failed to plead facts from which it may be inferred that Green Pampas's regular way of operating its business was through fraudulent use of the mails or wires, two of the predicate acts on which the plaintiffs rely. The Amended Complaint suggests that the alleged fraud perpetrated on the plaintiffs concluded in April 2009. (Am. Compl. ¶ 4.21.) There is nothing in the Amended Complaint regarding a continued threat of conduct. Plaintiffs only make the catch-all, boiler-plate allegation that "Defendants' deceptive practices are likely to continue to deceive thousands of persons via the internet who will also be injured thereby." (*Id.* ¶ 9.14.) Mere suggestion of the possibility of continued fraud without more is insufficient to establish open-ended continuity. *Pier Connection, Inc. v. Lakhani*, 907 F. Supp.72, 76 (S.D.N.Y. 1995) (Scheindlin, J.) ("A simple statement that the 'scheme continues to date' . . . without more, does not suffice."). The plaintiffs have failed to adequately plead open-ended continuity to sustain a RICO claim.

Because the Amended Complaint falls short of alleging either closed- or open-ended continuity, this Court should dismiss the RICO claim.

### iii.   The plaintiffs fail to show racketeering activity.

Plaintiffs must allege "racketeering activity"—i.e., a pattern of predicate state or federal criminal acts. Here, the plaintiffs allege mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), and the illegal transmission of money (18 U.S.C. § 1960). (Am. Compl. ¶ 9.5.) On this essential element, the plaintiffs' claim fails because (1) they have not alleged the elements of any of these underlying criminal claims, and (2) even if they had, the plaintiffs have not pleaded them with the particularity required under Fed. R. Civ. P. 9(b).

### 1.   The plaintiffs fail to meet the statutory requirements for alleging mail and wire fraud.

12

"A complaint alleging mail or wire fraud must show: (1) the existence of a scheme to defraud, (2) the defendants' knowing and intentional participation in the scheme, and (3) the use of wire or mail communications in furtherance of the scheme." *Chanayil v. Gulati*, 169 F.3d 168, 171(2d Cir. 1999) (citing *S.Q.K.F.C. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996)).  Allegations of predicate mail and wire fraud acts "should state the contents of the communications, who was involved, [and] where and when they took place, and [should] explain why they were fraudulent." *Spool*, 520 F.3d at 185 (quoting *Mills*, 12 F.3d at 1176.) The plaintiffs must show that the defendant caused the "mailing" and that the mailing was for the purpose of furthering the alleged scheme. An alleged act of mail fraud will not serve as a predicate act under the RICO statute unless it is established that the U.S. mails were used in the commission of the act. *S.Q.K.F.C.*, 84 F.3d at 633.

The Amended Complaint fails to allege that Green Pampas used the U.S. mail in the scheme. Other than refer to "mail fraud" in the RICO count (Am. Compl. ¶ 9.5) and in the RICO Statement (*Id.* ¶ 17.5), plaintiffs do not allege Green Pampas' use of the mail. The use of the words "mail fraud" without any reference to specific mailings is inadequate. *See, e.g. Crab House of Douglaston, Inc. v. Newsday, Inc.*, 418 F. Supp. 2d 193, 211 (E.D.N.Y. 2006) (dismissing RICO claim predicated on mail fraud where in "the section entitled, 'Mail Fraud,' the words 'mail fraud' [were] used, but the substance of the paragraph ma[de]no reference to any mailings.").  Without any alleged facts that Green Pampas mailed something to further the scheme, the mail fraud claim must be dismissed. *See Cofacredit*, 187 F.3d at 243.

Similarly, plaintiffs fail to allege any interstate communications by Green Pampas (Am. Compl. ¶¶ 4.0-5.2, 17.5) or how any acts of wire fraud furthered the alleged fraud scheme, rendering their allegations of wire fraud insufficient as RICO predicates.

13

### 2.   The plaintiffs fail to meet the statutory requirements for alleging bank fraud.

The plaintiffs say the defendants committed financial institution fraud under 18 U.S.C. § 1344. (Am. Compl. ¶ 9.5.) To support this claim, they must allege that Green Pampas: "(1) engaged in a course of conduct designed to deceive a federally chartered or insured financial institution into releasing property; and (2) possessed an intent to victimize the institution by exposing it to actual or potential loss." 18 U.S.C. § 1344. Plaintiffs fail to allege anything about a bank fraud. In fact, plaintiffs do not even bother to allege that Green Pampas caused any federally chartered or insured financial institution to release any property. Liability under § 1344 does not attach when a party other than a federally-insured institution was defrauded. *Vargas v. Choice Health Leasing*, No. 09-Civ-8264, 2011 WL 1758619 (S.D.N.Y. May 9, 2011) (Cote, J.) (citing *United States v. Laljie*, 184 F.3d 180, 189-90 (2d Cir. 1999)). Not only do the plaintiffs fail to allege that a banking institution was defrauded, but they also fail to allege that Green Pampas had the intent to victimize any financial institution by exposing it to any actual or potential loss. Accordingly, the predicate act of bank fraud should be dismissed.

### 3.   The plaintiffs fail to allege the illegal transmission of money.

Plaintiffs' allegations cannot sustain an illegal-transmission-of-money claim. (Am. Compl. ¶9.5.) Under §1960, the plaintiffs must allege that Green Pampas (1) knowingly conducted, controlled, managed, supervised, directed or owned (2) a money-transmitting business that (3) affected interstate or foreign commerce, and (4) was not in compliance with applicable licensing requirement under either state or federal law. *United States v. Mazz-Alaluf*, 607 F. Supp. 2d 484, 489 (S.D.N.Y. 2009) (Castel, J.). As with the other predicate acts, plaintiffs utterly fail to make the necessary allegations. The Amended Complaint lacks specific examples

of money transfers or any other acts that allegedly violate the statute. Therefore, once again, plaintiffs' allegation of the illegal money transmission cannot serve as a RICO predicate.

### iv.    The plaintiffs fail to plead mail, wire, and bank fraud with the particularity required by Rule 9(b).

The plaintiffs' allegations are not sufficiently particular under Rule 9(b), which requires that the plaintiff "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Specificity concerns about fraud allegations "are even more immediate in civil RICO actions, because such suits 'implicate the reputation interests of defendants accused of committing racketeering offenses.'" *Atl. Gypsum Co. v. Lloyds Int'l Corp.*, 753 F. Supp. 505, 512 (S.D.N.Y. 1990) (Mukasey, J.). For predicate fraud acts, the Amended Complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). The fraud allegations must be particularized as to each defendant. *Lou v. Belzberg*, 728 F. Supp. 1010, 1022 (S.D.N.Y. 1990) (Sweet, J.).

Here, the plaintiffs' utterly fail to meet these standards. The fraud allegations in the Amended Complaint are vague, broad, unsubstantiated and wholly inadequate. The plaintiffs merely allege that Green Pampas "committed predicate offenses . . . to wit, numerous counts of bank fraud . . . mail fraud . . .[and] wire fraud[.]" (Am. Compl. ¶ 9.5.) The plaintiffs' allegations in the RICO Statement (*Id.* ¶ 17.5) are similarly vague. The plaintiffs fail to allege that Green Pampas had the requisite fraudulent intent or used the mail or wires to further an alleged fraud scheme. Moreover, the Amended Complaint alleges no specificity about Green Pampas' two supposed predicate acts. *See DeFalco*, 244 F.3d at 306 ("[t]he focus of section (c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities

of the members of the enterprise . . . .").  Because the Amended Complaint lacks any specificity about Green Pampas' alleged mail, wire and bank fraud, this Court ought to dismiss.

### B.    The RICO conspiracy claim must be dismissed.

This Court should dismiss the civil conspiracy under 18 U.S.C. § 1962(d) for the same reasons that it should dismiss the underlying RICO claim. Section 1962(d) provides "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). To prove the conspiracy claim, the plaintiffs must prove an agreement to violate one of the RICO provisions. The plaintiffs' conspiracy claim is based on a defective RICO claim and, thus, is similarly defective. A RICO conspiracy claim based on a defectively-pleaded RICO claim also fails. *See C.A. Westel de Venezuela v. American Tel. & Tel. Co.*, No. 90-Civ. 6665,1994 WL 558026, *9 (S.D.N.Y. Oct. 11, 1994) (Leisure, J.).

Moreover, the conspiracy allegation is defective in that it is not at all specific. A RICO conspiracy claim must include "specific allegations supporting an inference that each defendant knowingly agreed to participate in a conspiracy." *Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.,* 165 F. Supp. 2d 514, 541 (S.D.N.Y. 2001) (Schwartz, J.). The Amended Complaint alleges only that Green Pampas "also conspired to violate 18 U.S.C. § 1962(a) (*sic*) in violation of 18 U.S.C. § 1962(d)." (Am. Compl. ¶ 9.12.) This allegation is vague and conclusory and fails to support an inference that Green Pampas knowingly agreed to participate in anything. Accordingly, the Court should dismiss the plaintiffs' civil conspiracy claim.

### III.   This Court should dismiss this action because this Court lacks personal jurisdiction over Green Pampas.

The plaintiffs have improperly invoked this Court's power where there is no personal jurisdiction over Green Pampas. Assuming the Court dismisses the RICO claims against Green Pampas for all of the defects noted above, § 1965 nationwide jurisdiction does not save plaintiffs. And, if

this Court dismisses the federal claims, it should decline to exercise supplemental jurisdiction over the state law claims. In any event, the requisite two-part analysis of Green Pampas's presence in the state should lead the Court to determine that it has no personal jurisdiction over Green Pampas for those state law claims. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). The plaintiffs do not begin to bear their burden of proving that Green Pampas is present in the state to establish this Court's personal jurisdiction over Green Pampas under C.P.L.R. §§ 301 and 302. *Id.*

### A.   This Court lacks personal jurisdiction over Green Pampas under the RICO Statute

Plaintiffs allege that the RICO jurisdiction provision grants this Court personal jurisdiction over Green Pampas. (Am. Compl. ¶ 1.8.) Green Pampas is not subject to this Court's jurisdiction under §1965(a) because it neither resides nor transacts any business in New York. (*See generally* Antoniazzi Decl. ¶¶ 3-11.) Under § 1965(b) a court can exercise nationwide jurisdiction over any defendant, and personal jurisdiction over one RICO defendant allows the court to exercise over the other defendants if the "ends of justice" require it. *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71 (2d Cir. 1998). Courts in the Second Circuit have found that "the ends of justice" refers to cases in which no other district would have personal jurisdiction over all defendants. *Id.* at 71-72.

Because the RICO claims should not survive, this Court should not engage in the "ends of justice" test to exercise national jurisdiction over defendants here, forcing them to litigate in "far-flung fora." *See PT United Can*, 138 F.3d at 72.

### B.   This Court should decline to exercise supplemental jurisdiction over the plaintiffs' state claims against Green Pampas.

If the Court dismisses the RICO claims, this Court should also decline to exercise supplemental jurisdiction over the state law claims. (Am. Compl. ¶¶ 2.0, 5.0-5.2, 7.0-7.4, 10.1-

11.5.) Under § 1367(a), this Court has supplemental jurisdiction over the state claims only because the plaintiffs have alleged federal jurisdiction under federal statutes. 28 U.S.C. § 1367(a). But if the claims over which this Court has original jurisdiction are dismissed, then the Court has discretion to decline jurisdiction over the remaining claims. 28 U.S.C. § 1367(c)(3); *see Elsevier Inc. v. W.H.P.R., Inc*., 692 F. Supp. 2d 297, 315 (S.D.N.Y. 2010).

In determining whether to exercise supplemental jurisdiction, a court should "weigh and balance several factors, including considerations of judicial economy, convenience, and fairness to litigants." *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 145 (2d Cir. 1998) (citing *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994)).When federal claims are dismissed before trial, then state claims should be dismissed as well. *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004). This case has not progressed to that stage that dismissal of the claims would prejudice any party. No discovery has been conducted.  None of the parties have expended substantial time, effort, or money in litigating these claims. *See Id*.  Accordingly, the Court should decline to exercise supplemental jurisdiction.

> **C.      For the state law claims, the plaintiffs have failed
> to provide evidence that Green Pampas is subject
> to personal jurisdiction in New York.**

Green Pampas does not conduct any business in New York and, thus, is not subject to personal jurisdiction under New York law.

> ***i.***      **This Court lacks general jurisdiction over
> Green Pampas because it is not doing business
> in New York  under C.P.L.R. § 301.**

A New York court has general jurisdiction over a foreign defendant under C.P.L.R. § 301 if the defendant is engaged in such a continuous and systematic course of 'doing business' in

New York as to warrant a finding of its presence in the state. *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 646 (S.D.N.Y. 2008) (Sweet, J). The facts must demonstrate that the defendant's business is conducted in New York with a "fair measure of permanence and continuity." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (citations omitted). New York courts apply this test stringently because a corporation found to fall within the general jurisdiction of New York "may be sued in New York on causes of action wholly unrelated to acts done in New York." *Jacobs v. Felix Block ErbenVerlag Fur Buhne Film Und Funk KG*, 160 F. Supp. 2d 722, 731 (S.D.N.Y. 2001) (Sand, J.) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir. 2001)).

In deciding whether a foreign corporation is doing business in New York, courts examine several factors, including: (1) whether the foreign corporation has an office in New York; (2) whether it has any bank accounts or any other property in New York; (3) whether the corporation has any employees in New York; (4) whether it has solicited any business in New York; and (5) whether the corporation has a phone number in New York. *See Wiwa*, 226 F.3d at 98. No single factor is determinative; instead, the courts look at the totality of the circumstances to determine whether a corporation should be deemed to be doing business in New York.

Under the totality of the circumstances, Green Pampas does not conduct business in New York with the permanence or regularity to warrant this Court's exercising general jurisdiction under C.P.L.R. § 301. Green Pampas has no offices or employees in New York. (Antoniazzi Decl. ¶¶ 3, 6), has never conducted any business activities here (*Id.* ¶ 10), has no bank accounts in New York (*Id.* ¶ 6), and does not own any real or personal property in New York. (*Id.* ¶ 4.) All of Green Pampas's revenue is derived from customers outside of New York. (*Id.*, ¶ 8.) It has not solicited any business from any New York residents. (*Id.* ¶ 7.) It does not generate revenue

from any sources in New York. (*Id.* ¶ 8.) Based on these facts, this Court lacks personal

jurisdiction over Green Pampas pursuant to C.P.L.R. § 301.

### ii.   This Court lacks specific jurisdiction over Green Pampas under C.P.L.R. § 302.

This Court should not exercise specific jurisdiction over Green Pampas under C.P.L.R. §

302.  Section 302 provides that a court may exercise specific jurisdiction over a defendant if the

defendant (1) transacts any business within the state or contracts to supply goods or services in

New York, (2) commits a tortious act within New York, (3) commits a tortious act that causes

injury to a person or property in the state, or (4) owns, uses, or possesses any real property

situated within the state. *See* C.P.L.R. § 302(a) 1-4.  At the crux of the inquiry is whether the

cause of action arises out of alleged New York transactions or activity.  *PaineWebber Inc. v.*

*Westgate Group, Inc.*, 748 F. Supp. 115, 119 (S.D.N.Y. 1990) (Sweet, J.).  The plaintiffs cannot

establish any of these requirements for specific jurisdiction.

Jurisdiction under §302(a)(1) fails because plaintiffs do not allege any business activity

by Green Pampas within New York.  As noted above, Green Pampas has neither transacted any

business in this state, nor contracted to supply goods or services here. (Antoniazzi Decl. ¶¶ 5,

10.) Similarly, this Court does not have jurisdiction over Green Pampas under § 302(a)(2), which

grants jurisdiction over a foreign defendant if it commits a tortious act in New York.  C.P.L.R. §

302(a)(2).  Courts construe this requirement strictly.  *Ziegler, Ziegler & Associates LLP v. China*

*Digital Media Corp.*, No. 05-cv-4960, 2010 WL 2835567, *6 -7 (S.D.N.Y. July 13, 2010)

(Preska, C.J.). Green Pampas is not physically present in New York  (Antoniazzi Decl., ¶¶ 2, 4,

6, 10, 11), and plaintiffs have not alleged that Green Pampas committed a tort while in New

York.  Green Pampas is not subject to specific jurisdiction under C.P.L.R. § 302(a)(1) or (2).

Nor do the facts in this case support finding personal jurisdiction over Green Pampas under sections 302(a)(3) or (4).  Under C.P.L.R. § 302(a)(3), a court has jurisdiction if the defendant committed a tortious act that causes injury to person or property in the state. The plaintiffs fail to allege any injury to a person or property in New York, but rather allege only injury to Peruvian and Paraguayan corporations. (Am. Compl. ¶¶ 1.1, 1.2, 4.14, 5.1.)  Finally, C.P.L.R. § 302(a)(4) grants jurisdiction as to a claim arising out of the ownership, use, or possession of real property in New York.  Green Pampas does not own, use or possess any real property in New York (Antoniazzi Decl. ¶¶ 2, 4, 6), and the plaintiffs' Amended Complaint has nothing to do with real property located in New York.  Sections 302(a)(3) and 302(a)(4) do not provide a basis for specific jurisdiction over Green Pampas.

### iii.   The exercise of jurisdiction over Green Pampas would be inconsistent with federal due process requirements.

Since New York law does not confer general or specific jurisdiction over Green Pampas, this Court is not required to undertake a separate analysis to determine whether the exercise of jurisdiction violates due process.  *See Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997) (If New York law does not confer personal jurisdiction, then this court does "not address the issue of due process.").

Nevertheless, the constitutional due process requirement for personal jurisdiction is not satisfied here.  To determine whether it is appropriate to exercise jurisdiction over a foreign defendant, the court must engage in a two-part analysis:  "the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). Under the first inquiry, the court determines whether a defendant has sufficient minimum contacts with the forum that it would not "offend traditional notions of fair play and substantial justice" to maintain an action against the defendant in the forum. *Frontera Resources*

*Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 396 (2d Cir. 2009). If the court decides the defendant has sufficient minimum contacts, then the court must determine whether it would be reasonable to exercise jurisdiction over the defendant. *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 445 (S.D.N.Y. 2008) (McMahon, J.). In evaluating reasonableness, the court should focus on the following factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Maersk,* 554 F. Supp. 2d at 445 (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)).

The plaintiffs do not, and cannot, allege that Green Pampas has sufficient contacts to be subject to jurisdiction in New York. Green Pampas is not a New York company, and it does not conduct any continuous and systematic business in or affecting New York. (*See generally* Antoniazzi Decl. ¶¶ 3-11.) Without the requisite minimum contacts, the exercise of jurisdiction is not warranted and, thus, would violate due process.

This Court lacks personal jurisdiction for the New York state claims against Green Pampas both under New York's jurisdictional statutes C.P.L.R. §§ 301 and 302 and under federal due process requirements. Accordingly, this Court should dismiss the Amended Complaint as to Green Pampas for lack of personal jurisdiction.

      **D.**    **The plaintiffs' fraud and fraudulent inducement claims fail for lack of facial plausibility as to Green Pampas and lack of particularity under Rule 9(b).**

The plaintiffs allege that the Green Pampas perpetrated a fraud on the defendants and fraudulently induced the defendants to enter into a contract. (Am. Compl.¶¶ 7.3, 11.2.)  The plaintiffs make conclusory allegations about the defendants' conduct without differentiating as to

the conduct of any of them or pleading with the required specificity Green Pampas's alleged actions.  There are no allegations whatsoever that Green Pampas made any representations about issuing any letter of credit or that Green Pampas was at all involved in issuing any letters of credit.  Rather, Green Pampas is alleged only to have failed to perform its contractual obligation to provide urea to Plastitex. (*Id.* ¶¶ 4.20, 5.2.)[10]  The plaintiffs have failed to plead fact content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal,* 129 S.Ct. at 1949.

In New York law, the elements for fraudulent inducement are: (1) the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely on it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury. *Eaves v. Designs for Finance, Inc.*, 785 F. Supp. 2d 229, 246 (S.D.N.Y. 2011) (Seibel, J.) (citations omitted). To sustain a fraud claim, the plaintiffs must allege that (1) the defendant made a material false representation, (2) the defendant intended to deceive the plaintiff thereby, (3) the plaintiff reasonable relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance. *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415-16 (2d Cir. 2006).

The circumstance surrounding any fraud alleged must be pleaded with particularity about the statements, speakers, and an explanation as to why the statements were fraudulent.  *See Eaves,* 785 F. Supp. 2d at 247 (citations omitted). Moreover, when the fraud is alleged against multiple defendants, the complaint must specify the role of each actor. The plaintiffs fail to meet

---

[10] The plaintiffs' claims against Green Pampas for fraud and fraudulent inducement arise out of the same facts as the breach of contract claim against Green Pampas. (See Am. Compl.¶ 5.2). In New York, a plaintiff may not turn a breach of contract claim into a tort by alleging that the defendant did not intend to meet its contractual obligations. *See e.g., Sudul v. Computer Outsourcing Services*, 868 F. Sup.59, 61-62 (S.D.N.Y. 1994).  Under New York law, the plaintiffs cannot recover under a fraud theory unless there is a legal duty other than the duty under the contract. *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). For these reasons alone, this Court should dismiss the plaintiffs' fraud claims.

these strict pleading requirements by lumping all of the defendants together in vague collective fraud allegations. *See Eaves*, 785 F. Supp. 2d at 246. And the fraudulent inducement claim fails because the plaintiffs do not allege any scienter facts. The plaintiffs must show scienter by alleging that the statements were known to be false and were intended to be relied on when made. *Amida Capital Mgmt. II, LLC v. Cerberus Capital Mgmt., L.P.*, 669 F. Supp. 2d 430, 444 (S.D.N.Y. 2009) (Stein, J.) (citation omitted). The Amended Complaint is silent about Green Pampas's intent. Instead, the plaintiffs make a boilerplate allegation that the defendants knowingly made false and misleading representations. (Am. Compl. ¶ 11.2.) This allegation is so broad that it is meaningless and ripe for dismissal. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d at 1129 (citations omitted). The fraud and fraudulent inducement claims should be dismissed.

> **E.    The deceptive trade practices claim should be dismissed against Green Pampas because the claim arises out of a private commercial relationship between sophisticated corporate entities, and the alleged conduct does not affect New York's public interest.**

New York General Business Law § 349 is a consumer-protection device prohibiting "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state [.]" N.Y. Gen. Bus. Law § 349(a). Under the Act, "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages . . . or both such actions." *Id.* at § 349(h). The plaintiffs must allege that (1) defendants engaged in deceptive and unfair acts (2) that affected the public.  "Conduct is considered 'consumer oriented' if it has 'a broader impact on consumers at large.'" *Crab House of Douglaston,* 801 F. Supp. 2d 64, 91 (E.D.N.Y. 2011) (citing *Gaidon v. Guardian Life Ins. Co.*, 725 N.E.2d 598, 604 (N.Y. 1999)). "[C]onsumer injury or harm to the public interest" is a must. *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995). The statute does not reach

private contract disputes unique to the parties. *Eaves*, 785 F. Supp. 2d at 266; *Oswego Laborers'*
*Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995).

The plaintiffs' § 349 claims are meritless. As with the fraudulent inducement claim, the
defendants lump all of the defendants together into one conclusory allegation that "they" were to
provide letters of credit. (Am. Compl. ¶ 10.2.) First, this allegation lacks facial plausibility as to
Green Pampas, which made no representations about letters of credit and did not issue letters of
credit. Second, the plaintiffs are both businesses, and neither is a general consumer covered by
the statute. Third, the parties were engaged in private transaction unique to them—a commercial
purchase of urea--activity not covered by the statute. Fourth, Green Pampas' alleged misconduct
is not directed towards the general public of New York, so that the transaction does not fall with
the protections of the statute. Accordingly, this claim should be dismissed.

## CONCLUSION

On their second try, with notice of Green Pampas' objections in a thorough motion to
dismiss, plaintiffs repeat their sterile claims. They again wrongly invoke this Court's power
where the Agreement calls for arbitration. They again make a hash of their RICO pleadings,
failing to allege the elements well-established in the law. They again allege New York state law
in the face of evidence that Green Pampas is not found in New York and does no business here.
And they once again allege fraud with no particularity, and New York deceptive trade practices
for transactions plainly not meant to be covered by that statute. Plaintiffs' amendment is
woefully inadequate, and for this reason must be dismissed. More to the point, plaintiffs simply
cannot state their claims, and for this reason, the Court should dismiss with prejudice. For the
ample reasons stated here, Green Pampas respectfully requests that this Court grant its motion to
dismiss the Amended Complaint with prejudice.

Date: January 30, 2012

Respectfully Submitted,

/s/ Jorge A. Mestre
Jorge A. Mestre
SDNY Bar No.JM4977
Andrés Rivero (admitted *Pro hac vice*)
RIVERO MESTRE LLP
2525 Ponce de Leon Blvd, Suite 1000
Miami, Florida 33134
Phone Number: 305-445-2500
Fax Number:  305-445-2505
Email:  arivero@riveromestre.com

Attorneys for Green Pampas, Inc.

26

## CERTIFICATE OF SERVICE

I certify that on January 30, 2012, this memorandum was served by CM/ECF to the counsel of record in this action.

<u>/s/ Jorge A. Mestre</u>
Jorge A. Mestre