UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                           :
CONTINENTAL PETROLEUM CORPORATION, INC.,    :
and PLASTITEX, S.A.,                                       :
                                                           :
                                    Plaintiffs,            :         11 Civ. 7801 (PAE)
                      -v-                                   :
                                                           :         OPINION & ORDER
CORPORATION FUNDING PARTNERS, LLC, PABLO    :
ANTONIAZZI, CAREN RAPHAEL, JOSEPH LAU, and  :
GREEN PAMPAS, INC.,                                        :
                                                           :
                                    Defendants.            :
                                                           :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        Continental Petroleum Corporation, Inc. and Plastitex, S.A. (collectively, "plaintiffs"),

bring this claim against Corporate Funding Partners, LLC ("CFP"), Green Pampas, Inc. ("Green

Pampas"), Pablo Antoniazzi, Caren Raphael, and Joseph Lau (collectively, "defendants") under

sections 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act of 1970, 18

U.S.C. § 1961 ("RICO"), and under New York law.  Defendants move to dismiss plaintiffs'

claims under Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, defendants'

motion is granted in full as to Green Pampas, Antoniazzi, Raphael, and Lau, and granted in part

and denied in part as to CFP.  As to the only claims that have not been dismissed—plaintiffs'

contract claims against CFP—plaintiffs are directed to submit a memorandum of law by April

30, 2012 explaining why diversity jurisdiction has been adequately pleaded.

## I.      **Background**[1]

Plaintiff Continental Petroleum Corporation, Inc. ("Continental") is a foreign corporation, organized under the laws of Peru.  Plaintiff Plastitex, S.A. ("Plastitex") is a foreign corporation, organized under the laws of Paraguay.

As to defendants, CFP is a limited liability corporation, incorporated under the laws of New York with its principal place of business in New York.  Green Pampas is a Delaware corporation with its principal place of business in Florida.  Lau and Raphael are corporate officers of CFP.  Antoniazzi was an employee of CFP and a corporate representative of Green Pampas during the relevant time period.

On April 11, 2008, Continental entered into an agreement to buy a quantity of urea, an organic compound, from a non-party company.  The agreement required a letter of credit for the transaction, embodying the following terms: "Terms of payment irrevocable, confirmed, transferable, at the sight 100% payable documentary letter of credit top 25/50 world bank."  Am. Compl. ¶ 4.4 (Dkt. 19).

In April 2008, Plastitex entered into an agreement to purchase a quantity of urea with a separate non-party company.  That agreement also required a confirmed letter of credit with a top 25 world bank.  *See* Am. Compl. ¶ 4.16.[2]  The Court refers to the Continental and Plastitex agreements as the "urea purchase agreements."

---

[1] The following account of the underlying facts of this case is drawn from the Amended Complaint, the exhibits thereto, and the documents referenced therein.  On this motion to dismiss, the Court takes all facts pleaded in the Amended Complaint as accurate.  Except where specifically referenced, no further citation to the Amended Complaint will be made.  Because the exhibits to the Amended Complaint are not consecutively paginated, the Court refers to such documents by bates number.

[2] Although the Amended Complaint refers to Continental's and Plastitex's respective April 2008 agreements, it does not attach either of them.

Continental and Plastitex each approached CFP to secure letters of credit to fund their respective transactions.  Defendant Antoniazzi, CFP's South American representative, was CFP's designated representative as to both transactions.

In order to enable it to issue the requested letters of credit, CFP required that Continental and Plastitex each complete several forms provided by CFP, and attach certain documents, including, *inter alia*, the underlying urea purchase agreements.  CFP also required each company to pay certain fees for the issuance of letters of credit.  Continental and Plastitex provided CFP with all necessary forms, including the urea purchase agreements, which set out the standards to which letters of credit were required to conform.  Each also paid the required fees.

In May 2008, the non-party urea suppliers in both transactions rejected the letters of credit issued by CFP.  Plaintiffs assert that the suppliers rejected CFP's letters of credit because these letters did not conform to the credit standards set out in the underlying urea purchase agreements, in that neither letter of credit had been confirmed by a bank in the United States.  Because the letters of credit had been rejected, the suppliers did not deliver urea to Continental or Plastitex.

After the letters of credit had been rejected by the two suppliers, Antoniazzi proposed a solution:  He separately told Continental and Plastitex that he could connect each company to a urea supplier that would accept a letter of credit consistent with the letters of credit that CFP had issued.  In June 2008, after Antoniazzi had represented that he was then doing business with non-party Trifecta Trading, both Continental and Plastitex separately entered into agreements with Trifecta Trading to purchase urea from it.  Pursuant to these agreements, each plaintiff paid all

required fees to CFP, and CFP issued each a corresponding letter of credit.[3]  In July 2008,

Trifecta Trading represented that it had accepted the letters of credit issued by CFP.  In later

communications, however, Trifecta Trading informed both Continental and Plastitex that it

would not accept the letters of credit.  Trifecta Trading never delivered urea to either Continental

or Plastitex.

After Trifecta Trading had failed to deliver the urea as provided in its contracts with

Continental and Plastitex, Antoniazzi suggested that another company, Green Pampas, could

serve as a source of urea.  However, Continental declined to do business with Green Pampas.

On January 20, 2009, Plastitex entered into an agreement with Green Pampas for the sale

of urea (the "Green Pampas Agreement").  Paragraph 12 of the Green Pampas Agreement,

entitled "Disputes and Arbitration," states:

> If any dispute arises, the two parties agree to try their utmost to solve it by
> friendly negotiation. If the dispute proves impossible to settle, all disputes arising
> out of or in connection with the present contract shall be finally settled under the
> Rules of Arbitration of The International Chamber of Commerce. The disputed
> matter will be subject to Arbitration by an Arbitrator in Paris, France under ICC
> Rules and Regulations. The losing party will pay the Arbitration fee. It is
> understood that in the event of dispute or arbitration, English shall prevail. The
> award of the Arbitrator shall be final and binding for both parties.

Am. Compl. Ex. at Plas-60.  After entering into the agreement, Plastitex paid CFP the fee

required under the contract for the issuance of a letter of credit.  Green Pampas, however, never

delivered urea to Plastitex pursuant to the Agreement.

On November 1, 2011, Continental and Plastitex filed the Complaint in this action; on

January 30, 2012, they filed an Amended Complaint, bringing claims against the defendants

under the RICO statute and New York law.  On January 30, 2012, Green Pampas filed a motion

---

[3] The contract between Plastitex and Trifecta Trading provided that "Payment shall be made by
Irrevocable and Transferable (divisible) Documentary Letter of Credit, payable 100% at sight
upon presentation of relevant shipping documents."  Am. Compl. Ex. at Plas-27.

to dismiss.  On February 7, 2012, CFP and Raphael filed a motion to dismiss.  On March 9, 2012, Lau filed a motion to dismiss.  On March 9, 2012, the Court granted Antoniazzi's request to extend his time to answer the Amended Complaint until after Green Pampas's motion to dismiss had been resolved.

## II.     Applicable Legal Standards

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To survive a motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face."  *Id.*  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  To satisfy this standard, plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully."  *Iqbal*, 129 S. Ct. at 1949.  Where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.  Although on a motion to dismiss the Court must accept as true all well-pleaded factual allegations in the complaint, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.

As to claims alleging fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard.  Such claims must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), "a complaint must 'allege facts that give rise to a strong inference of fraudulent intent.'"  *Berman v. Morgan Keenan & Co.*, No. 11-2725-cv,

2012 WL 147907, at *2 (2d Cir. Jan. 19, 2012) (slip op.) (quoting *Acito v. IMCERA Group, Inc.*,

47 F.3d 47, 52 (2d Cir. 1995)).  Specifically, "the complaint must: (1) specify the statements that

the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet

Bank, N.A.*, 459 F.3d 273, 292–93 (2d Cir. 2006) (internal quotation marks omitted).

## III.    Discussion

The Amended Complaint contains the following claims: (1) a breach of contract claim by

Plastitex against Green Pampas and CFP; (2) a breach of contract claim by Continental against

CFP; (3) a fraud claim by Plastitex against all defendants; (4) a fraud claim by Continental

against CFP, Antoniazzi, Lau, and Raphael; (5) a RICO claim by both plaintiffs against all

defendants; (6) a deceptive practices claim by both plaintiffs against all defendants; and (7) a

fraud in the inducement claim by both plaintiffs against all defendants.  Sorted by movant, Green

Pampas is named in Plastitex's breach of contract and fraud claims, and in plaintiffs' RICO,

deceptive practices, and fraud in the inducement claims; Raphael and Lau are named in

plaintiffs' fraud, RICO, deceptive practices, and fraud in the inducement claims; and CFP is

named in all claims.

Green Pampas moves to dismiss on three grounds: (1) for failure to state a claim as to the

RICO claims; (2) for lack of personal jurisdiction; and (3) based on the Green Pampas

Agreement's mandatory arbitration clause.  CFP, Raphael, and Lau move to dismiss on three

grounds: (1) for failure to state a claim as to RICO; (2) for failure to state a claim as to plaintiffs'

causes of action under New York law; and (3) for failure to allege personal involvement of the

particular defendants.

[6]

As a threshold matter, the Court must determine whether it may properly exercise personal jurisdiction over each defendant.  Although CFP, Raphael, and Lau do not challenge personal jurisdiction, Green Pampas does.  Plaintiffs' basis for asserting personal jurisdiction with respect to Green Pampas is solely 18 U.S.C. § 1965(b), which allows for nationwide service of process with respect to claims properly brought under the civil RICO statute, 18 U.S.C. § 1964, where "the ends of justice require that other parties residing in any other district be brought before the court."  Plaintiffs acknowledge that Green Pampas and its agent Antoniazzi are not located in New York, and do not identify any other basis for the Court to assert personal jurisdiction over them.  *See* Am. Compl. ¶ 1.9 ("[a]bsent the RICO provisions this matter would be parceled out and not heard in one forum").  Therefore, to determine whether there is personal jurisdiction over Green Pampas, the Court must first determine whether plaintiffs have stated a claim against Green Pampas under RICO; if not, the Court lacks personal jurisdiction over Green Pampas.  The Court also addresses the RICO claim first because all moving defendants argue that plaintiffs fail to state a RICO claim.

### A.  RICO

Plaintiffs allege that defendants violated both 18 U.S.C. §§ 1962(c) and (d).  Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate in the conduct of such enterprise's affairs through a pattern of racketeering activity."  To state a claim under § 1962(c), a plaintiff must, therefore, separately allege (1) the conduct of an enterprise (2) through a pattern (3) of racketeering activity.  *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999); *see also Peterson v. City of New York*, No. 11-cv-3141, 2012 WL 75029, at *3 (S.D.N.Y. Jan. 9, 2012) (slip op.) (citing *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  To state a RICO claim pursuant to §

[7]

1962(d), a plaintiff must allege a conspiracy to commit a substantive RICO violation pursuant to § 1962(a), (b), or (c).

Where, as here, the predicate acts on which a RICO claim is based sound in fraud, those acts must be pleaded in conformity with Rule 9(b)'s heightened pleading standard. *Lerner*, 459 F.3d at 292–93.  In addition, close scrutiny of RICO claims based on fraud is merited because "virtually every ordinary fraud is carried out in some form by means of mail or wire communication," and thus there is "the potential for transforming garden-variety common law actions into federal cases." *Gross v. Waywell*, 628 F. Supp. 2d 475, 493 (S.D.N.Y. 2009); *see also id.* at 493 (noting "the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it") (citation omitted); *Grimes v. Fremont General Corp.*, 785 F. Supp. 2d 269, 299 (S.D.N.Y. 2011) (in "civil RICO claims, a court must be mindful of the devastating effect such claims may have on defendants," and "should look with particular scrutiny at [these] claims to ensure that the RICO statute is used for the purposes intended by Congress") (internal quotation marks omitted); *Allen ex rel. Allen v. Devine*, 726 F. Supp. 2d 240, 248 (E.D.N.Y. 2010) (citation omitted) ("the [RICO] statute was intended to bring only the most serious, broad-based frauds into the federal courts").  The Second Circuit has admonished district courts to "take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997).

Defendants argue that plaintiffs' § 1962(c) RICO claim fails as a matter of law because plaintiffs fail to demonstrate either (1) an enterprise or (2) a pattern of racketeering activity.  For the reasons that follow, the Court agrees.

## 1.  Section 1962(c)

### a.  Enterprise

A RICO "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4); *see also United States v. Turkette*, 452 U.S. 576, 583 (1981).  Plaintiffs characterize the RICO enterprise as consisting of an "association-in-fact" among the named and other unnamed "players or parties."  Am. Compl. ¶ 17.2.

To determine whether a group of individuals or entities constitutes an association-in-fact within the meaning of the RICO statute, courts in this Circuit analyze the "hierarchy, organization, and activities" of the alleged association to determine whether "its members functioned as a unit."  *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 174–75 (2d Cir. 2004).  To establish an association-in-fact enterprise, plaintiffs must demonstrate "three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle v. United States*, 129 S. Ct. 2237, 2244 (2009).  A plaintiff's "conclusory naming of a string of entities does not adequately allege an enterprise."  *First Capital*, 385 F.3d at 175 (citation omitted).

Here, the Amended Complaint alleges that CFP "seems to be at the head of the hierarchy" and was used as the "vehicle of the enterprise"; it alleges that CFP's responsibilities included "hooking in new alleged customers who would fall prey to their scheme."  Am. Compl. ¶ 17.2.  Raphael is alleged to have been responsible for oversight of the letters of credit and ensuring that the letters of credit issued "would *not in fact comply* with the terms of the underlying transactions."  *Id.* (emphasis added).  Lau is alleged to have "represented to both

Plaintiffs that the letters of credit issued would conform to the transactional documents . . . .

[while] knowing that the letter of credit issued would not conform to the requirements of the

transaction." *Id.* Antoniazzi is alleged to have arranged for the initial failure of the letters of

credit and facilitating the fraudulent transactions. Green Pampas is alleged to be a "straw

purchaser." *Id.*

These sparse (and as to CFP, openly tentative) allegations fall far short of alleging that

defendants collectively functioned an association-in-fact sufficient to constitute a RICO

enterprise. Plaintiffs are correct that the Supreme Court, in *Boyle*, has rejected the notion that,

under RICO, "the existence of an enterprise may never be inferred from the evidence showing

that persons associated with the enterprise engaged in a pattern of racketeering activity." 129 S.

Ct. at 2245; *cf. Eaves v. Designs for Finance, Inc.*, 785 F. Supp. 2d 229, 263 (S.D.N.Y. 2011).

However, *Boyle* does not change the settled understanding—on the contrary, it reinforces—that

the "concept" of association "requires both interpersonal relationships and a common interest,"

and that in order to be found an association-in-fact, a "group must function as a continuing unit."

*Id.* at 2243 (citing Webster's Third New International Dictionary 132 (1976)); *id.* at 2245.

Here, plaintiffs provide merely conclusory allegations to this effect. They fail to make

any concrete factual assertions as to the mechanics of the interactions among defendants,

including facts indicating that the disparate defendants functioned as a unit, or supporting the

inference that defendants had a common interest in the success of the so-called enterprise.

Plaintiffs instead merely set out, sparsely, the allegations above relating to the collapse of each of

the successive urea purchase agreements, with scant (and only conclusory) attention to the

enterprise element necessary to knit the separate wrongs relating to these agreements into a

cognizable RICO violation. For example, although the Amended Complaint avers generally that

[10]

defendants each "derive income from these activities," it does not support this claim with any factual allegation; on the contrary, on this point, the Amended Complaint is openly based on speculation, in that it states that Lau and Raphael's salaries are "possibly" derived from RICO violations. Am. Compl. ¶ 17.9.  The Amended Complaint's failure to plead with any specificity as to the nature of the defendants' common interests and the mechanics of the alleged ongoing working relationship among defendants is fatal.  It fails to satisfy the well-established pleading standards as to an enterprise comprised of an association-in-fact.  *See, e.g.*, *101 McMurray, LLC v. Porter*, No. 10-cv-9037, 2012 WL 997001, at *7 (S.D.N.Y. Mar. 26, 2012) (dismissing RICO claim for failure to establish association-in-fact where plaintiffs failed to demonstrate that "members functioned as a unit"); *Eaves*, 785 F. Supp. 2d at 263 (dismissing RICO claim for failure to establish association-in-fact where plaintiffs "fail to allege any details regarding the hierarchy or organization of the alleged enterprise, or to advance any facts suggesting that the constituent members of the alleged enterprise functioned as a unit"); *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 539 (S.D.N.Y. 2001) (dismissing RICO claim where plaintiff "failed to present specific details of any hierarchy, organization, or unity among the various alleged conspirators") (internal quotation marks omitted).

Furthermore, because the acts of the defendants on which the Amended Complaint relies in order to demonstrate membership in the so-called association-in-fact are the same facts offered to establish the underlying pattern of racketeering activity, and because the racketeering activity alleged here entails allegations of fraud, the heightened pleading standard of Rule 9(b) applies.  *See Lerner*, 459 F.3d at 292–93; *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999); *Plount v. Am. Home Assurance Co.*, 668 F. Supp. 204, 206 (S.D.N.Y. 1987) ("[A]ll of the concerns that dictate that fraud be pleaded with particularity exist with even greater

urgency in civil RICO actions.").  As discussed *infra*, the Amended Complaint fails to satisfy

Rule 9(b) because it fails to specify the statements it contends were fraudulent, to identify the

individuals who allegedly made such statements, to describe the circumstances under which the

allegedly fraudulent statements were made, or to explain why the statements were fraudulent.

For this independent reason, the Amended Complaint fails to adequately plead an association-in-

fact.

 In sum, because it fails to plead facts sufficient to show that defendants functioned in fact

as a continuing unit, the Amended Complaint fails to plead adequately the essential enterprise

element of plaintiffs' RICO claims.

### b.  Pattern

 An independent basis for dismissal is the failure of the Amended Complaint to plead

adequately a pattern of racketeering activity.  Under RICO, a "pattern of racketeering activity"

requires the commission of at least two predicate offenses within 10 years of one another.  18

U.S.C. § 1961(5).  To satisfy this standard, a plaintiff "must allege either an open-ended pattern

of racketeering activity (*i.e.*, past criminal conduct coupled with an adequately pled threat of

future criminal conduct) or a closed-ended pattern of racketeering activity (*i.e.*, past criminal

conduct extending over a substantial period of time)."  *First Capital*, 385 F.3d at 181 (internal

quotation marks omitted).

 "To satisfy open-ended continuity, the plaintiff need not show that the predicates

extended over a substantial period of time but must show that there was a threat of continuing

criminal activity beyond the period during which the predicate acts were performed."

*Cofacredit*, 187 F.3d at 242.  Here, plaintiffs fail to adequately allege a threat of continuing

criminal activity.  Their only allegation bearing on the likelihood of continuing violations is a

single, conclusory statement, uncorroborated by any alleged facts.  *See* Am. Compl. ¶ 9.14

("Defendant's deceptive practices are likely to continue to deceive thousands of persons via the

internet who will also be injured thereby.").  This statement alone is insufficient to allege an

open-ended pattern of racketeering activity.

   To satisfy a closed-ended pattern of racketeering activity, a plaintiff must demonstrate

that the "activity involves predicate acts extending over a substantial period of time."  *First

Capital*, 385 F.3d at 181 (internal quotation marks omitted).  The Second Circuit has noted that,

since the decision in *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989), it "has

never found a closed-ended pattern where the predicate acts spanned fewer than two years," and

that although two years is "the *minimum* duration necessary to find closed-ended continuity,"

that fact alone would be "insufficient, without more, to support a finding of a closed-ended

pattern."  *Id.*

   Here, plaintiffs allege that defendants' pattern of racketeering activity consisted of

"numerous counts" of bank fraud, mail fraud, and wire fraud in violation of § 1961(1)(B).  Am.

Compl. ¶ 9.5.  However, these alleged illegal acts (even if each were adequately pleaded, which

they are not) do not together establish a closed-ended pattern of continuity, because these acts

occurred within too narrow a time frame.  At most, plaintiffs allege three predicate illegal acts by

defendants:  The letters of credit issued in May 2008 to satisfy the initial urea purchase

transactions; the letters of credit issued in July 2008 to satisfy the agreement with Trifecta

Trading; and the letter of credit issued in January 2009 to satisfy Plastitex's agreement with

Green Pampas.  These acts, even if pleaded with sufficient specificity, span only nine months.

Together, they fall far short of the two-year minimum requirement prescribed by the Second

Circuit.  *See, e.g.*, *First Capital*, 385 F.3d at 181 (finding that a seven-month period did not

"extend over a sufficiently long period of time to satisfy the requirements of closed-ended continuity"); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) (finding a 16-month period insufficient for closed-end continuity, especially where plaintiff did not allege large numbers of participants or victims); *Westgate Financial Corp. v. Beinoni of N.Y. Inc.*, No. 10-cv-8102, 2012 WL 219334, at *3 (S.D.N.Y. Jan. 25, 2012) (finding a one-year period insufficient); *Grimes*, 785 F. Supp. 2d at 301 ("Plaintiffs have not sufficiently alleged close-ended continuity, because they have not adequately pled predicate acts over a period of at least two years."); *Purchase Real Estate Grp., Inc. v. Jones*, No. 05-cv-10859, 2010 WL 3377504, at *10 (S.D.N.Y. Aug. 24, 2010) (finding 22 acts of mail and wire fraud over a 2.5-year-period insufficient where plaintiffs "offer little information about the substance of the mail and wire fraud acts"); *Gross*, 628 F. Supp. 2d at 494, 496 (finding that a scheme alleged to include "over 100 instances of mail and/or wire fraud" was "essentially a single, relatively simple fraudulent scheme with a single purpose" and therefore insufficient); *Weizmann Inst. of Science v. Neschis*, 229 F. Supp. 2d 234, 257 (S.D.N.Y. 2002) (finding four predicate acts of mail fraud committed by one participant against a limited number of victims in furtherance of a single fraudulent scheme too limited to satisfy closed-ended continuity).

Additionally, where (as here) the predicate acts for a RICO claim sound in fraud, the plaintiff must plead the predicate acts constituting the alleged pattern of racketeering activity with particularity. Plaintiffs have failed to do so here, *see* Section III.A.1.a, *supra*, and for that independent reason they have also failed to allege adequately a pattern of racketeering activity. Plaintiffs thus fail to state a claim under § 1962(c).

[14]

### 2. Section 1962(d)

To establish a RICO conspiracy claim pursuant to § 1962(d), a plaintiff must demonstrate that each defendant "knew about and agreed to facilitate" a pattern of racketeering activity. *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003). To satisfy this standard, plaintiffs must establish "'as to each alleged co-conspirator: (1) an agreement to join the conspiracy; (2) the acts of each co-conspirator in furtherance of the conspiracy; (3) that the co-conspirator knowingly participated in the same.'" *Valenti v. Penn Mutual Life Insur.*, No. 10-cv-3325, 2012 WL 1034535, at *4 (S.D.N.Y. Mar. 28, 2012) (quoting *Nasik Breeding*, 165 F. Supp. 2d at 541).

"Dismissal of plaintiff's substantive RICO claim . . . mandates dismissal of the conspiracy to commit RICO claim . . . as well." *Purgess v. Sharrock,* 806 F. Supp. 1102, 1110 n.9 (S.D.N.Y. 1992); *see also First Capital*, 385 F.3d at 182 (finding no violation of § 1962(d) because plaintiffs "did not adequately allege a substantive violation of RICO" under § 1962(c)); *101 McMurray, LLC*, 2012 WL 997001, at *7 (finding that "a plaintiff must prove the existence of an agreement to violate RICO's substantive provisions to establish a RICO conspiracy") (internal quotation marks omitted); *Westgate Financial Corp.*, 2012 WL 219334, at *4. As discussed above, plaintiffs fail to allege sufficient facts to support a finding that defendants engaged in a pattern of racketeering activity pursuant to § 1962(c) at all, let alone that they "knew about and agreed to facilitate" the pattern of racketeering activity. There are no allegations remotely sufficient to allege that defendants entered into an agreement to engage in acts that violate the RICO statute, nor that any of the defendants knowingly participated in such a conspiracy. Accordingly, the Amended Complaint fails to state a claim under § 1962(d).

**B. Effect of the Dismissal of the RICO Claim on Green Pampas and Antoniazzi**

**1. Personal Jurisdiction**

As noted, plaintiffs assert personal jurisdiction over Green Pampas and Antoniazzi solely based on the RICO statute, which confers nationwide jurisdiction in RICO cases. *See* 18 U.S.C. § 1965. Because plaintiffs' RICO claims have been dismissed, personal jurisdiction over these two defendants is, necessarily, lacking, and all claims against them must be dismissed.[4]

**2. Arbitration**

Green Pampas argues, as an alternate ground for dismissal, that all claims arising out of the January 20, 2009 Agreement between Plastitex and Green Pampas are subject to arbitration pursuant to paragraph 12. Because the Court lacks personal jurisdiction over Green Pampas, the Court does not have occasion to decide this claim.[5]

---

[4] Although Antoniazzi has not moved to dismiss the Amended Complaint, plaintiffs' failure to state a claim under the RICO statute extends to all defendants, including Antoniazzi, and the Amended Complaint supplies no other basis for asserting personal jurisdiction over him.

[5] If jurisdiction were proper as to Green Pampas, dismissal of Plastitex's present claims as to Green Pampas would appear to be independently merited, in favor of arbitration, based on the binding arbitration provision in the parties' agreement. Under the Federal Arbitration Act, an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA applies to any "contract evidencing a transaction involving commerce." *Id.* Under the FAA, arbitration is a matter of contract, and, "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, Plastitex seeks to void the arbitration clause, claiming that (1) the clause itself is unconscionable, and (2) the agreement in which the clause exists was induced by fraud. But Plastitex does not allege or otherwise identity specific facts to show, as it must to void the arbitration agreement on grounds of unconscionability, that that agreement "is so grossly unreasonable . . . in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (internal quotation marks omitted). As to fraudulent inducement, a party so claiming must plead "specific facts as to the fraud, including the misleading statements, speaker, time, place, individuals involved, and specific conduct at issue." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 143 (2d Cir. 2011). Plastitex fails to satisfy the specific pleading requirements set out in Rule 9(b) as to that claim. Nor does its memorandum of law supply non-

### C.  State-Law Claims Alleging Fraud, Deceptive Practices, and Fraud in the Inducement

As to the remaining defendants, the Amended Complaint asserts the following state-law claims sounding in fraud: (1) a fraud claim against Raphael and Lau; (2) a deceptive practices claim against Raphael, Lau, and CFP; and (3) a fraud in the inducement claim against Raphael, Lau, and CFP.  A complaint alleging fraud must—in addition to stating a claim to relief that is "plausible on its face" with respect to each named defendant—"state with particularity the circumstances constituting the fraud or mistake." *Iqbal*, 129 S. Ct. at 1949; Fed. R. Civ. P. 9(b). This heightened pleading standard "'is designed to provide the defendant fair notice of the plaintiff's claims, and to enable the defendant to prepare a suitable defense, protect his reputation or goodwill from harm, and reduce the number of strike suits.'" *Atlantic Gypsum Co. v. Lloyds Int'l Corp.*, 753 F. Supp. 505, 512 (S.D.N.Y. 1990) (quoting *O'Brien v. Price Waterhouse*, 740 F. Supp. 276, 279 (S.D.N.Y. 1990)).  Plaintiffs must thus "allege facts that give rise to a strong inference of fraudulent intent," *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995), and must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner*, 459 F.3d at 292–93.

As to none of the claims sounding in fraud do plaintiffs allege sufficient facts to satisfy Rule 9(b).

---

conclusory allegations substantiating fraudulent inducement.  Finally, the instant dispute clearly falls within the scope of the parties' arbitration agreement.  Where there is a valid arbitration agreement, arbitral coverage of a dispute is presumed.  *See Glencore Ltd. v. Degussa Engineered Carbons L.P.*, No. 11-cv-7153, 2012 WL 223240, at *8 (S.D.N.Y. Jan. 24, 2012).  And it is hard to imagine a more broadly worded arbitration clause than the one between Plastitex and Green Pampas, which states that "all disputes arising out of or in connection with the present contract" are subject to arbitration.  Therefore, even if the RICO claim were sustainable and personal jurisdiction therefore existed over Green Pampas, Plastitex's claims against Green Pampas would likely be dismissed in favor of binding arbitration.

As to the fraud claims against Raphael and Lau, plaintiffs allege generally that those two defendants "knew that the letters of credit to be issued were to be confirmed and drawn upon a top 25 world bank," and that they made representations "knowing they were false with the intent to induce [plaintiffs] to pay funds." Am. Compl. ¶ 7.2. Plaintiffs also allege that Raphael and Lau "committed [f]raud in a second instance when they connected Continental Petroleum with Trifecta." *Id.* ¶ 8.2. But plaintiffs allege no further facts to support these assertions of fraud, and these conclusory allegations do not come close to satisfying Rule 9(b). Plaintiffs fail to specify the false or misleading statements or representations that Raphael and Lau allegedly made; to whom they were made; specifically which aspects of their statements were made with awareness that they were false or misleading; or their basis for alleging that defendants were aware of the false or misleading nature of the statements they were making.

As to plaintiffs' deceptive practices and fraud in the inducement claims, they are similarly deficient. Under New York law, to establish a claim for deceptive practices, plaintiffs must demonstrate that defendants engaged in "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]," N.Y. Gen. Bus. L. § 349, and to establish a claim for fraud in the inducement, plaintiffs "must assert the misrepresentation of a material fact, which was known by the defendant to be false and intended to be relied on when made, and that there was justifiable reliance and resulting injury." *Braddock v. Braddock*, 60 A.D.3d 84, 86 (1st Dep't 2009). In this case, both of these claims are based on defendants' purported misrepresentation that the letters of credit would be "confirmed and drawn upon a top 25 world bank." Am. Compl. ¶¶ 7.2, 8.1. However, the Amended Complaint does not allege that Raphael or Lau (or CFP, on whose behalf they acted) themselves made any material misrepresentations of a known fact or facts to plaintiffs which caused them to

[18]

enter into the agreements providing for the issuance of letters of credit.  Nor does the Amended

Complaint identify with any particularity the statements constituting defendants' allegedly

deceptive acts or practices.

Plaintiffs' fraud in the inducement claim fails for an additional reason.  Where a fraud

claim "is premised upon an alleged breach of contractual duties,[] and the supporting allegations

do not concern representations which are collateral or extraneous to the terms of the parties'

agreement, a cause of action sounding in fraud does not lie."  *McKernin v. Fanny Farmer Candy

Shops, Inc.*, 176 A.D.2d 233, 234 (2d Dep't 1991).  Therefore, to maintain a claim for fraudulent

inducement that does not merge with a breach of contract claim, a plaintiff must "(i) demonstrate

a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent

misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are

caused by the misrepresentation and unrecoverable as contract damages."  *Bridgestone/

Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19–20 (2d Cir. 1996); *see also Rojas

v. Don King Prods.*, No. 11-cv-848, 2012 WL 760336, at *4 (S.D.N.Y. Mar. 6, 2012) (quoting

*Bridgestone/Firestone*, 98 F.3d at 20) (holding that "intentionally-false statements . . . indicating

[an] intent to perform under the contract . . . . [are] not sufficient to support a claim of fraud

under New York law").

Here, plaintiffs fail to allege misrepresentations that are collateral or extraneous to the

agreement in question.  At most, plaintiffs claim that defendants generally "represent[ed] to their

clients that they will provide letters of credit that will conform to the requirements of a

transaction, when in fact they will not."  Am. Compl. ¶ 10.2.  But even if that statement had been

alleged with sufficient particularly to satisfy Rule 9(b), which it is not, it merges with plaintiff's

breach of contract claim.  Plaintiffs fail to allege a breach of a legal duty separate from the duty

[19]

to perform under the contract, or of a misrepresentation collateral or extraneous to the contract. "Simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim." *Telecom Int'l Am. Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001).

Accordingly, plaintiffs' claims for fraud, fraud in the inducement, and deceptive practices against defendants CFP, Raphael, and Lau are not adequately pled, and must be dismissed.

**D.  Contract Claims**

Finally, plaintiffs each assert a breach of contract claim against CFP under New York law.  Plastitex alleges that CFP "executed a written contract which provided for a payment of funds in return for the issuance for a letter of credit that conformed to certain defined terms; namely[,] that it be confirmed and drawn upon a top 25 world bank."  Am. Compl. ¶ 5.1. Continental separately alleges that CFP "executed a written contract . . . . [which] provided for a payment of funds in return for the issuance for [sic] a letter of credit that conformed to certain defined terms, one of which was that it be confirmed."  *Id.* ¶ 6.1.  Plaintiffs allege that each of the contracts between plaintiffs and CFP was breached by CFP's failure to issue the letter of credit in conformity with the requirements of the various underlying urea purchase agreements. *Id.* ¶¶ 5.1, 6.1.

On the face of the Amended Complaint, plaintiffs' respective breach of contract claims, which are not subject to the pleading requirements of Rule 9(b), appear to state claims.[6]  The

---

[6] The Court is concerned that these claims may be based on an inaccurate recitation of the terms of the contracts between plaintiffs and CFP.  Notably, the contract term that plaintiffs quote in support of Continental's claim as to CFP tracks the terms of a urea purchase agreement between Continental and *a non-party urea provider*.  *See* Am. Compl. ¶ 4.4 ("the 'Signed Commercial Invoice' [with the urea provider] . . . . included a description of the type of letter of credit

Court is, however, concerned as to whether federal jurisdiction has been adequately pled as to plaintiffs' contract claims against CFP.  The Amended Complaint principally bases subject matter jurisdiction on the now-dismissed RICO claims.  However, the Amended Complaint also states that "[t]he court's jurisdiction is invoked under . . . 28 U.S.C. § 1332," the diversity jurisdiction statute.  Am. Compl. ¶ 2.0.  Beyond this cursory citation, however, the Amended Complaint does not amplify on this basis for jurisdiction.  There appears to be complete diversity of citizenship between plaintiffs, Peruvian and Paraguayan corporations, and CFP, a New York company.  However, plaintiffs do not identify a specific amount in controversy—they do not demand a sum certain, but rather assert that CFP violated contracts, under which plaintiffs claim to have performed, that "provided for a payment of funds" by plaintiffs to CFP.  *Id.* ¶ 5.1.  These imprecise assertions leave substantial doubt whether plaintiffs have satisfactorily pleaded diversity jurisdiction.  The parties, however, have not briefed this issue.

The Court, therefore, directs plaintiffs to advise defense counsel and the Court, in writing, within one week of the date of this Opinion and Order, whether they intend to proceed on the contract claims in this Court, or whether, in light of the dismissal of all other claims in this case, they intend to dismiss those claims voluntarily.  In the event that plaintiffs elect to proceed with those claims, the Court directs plaintiffs to submit a memorandum of law explaining why

---

required, and states in pertinent part, 'Terms of payment irrevocable, confirmed, transferable, at the sight 100% payable documentary letter of credit top 25/50 world bank.'").  It is unclear whether this same language appeared in the purported contract between a plaintiff and CFP: According to an exhibit attached to Raphael's motion to dismiss, Plastitex's June 2008 request for a letter of credit says nothing about a *confirmed* letter of credit, but instead reads: "Please issue an irrevocable, transferrable *commercial* letter of credit."  Raphael Decl., Ex. E (emphasis added).  Because the parties have not supplied the Court with the contracts between plaintiffs and CFP—even though such documents would be properly considered on a motion to dismiss— the Court is unable to assess whether plaintiffs' contract claims against CFP are belied by the terms of the contract itself.  The Court will entertain a renewed motion to dismiss on this ground, if such a meritorious claim exists.  Any such motion is due May 7, 2012.

federal jurisdiction has been adequately pleaded as to the contract claims.  Such a memorandum

is due on April 30, 2012.  Defense counsel may respond to that submission; that response is due

by May 7, 2012.  The Court will then decide whether there is diversity jurisdiction.  If so, in its

ruling on that point, the Court will set a date for CFP to file an answer to those claims, a date for

the parties to submit a joint Case Management Plan, and a date for an initial conference.

## CONCLUSION

For the reasons stated in the foregoing, (1) all claims in the Amended Complaint are

DISMISSED as against Green Pampas and Antoniazzi for lack of personal jurisdiction; (2)

plaintiffs' claims under the RICO statute are DISMISSED as to all defendants for failure to state

a claim; and (3) plaintiffs' state law claims for fraud, deceptive practices, and fraud in the

inducement against CFP, Raphael, and Lau are DISMISSED for failure to state a claim.

As to plaintiffs' only surviving claims, the breach of contract claims against CFP, the

Court directs plaintiffs, by April 18, 2012, to alert the Court and CFP whether it intends to

proceed on the contract claims in this Court.  If plaintiffs elect to proceed with the contract

claims against CFP, plaintiffs are directed to submit, by April 30, 2012, a memorandum of law

explaining why federal jurisdiction has been adequately pleaded as to the contract claim.  CFP's

response to that submission is due by May 7, 2012.  If CFP elects to make a renewed motion to

dismiss on the grounds that the contract claim is based on an inaccurate recitation of the terms of

the contracts between plaintiffs and CFP, such a motion is due by May 7, 2012.

The Clerk of Court is directed to close docket items 23, 28, and 40, and to terminate

defendants Green Pampas, Antoniazzi, Raphael, and Lau from this case.

SO ORDERED.

[22]

_Paul A. Engelmayer_

Paul A. Engelmayer
United States District Judge

Dated: April 11, 2012
       New York, New York