UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                           :

CONTINENTAL PETROLEUM CORPORATION, INC., :
and PLASTITEX, S.A.,                                   :

                                  Plaintiffs,             :           11 Civ. 7801 (PAE)
             -v-                                              :
                                                                    :           OPINION & ORDER
CORPORATION FUNDING PARTNERS, LLC, PABLO :
ANTONIAZZI, CAREN RAPHAEL, JOSEPH LAU, and :
GREEN PAMPAS, INC.,                                :

                                  Defendants.           :
                                                                     :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       Continental Petroleum Corporation, Inc. and Plastitex, S.A. (collectively, "plaintiffs"), bring this claim against Corporate Funding Partners, LLC ("CFP"), Green Pampas, Inc. ("Green Pampas"), Pablo Antoniazzi, Caren Raphael, and Joseph Lau (collectively, "defendants") under sections 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. § 1961 *et seq.* ("RICO"), and under New York law.  In an Opinion and Order issued on April 12, 2012 (the "Opinion"), the Court granted in full defendants' motions to dismiss the Amended Complaint as to Green Pampas, Antoniazzi, Raphael, and Lau, and granted in part and denied in part those motions as to CFP.  *See* Dkt. 47.  As to the only claims that have not been dismissed—plaintiffs' contract claims against CFP—plaintiffs were directed to submit a memorandum of law explaining why diversity jurisdiction has been adequately pleaded.  Plaintiffs now move pursuant to S.D.N.Y. Local Civil Rule 6.3 for reconsideration of the Court's Opinion, and, implicitly, for authorization to again amend the complaint.  *See* Dkt. 49.  For the reasons that follow, those motions are denied.

### I. Legal Standard

#### A. Motion for Reconsideration

The standard governing motions for reconsideration under Rule 6.3 "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made." *Associated Press v. U.S. Dep't of Defense*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005). Accordingly, "[c]ourts have repeatedly warned parties that motions for reconsideration should not be made reflexively in order to reargue those issues already considered when a party does not like the way the original motion was resolved." *Families for Freedom v. U.S. Customs & Border Prot.*, No. 10-cv-2705, 2011 WL 4599592, at *2 (S.D.N.Y. Sept. 30, 2011) (citing *Makas v. Orlando*, No. 06-cv-14305, 2008 WL 2139131, at *1 (S.D.N.Y. May 19, 2008)) (internal quotation marks and additional citation omitted). Generally, district courts will only amend or alter a judgment "to correct a clear error of law or prevent manifest injustice." *In re Assicurazioni Generali, S.P.A.*, 592 F.3d 113, 120 (2d Cir. 2010).

#### B. Motion to Amend the Amended Complaint

Pursuant to Federal Rule of Civil Procedure 15(a)(2), leave to amend a complaint shall be given "freely" when "justice so requires." "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Williams v. CitiGroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)). However, "a district court has discretion to deny

leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200–01 (2d Cir. 2007); *see also AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) ("Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim.").

## II.   Discussion

### A.  Motion for Reconsideration

In support of the motion for reconsideration of the Opinion, plaintiffs make three principal arguments: (1) that the Court misapprehended certain portions of plaintiffs' argument relating to the alleged pattern of racketeering; (2) that plaintiffs adequately pled their RICO claims in the Amended Complaint; and (3) that new information relating to non-party corporations and the disbarment of a non-party individual is further evidence of Antoniazzi's fraudulent intent.  The Court addresses each argument in turn.

#### 1.   Misapprehension of Plaintiffs' "Pattern of Racketeering" Argument

Plaintiffs argue that the Court misconstrued the facts underlying plaintiffs' claim that defendants were engaged in a "pattern of racketeering" under 18 U.S.C. § 1962(c). This misunderstanding, plaintiffs submit, is demonstrated by the Court's discussion of plaintiffs' assertions bearing on the "pattern of racketeering" in the Opinion.  The Court stated:

> Here, plaintiffs allege that defendants' pattern of racketeering activity consisted of "numerous counts" of bank fraud, mail fraud, and wire fraud in violation of § 1961(1)(B). Am. Compl. ¶ 9.5.  However, these alleged illegal acts (even if each were adequately pleaded, which they are not) do not together establish a closed-ended pattern of continuity, because these acts occurred within too narrow a time frame.  At most, plaintiffs allege three predicate illegal acts by defendants:  The letters of credit issued in May 2008 to satisfy the initial urea purchase transactions; the letters of credit issued in July 2008 to satisfy the agreement with Trifecta Trading; and the letter of credit issued in January 2009 to satisfy Plastitex's agreement with Green Pampas.  These acts, even if pleaded with

[3]

>sufficient specificity, span only nine months.  Together, they fall far short of the two-year minimum requirement prescribed by the Second Circuit.

Opinion at 13.  In their motion, plaintiffs argue that, in fact, there were not three, but five predicate acts.  *See* Pls.' Mot. ¶ 3.5.  However, as a careful reading of the Opinion would reveal, the Court's reference to the "*letters* of credit issued in May 2008" and the "*letters* of credit issued in July 2008" clearly encompassed each of the five transactions—between CFP and Continental, and between CFP and Plastitex—cited by plaintiffs.  Opinion at 13 (emphasis added).  The difference between the Court's and plaintiffs' approaches is merely one of semantics and classification—whether the episodes in question are properly sorted into three or five predicate acts.

That difference is entirely immaterial to the outcome of the motion to dismiss.  Even if, as plaintiffs assert, each letter of credit constituted its own predicate act under § 1962(c), and if plaintiffs therefore pleaded five predicate acts, that would have no bearing on the Court's decision that plaintiffs RICO claims fail to state a claim.  The Opinion so held for two independent reasons: plaintiffs fail to establish an enterprise; and plaintiffs fail to establish a pattern of racketeering.  Even if plaintiffs had established an enterprise (which the Court found they did not), plaintiffs' assertion that a pattern of racketeering existed *itself* fails for two independent reasons: plaintiffs did not plead the alleged fraudulent acts with specificity in accordance with relevant pleading standards (discussed *infra* in Section II.A.2); and plaintiffs plead too narrow a time frame to establish a closed-ended pattern of continuity under Second Circuit case law.  *See* Opinion at 13.

The correction plaintiffs seek as to the number of predicate acts, even if made, would not "alter the conclusion reached by the court," and cannot be the basis for granting reconsideration.  *Shrader*, 70 F.3d at 257.  The Court's determination that the alleged predicate acts were carried

out over too narrow a time frame to establish a closed-ended pattern of continuity was based on the period of time during which the contracts were enacted, not the absolute number of such agreements. *See* Opinion at 12–13. Notably, aside from this issue of semantics, plaintiffs fail to point to any matter pleaded in the Amended Complaint which the Court overlooked in dismissing its claims.

### 2. Plaintiffs Adequately Pled the RICO Claims

Plaintiffs argue that they did, in fact, plead with sufficient specificity all claims against defendants arising out of the RICO statute, 18 U.S.C. § 1962(c) and (d), so as to survive a motion to dismiss. Plaintiffs suggest that "it was the writing style, or presentation of the material, not the factual allegations, or the substance of this matter which has led to the dismissal of the RICO causes of action." Pls.' Mot. ¶ 1. Plaintiffs then proceed to repeat the same recitation of facts contained in the Amended Complaint and marshaled in plaintiffs' opposition to defendants' motion to dismiss. *Id.* ¶ 2.

The manner of presentation of plaintiffs' Amended Complaint and their opposition did indeed fall short of the standards in this District. Plaintiffs are admonished to try to achieve greater clarity in future submissions. However, as the Opinion makes clear, the dismissal of the Amended Complaint was based on its substantive deficiencies, not plaintiffs' counsel's writing style. As the Court explained, to survive a motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

Further, claims sounding in fraud must satisfy the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b), which requires that "a complaint must 'allege facts that give rise to a *strong inference of fraudulent intent*,'" and "state with particularity the circumstances constituting the fraud or mistake." *Berman v. Morgan Keenan & Co.*, 455 F. App'x 92, 94 (2d Cir. 2012) (sum. order) (emphasis added) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)); Fed. R. Civ. P. 9(b). Specifically, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292–93 (2d Cir. 2006) (internal quotation marks omitted).

As the Court explained, taking all its allegations as true, the Amended Complaint fell noticeably short of these standards. As to no claims sounding in fraud do plaintiffs allege sufficient facts to satisfy Rule 9(b). Plaintiffs claim that "Corporate Funding Partners, Antoniazzi, Lau, and Raphael all knew that the letters of credit to be issued were to be confirmed and drawn upon a top 25 world bank for Plastitex," and all "lied throughout this process, and have had their lies pointed out to the court." Pls.' Mot. ¶ 2. However, plaintiffs fail to plead facts sufficient to show that defendants engaged in fraudulent acts so as to establish RICO predicates sounding in fraud. "Simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim." *Telecom Int'l Am. Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001). *See* Opinion at 9–15.[1]

---

[1] Independently, the Court also continues to question whether plaintiffs have accurately recited the terms of the contracts between plaintiffs and CFP. Despite the Court's having raised this issue, *see* Opinion at 20 n.6, plaintiffs did not address it in their motion for reconsideration.

### 3. Irrelevant Additional Facts

The only new facts asserted in the motion for reconsideration relate to (1) instances of alleged fraud committed by defendants against non-party corporations, and (2) the disbarment of a non-party attorney in Florida. *See* Pls.' Mot. ¶¶ 1, 4.

As to the instances of alleged fraud committed against non-party Great Eagle International Trade, such facts are irrelevant to the claims by current plaintiffs, Continental and Plastitex, against defendants, because they do not support plaintiffs' claims that defendants engaged in unlawful conduct in their interactions *with the plaintiffs*. Additionally, on the record before the Court, plaintiffs lack standing to bring claims on behalf of Great Eagle International Trade—or any non-party. Plaintiffs do not establish that they are a "real party in interest" with respect to those claims. *See* Fed. R. Civ. P. 17.

As to the proceedings against non-party Martin Doyle by the Florida Bar Association, on which plaintiffs base much of their motion for reconsideration, they are entirely irrelevant to the claims at hand and do not buttress plaintiffs' RICO claims. The Florida state court proceedings lack any connection to the transactions at issue in the Amended Complaint—namely, the contracts between plaintiffs and CFP to issue letters of credit in furtherance of purchase agreements for urea. Antoniazzi's involvement in a Florida state proceeding arising out of an entirely different set of transactions is totally extraneous to plaintiffs' claims, and would not change the outcome even if pled in the Amended Complaint. They cannot be "reasonably be expected to alter the conclusion reached by the court," and thus cannot be the basis for granting reconsideration. *Shrader*, 70 F.3d at 257.

In sum, plaintiffs' motion seeks merely to relitigate issues resolved by this Court in its Opinion, and does not bring to bear any controlling decisions or data meriting a change in that

outcome.  *See* S.D.N.Y. Local Civil Rule 6.3; *Oscar v. BMW of N.A. LLC*, No. 09-cv-11, 2012 WL 245229 (S.D.N.Y. Jan. 25, 2012).  The motion for reconsideration of the Court's Opinion is denied.

### B. Motion to Amend the Amended Complaint

Plaintiffs' motion for reconsideration is styled to, "in the alternative," move for leave to amend the Amended Complaint.  Plaintiffs do not, however, provide the Court with a proposed Second Amended Complaint.  Nor do they even state which arguments, facts, or assertions would be amended if the Court were to give leave to amend.

The Court finds that any amendment to the Amended Complaint would be futile.  "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir. 2002).  Plaintiffs have had multiple opportunities to allege sufficient facts so as to plead defendants' alleged fraudulent acts with specificity in accordance with relevant pleading standards—the Complaint (Dkt. 1) and the Amended Complaint (Dkt. 19)— and multiple opportunities to develop arguments based on those facts—the briefs in opposition to defendants' motions to dismiss (Dkt. 35; Dkt 45) and the briefs in support of this motion (Dkt. 49; Dkt. 50).  The plaintiffs do not claim that any new facts or theories of liability are now available to them that were unavailable at the time of their previous submissions.  Taking all facts pleaded in these submissions as true, as the Court must when considering a motion to dismiss, plaintiffs do not come close to satisfying relevant pleading standards or stating a claim under the RICO statute or state law claims sounding in fraud.  The Court thus finds that any amendment to the Amended Complaint would not cure the failure of the plaintiffs' current pleadings to state a claim under the RICO statute.

### C. Jurisdiction

In its Opinion, the Court noted that it was concerned whether federal jurisdiction had been adequately pled as to the only remaining claim: plaintiffs' breach of contract claim against CFP.  *See* Opinion at 21.  The Amended Complaint states that, as to the non-RICO claims, "[t]he court's jurisdiction is invoked . . . under 28 U.S.C. § 1332," the diversity jurisdiction statute.  The Amended Complaint, however, failed to identify a sum certain with respect to the damages caused by CFP's alleged breach.  In the Opinion, the Court instructed plaintiffs to submit a memorandum of law explaining why federal jurisdiction has been adequately pleaded as to the contract claim.

Plaintiffs' memorandum in support of this motion is sufficient to support diversity jurisdiction as to that claim.  *See* Pls.' Mot. at 11.  Plaintiffs have adequately pleaded complete diversity among the remaining parties—plaintiffs and CFP—and a claim exceeding $75,000.

As to the Court's holding that, in absence of a cognizable RICO claim, it lacked jurisdiction over certain defendants, the Court notes that dismissal of all claims as to those defendants was made without prejudice to plaintiffs' re-filing claims in a court of proper jurisdiction.

## CONCLUSION

For the reasons stated in the foregoing, plaintiffs' motion for reconsideration of the Court's April 12, 2012 Opinion and Order granting in part defendants' motion to dismiss is hereby DENIED.

As to plaintiffs' only surviving claim, breach of contract claims against CFP:  If plaintiffs intend to pursue this claim, it is essential that a case management plan as to that claim be put in place promptly.  The Court directs the parties to meet and confer forthwith as to a proposed case

management plan. The parties are directed to submit, by May 29, 2012, a jointly-proposed case management plan, in accordance with the Court's individual rules, available at the Court's website. If the parties cannot make such a submission on consent, the plaintiffs and CFP are each directed to submit, by the same date a proposed case management plan to the Court. If CFP elects to make a renewed motion to dismiss on the grounds that the contract claim is based on an inaccurate recitation of the terms of the contracts between plaintiffs and CFP, deadlines for briefing of such a motion must be included in the proposed case management plan.

The Clerk of Court is directed to close docket items 49 and 50.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: May 22, 2012
         New York, New York