UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

CONTINENTAL PETROLEUM CORPORATION, INC.   :
and PLASTITEX, S.A.,

                                                     :   **AFFIDAVIT IN SUPPORT**
                    Plaintiffs,

                                                     :   **11-CV-7801(PAE)**

        -  against -

                                                     :   **Hon. Paul A. Engelmayer**

CORPORATE FUNDING PARTNERS, LLC, PABLO
ANTONIAZZI, an individual, CAREN RAPHAEL,
JOSEPH LAU, GREEN PAMPAS, INC.,

                    Defendants.
------------------------------------------------------------------------X
STATE OF NEW YORK      )
COUNTY OF WESTCHESTER ) ss.:

        NOËL F. CARACCIO, being duly sworn deposes and says:

        1.       That I am the attorney for the above-entitled Defendant, Corporate Funding Partners, LLC, and as such I am fully familiar with the facts and circumstances surrounding this matter.  I am an attorney duly admitted to practice law before the Courts of the State of New York and the United States District Court, Southern District of New York.

        2.       I make this Affidavit in support of Defendant Corporate Funding Partners, LLC's ("CFP") Second Motion to Dismiss the remaining causes of action for breach of contract contained in the Plaintiffs' First Amended Complaint ("FAC") in response to the Court's determination in the Opinion and Order dated April 12, 2012 and pursuant to Fed. R. Civ.

P. Rule 12 and New York CPLR §3211 (1) and (7). The Court previously dismissed all of the other causes of action against CFP and all other Defendants. (Opinion and Order, dated April 12, 2012.)

3. Submitted with this Affidavit is an Affidavit by Caren Raphael, the President of Sales for CFP, and a Memorandum of Law, in support of Defendant's Second Motion to Dismiss the Complaint. Caren Raphael will address in her Affidavit in Support, ("Raphael Aff.") the mechanics of obtaining the Letters of Credit for each Plaintiff.

I. **PROCEDURAL HISTORY AND RECITATION OF EXHIBITS**

4. In the Opinion and Order dated April 12, 2012 this Court expressed concern that Plaintiffs' breach of contract claims "may be based on inaccurate recitation of the terms of the contracts between plaintiffs and CFP." (Opinion and Order p. 20 fn 6.) This Court noted that plaintiffs' FAC recites the terms identifying the type of Letter of Credit to be provided from their respective underlying contracts for the purchase of urea, but does not attach a copy of a written agreement with CFP that contains the same terms. (Opinion and Order p. 21 fn 6.) In conclusion, this Court advised all parties that without considering the agreements between CFP and plaintiffs the "Court is unable to assess whether plaintiffs' contract claims against CFP are belied by the terms of the contract itself." (Opinion and Order p. 21 fn 6.)

5. This Second Motion to Dismiss is intended to provide the Court with a clear presentation of the documents that reflect the intent and the agreement between the parties, to enable this Court to determine that Plaintiffs' claims for breach of contract are, in fact, belied by the terms of the written documents.

6       For the convenience of the Court, I am attaching hereto the series of documents previously submitted to the Court and, referred to and discussed in the attached Memorandum of Law. Set forth below is a list of the exhibits organized by the exhibit letters to this Affidavit, the names of the documents, and the corresponding exhibit letter previously used to identify the documents in the FAC and the First Raphael Affidavit submitted on February 2, 2012.1  The following exhibits, which are attached hereto, comprise the entire agreement between CFP and Plaintiff and, the agreements belie Plaintiffs' claims that they contracted with CFP for confirmed Letters of Credit.

**A.     Exhibits Related to the Contract Between Continental Petroleum and CFP**

Exhibit "A": "Corporate Funding Partners L/C Application Form" (FAC at CPC 0018-192);

Exhibit "B": the "Application for Import Letter of Credit" (FAC at CPC 0020-22);

Exhibit "C": the "Letter of Credit Compliance Questionnaire" (FAC at CPC 0057-0060);

Exhibit "D": two separate Agreements and Indemnities (FAC at CPC 0024-0025);

Exhibit "E": second "Application for Import Letter of Credit" (FAC at CPC 0041-46);

Exhibit "F": Letter of Credit for Beneficiary Loxistica (First Raphael Affidavit at Exhibit A);3

Exhibit "F-1": Letter of Credit for Beneficiary Trifecta Trading. (Second Raphael Exhibit);4

---

[1] Two documents were not previously submitted to the Court and are included herewith to complete the set of agreements between the parties. The attached affidavit if Caren Raphael sets forth the evidentiary foundation for each.

[2] Parenthetical references are to the exhibits to the FAC and identified by the Bates Stamp numbering located at the bottom of each page of each exhibit.

[3] Parenthetical references are to the exhibits attached to the First Raphael Affidavit dated February 2, 2012.

[4] Attached hereto is the Second Affidavit of Caren Raphael wherein she sets forth the basis for submitting additional documents to the Court.

Exhibit "G": two invoices from CFP to Continental Petroleum (FAC at CPC 0017 and CPC 0040);

**B.     Exhibits Related to the Contract Between Plastitex and CFP**

Exhibit "H": the "Letter of Credit Application Form" (First Raphael Aff. Exhibit C);

Exhibit "I": the "Application for Import Letter of Credit" for seller Granapa (First Raphael Affidavit at Exhibit E);

Exhibit "I-1": signed and approved "Application for Import Letter of Credit" for seller Granapa (Second Raphael Affidavit);

Exhibit "J" the Letter of Credit Compliance Questionnaire (First Raphael Aff. Ex. D);

Exhibit "K": two separate Agreements and Indemnities (First Raphael Aff. At Exhibit A, and FAC at Plas-39-40)

Exhibit "L": Letter of Credit for seller Trifecta Trading (FAC at Plas-43);

Exhibit "L-1": Letter of Credit for seller Granapa (Second Raphael Affidavit)

Exhibit "M": the Application for Import Letter of Credit" for seller Trifecta Trading (FAC at Plas-33-34);

Exhibit "N": two invoices from CFP to Plastitex (FAC at Plas-6 and Plas-32.)

7.     The foregoing documents comprise the entire agreements between Plaintiffs and Defendant Corporate Funding Partners, LLC.  Notably absent from each and every document signed by either Continental Petroleum or Plastitex is the language relied upon by Plaintiffs and quoted in their FAC, i.e., that CFP agreed to provide a confirmed documentary letter of credit issued by a top 25/50 world bank.

4

8.  The remaining state law claims for breach of contract in the First Amended Complaint should be dismissed pursuant to New York CPLR §3211 (1) and (7) based upon documentary evidence and for failure to properly state a cause of action upon which relief may be granted.

## II. THE DOCUMENTARY EVIDENCE REQUIRES DISMISSAL OF PLAINTIFFS' CLAIMS FOR BREACH OF CONTRACT

### A. THE AGREEMENTS BETWEEN CFP AND EACH PLAINTIFF DO NOT INCLUDE AN UNDERTAKING BY CFP TO OPEN A CONFIRMED LETTER OF CREDIT BY A TOP 25/50 WORLD BANK

9.  Plaintiffs each allege that they "executed a written contract" with CFP "…which provided for a payment of funds in return for the issuance for a letter of credit that conformed to certain defined terms; namely that it be confirmed and drawn upon a top 25 world bank." (FAC ¶5.1 and ¶6.1.)  These claims are entirely false and decisively disputed by the documentary evidence.

10. Plaintiff Continental Petroleum alleged that the attachments to the L/C Application were incorporated into the L/C Application "…based on the incorporation clause contained in the "Special Conditions" section of the form, and in the "Documents Required" section of the form." (FAC at ¶4.4). Exhibit A to this Affidavit is a copy of the L/C Application Form submitted by Continental Petroleum to CFP.  The Documents Required section and the Special Conditions clauses do not contain an incorporation clause.  There is no incorporation clause anywhere in the document incorporating by reference the terms of the documents requested by CFP from Continental Petroleum.

5

11. Plaintiff Plastitex casually alleges that its transaction with CFP "…also required a confirmed letter of credit, with a top 25 world bank. Note that these are the same material terms that were required in the Continental Petroleum transaction. Corporate Funding Partners represented that it could and would issue a letter that complied with the confirmation requirement, as well as the top 25 world bank requirement." (FAC at ¶4.16). Unlike Continental Petroleum, Plastitex did not attach a copy of its application form or argue that its attachments were incorporated therewith.

12. Instead, Plastitex explained that its sales agreement with the seller of urea, required that the letter of credit be confirmed and issued by a top 25 world bank. (FAC at ¶ 4.16, Plas-1, 6, 7). Plastitex then jumps to the conclusion and alleges that because its sales agreement requires these terms, then, the same became a material condition to their contract with CFP. (FAC at ¶4.16) Plastitex did not refer to, nor did it attach a copy of any agreement or document signed by CFP that indicated an ability, willingness or agreement to issue a Letter of Credit containing the terms provided by its sales contract.

13. For the foregoing reasons alone, the breach of contract causes of action in the FAC should be dismissed as a matter of law.

**B.   THE WRITTEN AGREEMENTS**

14. There are several documents which comprise the totality of the agreement or meeting of the minds, between the Defendant, CFP, and each Plaintiff, as opposed to one document. The series of documents that comprise the agreements and understandings between

6

the parties to a Letter of Credit application are attached hereto as exhibits and explained more fully in the accompanying affidavit of Caren Raphael.

15. Specifically, the documents that comprise the agreements between the parties are the L/C Application Forms, Applications for Import Letter of Credit (colloquially called the "Draft LC"), the Agreement and Indemnity, the Letter of Credit Compliance Questionnaires, the actual Letters of Credit, and the invoices from CFP to Plaintiffs. The foregoing series of documents, taken as a whole, comprise the contractual agreements between CFP and both Plaintiffs.

16. Plaintiffs, in the FAC, recite the terms identifying the type of Letter of Credit to be provided from their respective underlying contracts for the purchase of urea, but did not attach a copy of a written agreement with CFP that contains the same terms *because the written agreements with CFP do not contain the same terms.*

17. None of the documents which comprise the agreement between CFP and each Plaintiff contains an undertaking by CFP to review the underlying sales contract for compliance with the Letter of Credit terms. Moreover, none of the documents contain an offer or an agreement by CFP to open a *Letter of Credit with Confirmation.*

18. The only reason that the sales contracts between Plaintiffs and their sellers were provided to CFP was for the sole purposes of confirming that a bona fide transaction existed, in order to comply with the anti-terrorism and anti-money laundering laws. CFP did not at any time offer to review the underlying contract for its terms between the Plaintiffs and their respective Sellers for the purchase of urea.

19. CFP is not in the business of opening Letters of Credit with Confirmation. They did not offer to, they did not agree to, nor is it their business to do so.

C. **THE TERMS OF THE AGREEMENT AND INDEMNITY BARS PLAINTIFFS' CLAIMS FOR BREACH OF CONTRACT**

20. The Agreement and Indemnity signed by each Plaintiff is a complete bar to Plaintiffs' claims for breach of contract. (Exhibits D and K hereto). The Agreement and Indemnity includes certain representations by the Plaintiffs which were material to the transactions, and upon which CFP relied in agreeing to process the applications for the Letters of Credit. Specifically, Plaintiffs represented that they "…conducted our full due diligence of the beneficiary and the said transaction represents a routine commercial business transaction. We agree to indemnify you against all expenses, losses, claims and damages arising on account of said letter of credit …" (page 1, ¶1 to Exhibits D and K hereto). Further, Plaintiffs represented that "We also agree that neither we nor the beneficiary …shall contact you or your bank or make any claim against the letter of credit or **dispute any of the conditions of the letter of credit** application approved by us." (Emphasis added) (page 1, ¶2 Exhibits D and K hereto).

21. The Agreement and Indemnity does not include a promise by CFP to review the underlying sales agreement to determine the terms for the Letter of Credit, nor does it state that the Letter of Credit shall be confirmed.

II. **PLAINTIFFS' WAIVED ANY RIGHT TO OBJECT TO THE TERMS OF THE LETTERS OF CREDIT BY APPROVING THE DRAFTS, IN WRITING, PRIOR TO ISSUANCE**

22. The Applications for the Import Letters of Credit (Exhibits B, E, I, I-1 and M hereto) are the drafts of the Letters of Credit which show all of the terms to be stated in the

actual Letter of Credit. Each exhibit shows that the Plaintiffs and their sellers received and approved the drafts as written and directed the same were "Ok to Issue."

23.  The actual Letters of Credit issued are identical to the drafts and were provided after the drafts were approved. (Exhibits F, F-1, L and L-1, hereto.)

24.  Based on the written approval and acceptance of the Draft Letters of Credit, the Plaintiffs waived any right to object to the terms of the actual Letters of Credit. By approving the Drafts of the Letters of Credit – before paying CFP its fee and before the Letters of Credit were provided – Plaintiffs have expressly waived any objections to the terms stated therein. The waiver is a complete bar to Plaintiffs' claims.

### III. PLAINTIFFS ARE ESTOPPED FROM ASSERTING CLAIMS FOR BREACH OF CONTRACT

25.  CFP relied on Plaintiffs' written approval of the terms stated in the drafts of the Letters of Credit and, provided documentary Letters of Credit based thereon. Plaintiffs are estopped from asserting a claim for breach of contract based on the terms contained in the Letters of Credit which were approved in writing by Plaintiffs prior to issuance and payment.

26.  Plaintiffs' checked the box marked "Documentary LC" on the L/C Application Form" (Exhibits A and H hereto). The signed and approved drafts (Applications for an Import Letter of Credit) say "Please issue an irrevocable, transferable commercial letter of credit as set forth below and forward same to your branch office or correspondent bank for delivery to the beneficiary" (Exhibits B, E and M). Nowhere in any of the drafts did the Plaintiffs use the words "confirmed" Letter of Credit.

27. On the drafts of the Applications, there is a section commencing on page 2 entitled "Other Conditions" (Exhibits B, E and M). There are several other conditions listed, none of which contain the word "confirmed."

## IV. PLAINTIFFS CLAIMS THAT CFP AGREED TO REVIEW THEIR UNDERLYING SALES AGREEMENTS ARE BASELESS

### A. PLASTITEX IS KNOWLEDGEABLE AND EXPERIENCED IN INTERNATIONAL TRADE TRANSACTIONS AND BORE THE BURDEN TO PERFORM ITS OWN DUE DILIGENCE BEFORE ENTERING INTO ITS AGREEMENTS

28. Plastitex was a knowledgeable and experienced commercial business enterprise and bore the burden to conduct its own due diligence before entering into the sales agreements with Loxistica and Trifecta Trading, and before applying for letters of credit with CFP.

29. Plastitex represented to CFP in the Letter of Credit Compliance Questionnaire that it is in the business of importation and distribution of fertilizers (Exhibit J). It has been in that business for 13 years (Exhibit J). Plastitex says that it has done business with this product (urea) continuously since 2000 (Exhibit J).

30. The Proforma Invoice provided by its sellers is extremely specific to all of the conditions of the urea and shows a certain level of sophistication on the part of Plastitex.

31. The Letter of Credit for the contract with Plastitex was for Two Million Nine Hundred Seventy-three Five Hundred ($2,973,500.00) Dollars, a substantial transaction. Plastitex was certainly not a neophyte at this process.

32. Plastitex had been in business since 1995 and specifically said it had been doing business with this product since 2000, so presumably this was not the first complicated transaction entered into by Plastitex.

33. Plaintiff, Plastitex, admits that the contract for the purchase of urea with the Seller, Trifecta Trading failed because Trifecta Trading did not have any urea. (FAC ¶ 4.17, 4.18 and 4.19.) I specifically refer the Court to the last sentence of Paragraph 4.18 of the FAC which says, "This flew in face of Trifecta's assertion that they had started the proof of product issuance process on August 4, 2008."

34. Plastitex admits that its transaction was frustrated because the seller failed to perform its obligations under the sales contract. Indeed, Plastitex averred that "More letters were exchanged and requests for information was sent, but Trifecta double talked until the final admission on October 3, 2008 admitted that they have no urea supply." (Emphasis added.) (FAC ¶4.19.) Therefore, if the Plaintiff, Plastitex, has any issue, it should be for breach of contract with its Seller, Trifecta Trading, instead of attempting to place the blame on CFP.

35. On January 20, 2009, Plastitex and Green Pampas, Inc. entered into a contract for the sale of urea. (FAC ¶4.20.) Plastitex correctly identified the reason for the failure of the transaction with Green Pampas when they acknowledged that "No urea was delivered [by Green Pampas], however no reasonable explanation was offered." (Emphasis added.) (FAC ¶4.20.) Therefore, if there has been a breach of contract, the breach has been between Plastitex and Green Pampas, Inc. and has nothing whatsoever to do with CFP.

11

B.  **CONTINENTAL PETROLEUM IS KNOWLEDGEABLE AND EXPERIENCED IN INTERNATIONAL TRADE TRANSACTIONS AND BORE THE BURDEN TO PERFORM ITS OWN DUE DILIGENCE BEFORE ENTERING INTO ITS AGREEMENTS**

36. Continental Petroleum represented to CFP in the Letter of Credit Checklist that its business was "Importer Exporter of Commodities." Continental Petroleum stated in the Letter of Credit Compliance Questionnaire that it had been in business for twenty (20) years at that time of the Application for the Letter of Credit (Exhibit C).

37. Continental Petroleum was truly knowledgeable and sophisticated in sizable international transactions as evidenced by the number of details contained in the Proforma Invoice for the purchase of urea from Loxistica (FAC ¶CPC 0017). This Proforma Invoice contains in very specific detail all the properties of the urea.

38. Continental Petroleum's contract with Loxistica is a fifteen (15) page document and it is quite specific. It contains twenty-seven (27) contract paragraphs dealing with the purchase of 150,000 metric tons of urea for Thirty Million Four Hundred Fifty Thousand ($30,450,000.00) Dollars.

39. The sales contract contains sixteen (16) different specifications for the urea, including such things as the percentage of nitrogen, empirical formula, moisture, anti-caking properties, free ammonia, granulation, color, etc. This shows a level of sophistication on the part of Continental Petroleum as the Purchaser and commensurate with being an importer and exporter of commodities and having a level of expertise in large commercial transactions. (FAC CPC 0003.)

40. Plaintiff, Continental Petroleum likewise entered into two separate purchase agreements with Loxistica and then Trifecta Trading, for the purchase of urea.

41. After its contract with Loxistica failed, Continental Petroleum applied for a second Letter of Credit through CFP. (FAC ¶4.12.) Notably, Continental Petroleum admits that "The Letter was allegedly accepted by Seller's, Trifecta, bank, but <u>the product was never delivered</u>." (Emphasis added.) (FAC ¶4.12.)

42. Thus, again, there are two (2) admissions by Continental Petroleum, that: (1) there was nothing wrong with the Letter of Credit but that, (2) once again, Trifecta Trading had no product, specifically the urea, to sell to them.

43. Therefore, it is clear that despite all the verbiage and baseless allegations against CFP, two of the three contracts which Plastitex had entered into, namely with Trifecta Trading and Green Pampas, failed due to the fact that the Sellers had no urea to sell.

44. Continental Petroleum admits that Trifecta Trading had no product to deliver and, therefore, the transaction failed for that reason alone. Continental Petroleum bears responsibility for not confirming that the Sellers actually had proof of product. The Plaintiff's failure to do this basic level of due diligence was a harbinger of the failure of the transaction.

45. There is a discrepancy in the terms contained within the four corners of the sales contract. (cf FAC CPC 0003 ¶11 to ¶ 26(4)). In Paragraph 11, the Payment Terms are identified as "Documentary, Irrevocable, Confirmed, Transferable, Divisible, Shipments for Shipments Letter of Credit, Payable at sight at 100% at sight…" (FAC CPC 0003 ¶11.)

13

46.     Paragraph 26, subparagraph 5 on the other hand provides that "…the Buyer shall cause its bank to issue to the Seller a Non-Operative Documentary Letter of Credit for a total amount of shipment, payable 100% at sight against presentation of all required documents as Article 11." (FAC CPC 0003 ¶26 (5).)

47.     It was incumbent upon the buyer to identify and resolve the discrepancy between these two paragraphs, between buyer and seller.  The Defendant, CFP, never agreed to review the underlying contract between Continental Petroleum, and the Seller, Loxistica.

## CONCLUSION

48.     CFP's agreements did not state that it agreed to review the terms of the underlying contracts for compliance with the Letter of Credit and, significantly, it did not charge a fee to do so.  Additionally, CFP's agreements did not state that it agreed to provide *Letters of Credit with Confirmation*.  There are no statements contained on its website or in any of its documents, which will be discussed in greater detail by Caren Raphael that states that CFP will provide a Letter of Credit with Confirmation for a transaction of Thirty Million Four Hundred Fifty Thousand ($30,450,000.00) Dollars.

49.     The reason the Plaintiffs failed in their transactions was laziness and sloppiness on their part.  They neglected to do even minimal levels of due diligence to determine if the Sellers had proof of product.  The Plaintiffs both failed to take care of the details of their transactions to be sure that everything in their contracts with their respective Sellers was correct.

14

50. CFP is an easy target. The Plaintiffs both paid CFP fees to obtain the Letters of Credit, so the Plaintiffs are looking for a scapegoat. I would respectfully ask the Court not to let CFP be that scapegoat, because it did nothing wrong.

51. As stated earlier, there are a number of reasons why Plaintiffs' Breach of Contract claim must fail.

a. The terms of all of the documents which comprise the contract between the Plaintiffs and the Defendant, Corporate Funding Partners, refute the claims for breach of contract because there is not one document, e-mail or mention on the Defendant's website that the Defendant would provide Letters of Credit with Confirmation.

b. The Defendant, Corporate Funding Partners, never agreed to review the underlying contract between the Plaintiffs and their sellers/beneficiaries. Corporate Funding Partners does not review the contract for any of its clients. The contracts are only provided for the purposes of complying with the anti-money laundering statutes.

c. Both Plaintiffs were knowledgeable and experienced business persons with established companies that stated their business is importing and exporting and that they had traded in urea previously.

d. The Plaintiffs utterly failed to do their own due diligence with their sellers/beneficiaries and check if the sellers/beneficiaries had proof of product, and, in fact, three of the four sellers/beneficiaries did not have proof of product.

Any one of the items above is enough to defeat the cause of action for breach of contract, but when taken together, present unquestionable evidence that CFP did not breach the contract with either Plaintiff.

**WHEREFORE,** the two Plaintiffs, Continental Petroleum and Plastitex's FAC should be dismissed as to the cause of action for Breach of Contract against the Defendant, Corporate Funding Partners, for failure to state a cause of action in all respects, and for such other and further relief as to this Court seems just and proper.

_____
Noël F. Caraccio

Sworn to before me this
19th day of June, 2012

_____
Notary Public

Jo-Anne LaRotonda, Notary Public
State of New York No. 01LA5075220
Qualified in Westchester County
Commission Expires March 31, 2015

16